**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **SEALED PLAINTIFF 1** | ) |
| | ) |
| **and** | ) |
| | ) |
| **SEALED PLAINTIFF 2,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 3:22-cv-00670-MHL** |
| | ) |
| **PATRIOT FRONT,** | ) |
| | ) |
| **THOMAS ROUSSEAU,** | ) |
| | ) |
| **PAUL GANCARZ,** | ) |
| | ) |
| **NATHAN NOYCE ,** | ) |
| | ) |
| **THOMAS DAIL,** | ) |
| | ) |
| **DANIEL TURETCHI,** | ) |
| | ) |
| **JACOB BROWN,** | ) |
| | ) |
| **WILLIAM RING,** | ) |
| | ) |
| **AEDAN TREDINNICK** | ) |
| | ) |
| **and** | ) |
| | ) |
| **JOHN DOES 1–19,** | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS GANCARZ, NOYCE, DAIL, TURETCHI, AND TREDINNICK'S
MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................................................. 1

FACTS ................................................................................................................................... 2

I.     Patriot Front Is an Organized Hate Group ................................................................. 2

II.    Battery Park and the Arthur Ashe Mural Are Symbols of Richmond's Black
       Community ................................................................................................................. 3

III.   Defendants' Engaged in Racially Motivated Vandalism of the Arthur Ashe Mural ......... 3

IV.    Defendants' Vandalism Made Plaintiffs Feel Intimidated and Threatened ....................... 4

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 5

I.     Plaintiffs Have Standing To Assert Their Claims ...................................................... 6

       A.      Plaintiffs Suffered a Cognizable Injury-in-Fact ............................................ 6

       B.      Plaintiffs' Injuries Are Fairly Traceable to the Conspiracy .......................... 10

II.    Plaintiffs Have Pleaded a § 1985(3) Claim ............................................................... 11

III.   Plaintiffs Have Pleaded a § 1986 Claim .................................................................... 14

IV.    The Intracorporate Conspiracy Doctrine Does Not Apply To Plaintiffs' §§ 1985(3)
       and 1986 Claims ........................................................................................................ 18

V.     Plaintiffs Have Pleaded a Claim Under Virginia Code § 8.01-42.1 .......................... 22

       A.      Defendants Have Failed to Establish That § 8.01-42.1 is Facially
               Unconstitutional ......................................................................................... 22

       B.      Defendants Have Failed to Establish That § 8.01-42.1 Is Unconstitutional as
               Applied to Their Campaign of Intimidation and Harassment ....................... 24

       C.      Defendants Have Failed to Establish That §§ 8.01-42.1 Is Unconstitutionally
               Vague ......................................................................................................... 26

       D.      Plaintiffs' Have Adequately Pleaded Defendants' Liability Under § 8.01-
               42.1 ............................................................................................................ 28

CONCLUSION ..................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abernathy* v. *Conroy*,
   429 F.2d 1170 (4th Cir. 1970) ...................................................................22

*United States* v. *Allen*,
   341 F.3d 870 (9th Cir. 2003) ......................................................................13

*Am. Life League, Inc.* v. *Reno*,
   855 F. Supp. 137 (E.D. Va. 1994) ..............................................................23

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ......................................................................................5

*Bank Realty* v. *Practical Mgmt. Tech.*,
   1991 WL 97490 (4th Cir. June 11, 1991) ...................................................18

*Bell* v. *City of Milwaukee*,
   746 F.2d 1205 (7th Cir. 1984) ..............................................................15, 16

*Berry* v. *Target Corp.*,
   214 F. Supp. 3d 530 (E.D. Va. 2016) .........................................................28

*Virginia* v. *Black*,
   538 U.S. 343 (2003) ....................................................................................23

*United States* v. *Bledsoe*,
   728 F.2d 1094 (8th Cir. 1984) ....................................................................13

*Bray* v. *Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) ....................................................................................12

*Brown* v. *R & B Corp. of Va.*,
   267 F. Supp. 3d 691 (E.D. Va. 2017) .........................................................10

*Brown-Thomas* v. *Hynie*,
   441 F. Supp. 3d 180 (D.S.C. 2019) ............................................................10

*Buschi* v. *Kirven*,
   775 F.2d 1240 (4th Cir. 1985) ........................................................18, 19, 20

*Callum* v. *CVS Health Corp.*,
   137 F. Supp. 3d 817 (D.S.C. 2015) .......................................................15, 17

*Chao* v. *Rivendell Woods, Inc.*,
    415 F.3d 342 (4th Cir. 2005) ...................................................................13

*Clark* v. *Clabaugh*,
    20 F.3d 1290 (3d Cir. 1994)...................................................................15

*United States* v. *Conlan*,
    786 F.3d 380 (5th Cir. 2015) ...................................................................28

*Detrick* v. *Panalpina, Inc.*,
    108 F.3d 529 (4th Cir. 1997) ...................................................................18

*Dobbey* v. *Jeffreys*,
    417 F. Supp. 3d 1103 (N.D. Ill. 2019) ...................................................20

*Dombrowski* v. *Dowling*,
    459 F.2d 190 (7th Cir. 1972) ...................................................................19

*Doski* v. *M. Goldseker Co.*,
    539 F.2d 1326 (4th Cir. 1976) .................................................................12

*Eplus Tech, Inc.* v. *Aboud*,
    313 F.3d 166 (4th Cir. 2002) ...................................................................18

*FCC* v. *Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)................................................................................26

*Feminist Majority Found.* v. *Hurley*,
    91 F.3d 674 (4th Cir. 2018) ..............................................................23, 24

*Fisher* v. *Shamburg*,
    624 F.2d 156 (10th Cir. 1980) ............................................................7, 12

*Frazier* v. *Cooke*,
    2017 WL 5560864 (E.D. Va. Nov. 17, 2017)........................................28

*Friends of the Earth, Inc.* v. *Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) .....................................................................9

*Fusaro* v. *Howard*,
    19 F.4th 357 (4th Cir. 2021) ...................................................................24

*United States* v. *Gonzalez*,
    905 F.3d 165 (3d Cir. 2018)....................................................................28

*Greater Balt. Ctr. for Pregnancy Concerns, Inc.* v. *Mayor & City Council of Balt.*,
    721 F.3d 264 (4th Cir. 2013) ...................................................................22

*United States* v. *Greer*,
    939 F.2d 1076 (5th Cir. 1991) ..........................................................................13

*Griffin* v. *Breckenridge*,
    403 U.S. 88 (1971) ..........................................................................................17

*Haigh* v. *Matsushita Elec. Corp.*,
    676 F. Supp. 1332 (E.D. Va. 1987) ..................................................................20

*Harrison* v. *KVAT Food Mgmt., Inc.*,
    766 F.2d 155 (4th Cir. 1985) ...........................................................................11

*Hill* v. *Colorado*,
    530 U.S. 703 (2000)..........................................................................................26

*Hock* v. *Substitute Trustee Servs., Inc.*,
    791 F.3d 473 (4th Cir. 2015) ...........................................................................30

*Johnson* v. *Hill St Dales Gen. Hosp.*,
    40 F.3d 837 (6th Cir. 1994) .............................................................................20

*Law* v. *Hilton Domestic Operating Co.*,
    2020 WL 7130785 (E.D. Va. Dec. 4, 2020) ..............................................25, 29

*Legend Night Club* v. *Miller*,
    637 F.3d 291 (4th Cir. 2011) ...........................................................................23

*Locus* v. *Fayetteville State Univ.*,
    1989 WL 21442 (4th Cir. Mar. 8, 1989)......................................................19, 20

*Lowden* v. *William M. Mercer, Inc.*,
    903 F. Supp. 212 (D. Mass. 1995) ...................................................................12

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................6

*McHam* v. *N. Carolina Mut. Life Ins. Co.*,
    2007 WL 1695914 (M.D.N.C. Jun. 11, 2021) ..................................................15

*Nat'l Coal. On Black Civic Participation* v. *Wohl*,
    512 F. Supp. 3d 500 (S.D.N.Y. 2021)............................................................8, 25

*Nat'l Endowment for the Arts* v. *Finley*,
    524 U.S. 569 (1998)..........................................................................................22

*Nguyen* v. *Hoang*,
    318 F. Supp. 3d 983 (S.D. Tex. 2018) .............................................................19

iv

*Nieto* v. *United Auto Workers Local 598*,
    672 F. Supp. 987 (E.D. Mich. 1987)............................................................20

*O'Brien* v. *Welty*,
    818 F.3d 920 (9th Cir. 2016) ....................................................................27

*United States* v. *Osinger*,
    753 F.3d 939 (9th Cir. 2014) ....................................................................27

*Painter's Mill Grille, LLC* v. *Brown*,
    716 F.3d 342 (4th Cir. 2013) ....................................................................18

*Perez* v. *Cucci*,
    725 F. Supp. 209 (D.N.J. 1989) ...............................................................16

*Phoenix Renovation Corp.* v. *Rodriguez*,
    403 F. Supp. 510 (E.D. Va. 2005) ...........................................................21

*Pinder* v. *Knorowski*,
    660 F. Supp. 2d 726 (E.D. Va. 2009) .........................................................5

*R.A.V.* v. *City of St. Paul*,
    505 U.S. 377 (1992).............................................................................23, 24

*Rebel Van Lines* v. *Compton*,
    663 F. Supp. 786 (C.D. Cal. 1987) ..........................................................20

*United States* v. *Richardson*,
    418 U.S. 166 (1974)...................................................................................7

*Richmond Med. Ctr. for Women* v. *Herring*,
    570 F.3d 165 (4th Cir. 2009) ....................................................................24

*S.C. Wildlife Fed'n* v. *Limehouse*,
    549 F.3d 324 (4th Cir. 2008) ......................................................................6

*Salim* v. *Dahlberg*,
    170 F. Supp. 3d 897 (E.D. Va. 2016) ................................................23, 24

*Simmons* v. *Poe*,
    47 F.3d 1370 (4th Cir. 1995) ....................................................................11

*Sines* v. *Kessler*,
    324 F. Supp. 3d 765 (W.D. Va. 2018) ...................................................8, 28

*Sines* v. *Kessler*,
    558 F. Supp. 3d 250 (W.D. Va. 2021) .....................................................12

*Sirajullah* v. *Ill. State Med. Inter-Insurance Exchange*,
  1988 WL 53210 (N.D. Ill. May 17, 1988) ...............................................................19

*Smith* v. *Trump*,
  2023 WL 417952 (D.D.C. Jan. 26, 2023) ...............................................................21

*Spokeo, Inc.* v. *Robins*,
  578 U.S. 330 (2016) ..............................................................................................6, 7

*Sullen* v. *Midwest ISO*,
  2005 WL 4889257 (S.D. Ind. Jul. 27, 2005) ...........................................................17

*Thompson* v. *Trump*,
  590 F. Supp. 3d 46 (D.D.C. 2022) .............................................................................8

*TransUnion LLC* v. *Ramirez*,
  141 S. Ct. 2190 (2021) ...............................................................................................6

*Travis* v. *Gary Community Mental Health Ctr., Inc.*,
  921 F.2d 108 (7th Cir. 1990) ...................................................................................19

*Venkatraman* v. *REI Sys., Inc.*,
  417 F.3d 418 (4th Cir. 2005) ...............................................................................5, 29

*Vietnamese Fishermen's Ass'n* v. *Knights of Ku Klux Klan*,
  518 F. Supp. 993 (S.D. Tex. 1981) ...............................................................7, 16, 18

*Volokh* v. *James*,
  2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023) ..........................................................27

*Waller* v. *Butkovich*,
  584 F. Supp. 909 (M.D.N.C. 1984) ..........................................................................15

*West* v. *Derby Unified Sch. Dist. No. 260*,
  206 F.3d 1358 (10th Cir. 2000) ...............................................................................28

*Weston* v. *City of Chi.*,
  2021 WL 2156459 (N.D. Ill. May 27, 2021) ...........................................................20

*Williams* v. *AM Lapomarda*,
  2020 WL 3643466 (E.D. Va. July 6, 2020) .............................................................29

**Statutes**

18 U.S.C. § 245 ......................................................................................................7, 13

42 U.S.C. § 1985 ...................................................................................................*passim*

42 U.S.C. § 1986 ...................................................................................................*passim*

42 U.S.C. § 2000a(a)................................................................................................13

Ku Klux Klan Act of 1871, 42 U.S.C. § 1985 .................................................1, 11

Virginia Code § 8.01-42.1 .................................................................... *passim*

**Other Authorities**

FED. R. CIV. P. 12(b)(6) ........................................................................5, 13

*Merriam-Webster Dictionary*................................................................27

U.S. CONST. amend. I ............................................................................ *passim*

U.S. CONST. amend. XIII .......................................................................12

U.S. CONST. art. III ................................................................6, 9, 10, 11

## INTRODUCTION

In October 2021, members of a white supremacist group known as Patriot Front conspired among themselves and with non-members to intimidate and harass members of racial minorities and their supporters in Battery Park, a predominantly Black neighborhood in Richmond, Virginia. On or about October 18, 2021, a week after meeting to discuss their plan, members of the conspiracy descended on Battery Park under cover of darkness to vandalize and destroy the Arthur Ashe Mural, a symbol of the neighborhood's support for and pride in Black lives and Black accomplishments. They spray-painted over Ashe's face and used stencils to leave the Patriot Front mark so that there could be no mistake who had done this.

This action, brought by two Battery Park residents, aims to hold Patriot Front and the individuals associated with the conspiracy accountable for their conduct. As the First Amended Complaint ("FAC"), ECF No. 31, outlines in detail, these actors conspired to launch a racially motivated campaign of vandalism with the intent to deprive Battery Park residents of equal access to the park, in violation of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985, *et seq.*, and Virginia Code § 8.01-42.1. Five of those conspirators—Defendants Paul Gancarz, Nathan Noyce, Thomas Dail, Daniel Turetchi, and Aedan Tredinnick (the "Defendants")—ask the Court to dismiss this action and seek to evade accountability for the injuries they caused and the laws they violated. *See* ECF Nos. 66, 75, 77. Defendants raise arguments against Plaintiffs' standing to bring this lawsuit and contend the facts do not plausibly allege claims under the federal and state civil rights statutes. These arguments are without merit and should be rejected in their entirety.

## FACTS[1]

### I.        Patriot Front Is an Organized Hate Group

Defendant Patriot Front is a white supremacist group founded in 2017.  ¶ 12.  Its ideology is based on a deeply racist belief system and mission to preserve America's "pan-European identity."  *Id.*  Patriot Front spreads its message of white supremacy through vandalism of, in part, public art that supports racial justice and LGBTQ+ inclusion, namely, by placing Patriot Front stickers and spray painting with Patriot Front stencils.  ¶¶ 16–17.  Patriot Front requires its members to partake in such "activism" and provides its members with detailed instructions about how to standardize these acts of vandalism.  ¶¶ 15, 18.

Although Patriot Front is not an incorporated entity, it has a well-organized and defined leadership structure.  ¶ 21.  Defendant Thomas Rousseau serves as National Director and supervises Patriot Front's activities nationwide. The group has regional Network Directors, including Defendant Paul Gancarz, who oversee Patriot Front activities in a particular region and report to Rousseau.  ¶¶ 21–24.  Patriot Front activities are frequently carried out by rank-and-file members, like Defendants Nathan Noyce, Thomas Dail, Daniel Turetchi, Jacob Brown, William Ring, Aedan Tredinnick, and John Does 1 through 6, as well as other non-members who may join them, like John Does 7 through 19.  Patriot Front's leadership, including Rousseau, requires members to seek approval from regional and national leadership for large-scale, high-profile acts of vandalism.  ¶ 17.  Those acts frequently involve the use of Patriot Front stickers and stencils that members must purchase from leadership like Rousseau.  *Id.*

---

[1] Facts relevant to this motion are set forth in the FAC and incorporated fully herein.  Citations to "¶ _" are to paragraphs of the FAC.

II.     **Battery Park and the Arthur Ashe Mural Are Symbols of Richmond's Black Community**

Battery Park is a predominantly Black neighborhood in the North Side of Richmond, Virginia.  ¶ 43.  The City of Richmond owns and manages a public park (the "Park") located in the heart of the neighborhood.  ¶¶ 3, 42.  The Park holds a special place for many Black residents and their supporters as a historic symbol of the years after government-sanctioned segregation ended.  ¶ 44.  At a time when racial tensions in the city and nationwide were fraught, the Park served as a safe haven for Black residents and their supporters.  *Id.*

In 2017, the City of Richmond's Parks and Recreation Department commissioned a mural of Arthur Ashe, a revered son of Richmond who in 1968 became the first Black man to win the U.S. Open tennis tournament.  Mr. Ashe was also a committed humanitarian whose work included establishing the African American Athletic Association and raising money for the United Negro College Fund.  *Id.*

The mural was unveiled in Battery Park in July 2017.  Painted by a group of Black-led local artists, the mural was painted at the entrances and inside of a pedestrian tunnel joining the north and south ends of the Park.  ¶¶ 40–41.  The mural depicted paintings of Mr. Ashe's face, an image of Mr. Ashe holding a Wimbledon trophy, and signs listing several of his tennis achievements.  ¶ 41.

III.    **Defendants' Engaged in Racially Motivated Vandalism of the Arthur Ashe Mural**

Defendant Patriot Front began its campaign of vandalism targeting Battery Park by the summer of 2021, when residents of Battery Park, including Sealed Plaintiff 1, noticed Patriot Front stickers placed on lampposts, stop signs, and elsewhere throughout the neighborhood.  ¶ 48.  A group of Patriot Front members that included Defendants Gancarz, Dail, Noyce, Turetchi, Brown, Ring, Tredinnick, and John Does 1 through 6, as well as John Does 7 and 8 (who were not yet

members of the Patriot Front), decided to escalate their tactics.  ¶¶ 37–38, 49–50.  They decided to vandalize the Arthur Ashe mural to "destroy a symbol of the neighborhood's support for and pride in Black lives and Black accomplishments."  ¶ 49.  On or about October 12, 2021, these same Defendants met, discussed, and planned the vandalization of the Arthur Ashe mural in Battery Park, Richmond, Virginia.  ¶ 50.

On or about October 18, 2021, Defendants Noyce, Dail, and John Doe 1 arrived at the pedestrian tunnel where the Arthur Ashe mural was located.  ¶ 51.  Defendant John Doe 1 filmed the entire incident.  ¶ 52.  Defendants Noyce and Dail spray-painted white the signs describing his accomplishments and covered them with Patriot Front stencils.  ¶¶ 58–64.  While filming, Defendant John Doe 1 egged on Defendants Noyce and Dail, encouraging them to cover up a painting of Arthur Ashe's face, saying as they did so "Fucking n*****'s face."  ¶ 65.  Defendants Noyce and Dail worked together to cover Arthur Ashe's face with Patriot Front stencils, coordinating to use different colored stencils.  ¶¶ 63–67.

## IV.    Defendants' Vandalism Made Plaintiffs Feel Intimidated and Threatened

On or about October 21, 2021, Battery Park residents discovered the desecrated mural. ¶ 72.  Battery Park residents, including Sealed Plaintiffs 1 and 2, immediately felt fear and apprehension about visiting the park.  ¶ 74.  Sealed Plaintiffs' fears were particularly amplified because the beginning of Patriot Front's vandalism campaign in the summer and fall of 2021 coincided with the Unite the Right trial in nearby Charlottesville, Virginia.  ¶ 79.  Given that climate, Plaintiffs reasonably understood the vandalism to be a warning that Black residents of the neighborhood and their allies were not safe in their own community.  Plaintiffs both lost sleep and felt anxious as a result of the vandalism, and both limited—and at times altogether stopped—their use of Battery Park and the Arthur Ashe tunnel.  ¶¶ 80–83.  Sealed Plaintiff 2 considered placing their oldest child in therapy as a result of the stress and anxiety.  ¶ 84.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal "sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense." *Pinder* v. *Knorowski*, 660 F. Supp. 2d 726, 730 (E.D. Va. 2009) (citing *Republican Party of N.C.* v. *Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). To survive, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  In considering a motion to dismiss, the Court should "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman* v. *REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc.* v. *Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

## ARGUMENT

Defendants raise several arguments, broadly challenging Plaintiffs' standing and arguing that Plaintiffs fail to state a claim under 42 U.S.C. §§ 1985(3) and 1986, and Virginia Code § 8.01-42.1.  Each is without merit.  Contrary to Defendants' arguments, Plaintiffs have plausibly alleged that they, as members of the Battery Park community who support and celebrate Black accomplishment, have standing because the Defendants' concerted efforts caused them to avoid the park and suffer emotional harm.  Next, Plaintiffs state claims under both §§ 1985(3) and 1986.  Plaintiffs allege that Defendants conspired to plan and execute a racially motivated act of vandalism with intent to intimidate and deprive Plaintiffs of equal access to a public park.  Plaintiffs also allege that Defendants actively participated and failed to stop the conspiracy.  In

addition, Plaintiffs have alleged sufficient facts to show that Defendants were not members of an intracorporate conspiracy. Lastly, Plaintiffs have plainly stated a claim under Virginia Code § 8.01-42.1, and Defendants' constitutional challenges to the Virginia hate crime statute are meritless. Accordingly, Defendants' motion to dismiss should be denied.

## I.       Plaintiffs Have Standing to Assert Their Claims

Defendants argue that Plaintiffs do not meet the standing requirements under Article III of the U.S. Constitution. ECF No. 66 ("MTD Br.") at 6–9. Defendants' arguments are without merit.

To have Article III standing, the plaintiff must have alleged a sufficient interest in the dispute. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The familiar three-part test requires a plaintiff to demonstrate that: (1) she has suffered a concrete, particularized, and actual "injury in fact"; (2) the injury is fairly traceable to the actions of the defendant(s); and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by judicial relief. *Id.*; *TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190, 2203 (2021). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct" are sufficient to survive a motion to dismiss. *S.C. Wildlife Fed'n* v. *Limehouse*, 549 F.3d 324, 329 (4th Cir. 2008).

Defendants challenge the first and second standing requirements. In particular, they contend that Plaintiffs' injuries are neither concrete, particularized, or actual nor traceable to Defendants' conduct. *See* MTD Br. at 8–9. Defendants are wrong on both issues.

### A.       Plaintiffs Suffered a Cognizable Injury-in-Fact

An injury-in-fact must be "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). An injury is "concrete" when it is "real and not abstract." *Id.* at 340 (internal quotations omitted). An injury is particularized if there is a "particular individual or class" that has been affected by the challenged conduct differently

from other "members of the public." *United States* v. *Richardson*, 418 U.S. 166, 178–179 (1974). "The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo*, 578 U.S. at 339 n.7.

Defendants' injury-in-fact contentions can be distilled into four arguments. None of them is correct.

*First*, Defendants argue that Plaintiffs suffered no injury because they have no property interest in the Park. MTD Br. at 8. This argument, unburdened by citation to law or precedent, is misguided. Section 1985 provides an actionable right against race-based interference with one's enjoyment of places of public accommodation. *See Fisher* v. *Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980) ("[A] racially motivated conspiracy to interfere with one's enjoyment of a place of public accommodation constitutes a badge of slavery which is a deprivation of equal privileges and immunities under 42 U.S.C. § 1985(3)."). Defendants argue that civil rights protections for public accommodations are limited to causes of action only against property owners. This argument misreads the law. Indeed, § 1985(3) plaintiffs have successfully brought claims where they had no property interest in the public space blocked by a racially motivated conspiracy. *See, e.g.*, *id*. (use of public parking lot used by plaintiff to access public inn); *Vietnamese Fishermen's Ass'n* v. *Knights of Ku Klux Klan*, 518 F. Supp. 993 (S.D. Tex. 1981) (use of and access to public waterway). Plaintiffs allege that they each "regularly used the Park and its amenities"—a place of public accommodation—and that Defendants' racially motivated vandalism caused them to limit or cease that use. ¶¶ 10–11. That is a cognizable injury under § 1985, and Defendants cite no authority for their contrary argument. *See also infra* Section II (discussing right to access public accommodations under 18 U.S.C. § 245 (Federally Protected Activities), which is 42 U.S.C. § 1985's sister statute).

*Second*, Defendants assert, again without legal authority, that "a subjective fear that was of indeterminant length and indefinite strength" is insufficiently concrete because Plaintiffs suffered only "subjective, emotional responses to a public event," and did not, in Defendants' view, suffer "any physical harm in any way."  MTD Br. at 7–8.  But courts have long recognized emotional harm as a concrete injury sufficient to show standing, including specifically in the context of §§ 1985 and 1986 claims.  *See, e.g.*, *Thompson* v. *Trump*, 590 F. Supp. 3d 46, 72 (D.D.C. 2022) (recognizing that § 1985 "makes no distinction between physical and emotional injury, and in that sense it aligns with the common law tradition of permitting recovery for emotional distress for certain torts without a showing of physical injury"); *Nat'l Coal. On Black Civic Participation* v. *Wohl*, 512 F. Supp. 3d 500, 515–16 (S.D.N.Y. 2021) (observing that allegations that racially motivated robocalls intimidated plaintiffs, had "irreversibly undermined her confidence in voting by mail," and were "particularly traumatic," were "sufficient to show a concrete and particularized injury for the purposes of standing"); *Sines* v. *Kessler*, 324 F. Supp. 3d 765, 774 (W.D. Va. 2018) (denying motion to dismiss a § 1985 claim where plaintiffs "suffered various emotional injuries").

Plaintiffs have sufficiently alleged the precise injury that is cognizable under §§ 1985 and 1986 pursuant to these authorities—i.e., the emotional harm caused by racially motivated acts of intimidation and harassment.  Upon seeing that the Arthur Ashe mural had been vandalized by the Defendants, Sealed Plaintiff 1 "immediately felt a sense of fear and apprehension at being in the Park" and "interpreted the vandalism as a warning from the Patriot Front that Black residents of the neighborhood and those who opposed white supremacy were not safe."  ¶ 76.  As a result of Patriot Front's vandalism in Battery Park, Sealed Plaintiff 1 "lost sleep, had racing thoughts, and felt anxious" enough to avoid using the Park in ways they did before.  ¶ 80.  Similarly, Sealed Plaintiff 2 "lost sleep and felt anxious, fatigued, and scared as a result of the vandalism," and even

considered placing their oldest child in therapy as a result of the stress and anxiety the child felt because of the vandalism.  ¶¶ 83–84.  These effects of the vandalism—an act that Defendants concede was "regrettable," MTD Br. at 8—are sufficiently concrete to confer Article III standing.

*Third*, Defendants argue that Plaintiffs' injury is not particularized because the same injury could be claimed by all patrons of the Park, suggesting a slippery slope if the Court allows this case to go forward.  MTD Br. at 7–8.  This argument is a red herring.  To be particularized, an alleged injury "must affect the plaintiff in a personal and individual way." *Friends of the Earth, Inc.* v. *Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000).  Plaintiffs allege that they used the Park less because of fears resulting directly from Defendants' conduct.  ¶¶ 76, 80, 83–84. Plaintiffs further allege they lost sleep and suffered from anxiety, reflecting the personal and individual impact of Defendants' conduct.  ¶¶ 80, 83.  "These facts unquestionably differentiate" the Plaintiffs "from the general public" and show that they seek to vindicate their own legal rights against racially based harassment and intimidation, "not some ethereal public interest." *Friends of the Earth*, 204 F.3d at 157.

It bears emphasis that Defendants specifically targeted Battery Park, a historically and majority Black neighborhood, because of its racial characteristics and its ethos of advocacy for Black people.  ¶¶ 3, 42–44.  They destroyed the Arthur Ashe mural because it was a "symbol of the neighborhood's support for and pride in Black lives and Black accomplishments."  ¶¶ 1–3, 49. In other words, Defendants targeted a *community*.  They cannot now escape accountability to these Plaintiffs by complaining that *other* members of the community could also have standing.  The breadth of Defendants' potential liability—which, to be sure, is not at issue here given the personal allegations specific to Plaintiffs—is a consequence of Defendants' community-based campaign of

racial hatred.  It is not a reason to find that these Plaintiffs, who are members of the targeted community, lack a particularized injury.

*Fourth*, Defendants argue—yet again, without legal support—that Plaintiffs fail to allege an "actual or imminent" injury because Defendants have not vandalized Battery Park in the 16 months since Defendants destroyed the Arthur Ashe mural.  MTD Br. at 9.  This argument is frivolous.  As Defendants recite, the requirement is that the injury be "actual *or* imminent."  *Id.* An injury-in-fact "requires that the invasion of a plaintiff's legally protected interest (*i.e.*, a violation of a plaintiff's substantive rights) has *either* already occurred *or* is certainly impending." *Brown* v. *R & B Corp. of Va.*, 267 F. Supp. 3d 691, 696 (E.D. Va. 2017) (emphases added); *Brown-Thomas* v. *Hynie*, 441 F. Supp. 3d 180, 202 (D.S.C. 2019) (recognizing that plaintiffs' claims satisfied Article III because they alleged that the defendants *had already* engaged in unlawful agreements).  This is a lawsuit about what has already happened.  ¶¶ 76–85.

**B.    Plaintiffs' Injuries Are Fairly Traceable to the Conspiracy**

Moving to the second requirement of Article III standing, Defendants argue that Plaintiffs have not alleged a sufficient causal connection between their injury and Defendants' conduct because Defendants did not "[leave] any threatening messages," and were not involved in the ongoing civil rights trial regarding the Charlottesville Unite the Right 2017 white supremacist rally.  MTD Br. at 8.  This argument fails for two reasons.

*First*, as a factual matter, Defendants—whether inadvertently or intentionally—misidentify the events that are causally connected for Plaintiffs to establish standing.  Plaintiffs allege that as a direct and proximate result of Defendants' conspiracy and vandalization of the Arthur Ashe mural (the conduct complained of) Plaintiffs suffered emotional injuries.  ¶¶ 88–95.  To provide context for the act of vandalism at issue, Plaintiffs describe the tensions the community faced as it braced for the start of the civil trial stemming from the Charlottesville Unite the Right 2017 white

supremacist rally.  ¶ 45.  At no point, however, do Plaintiffs plead that the Charlottesville Unite the Right rally or the subsequent trial were themselves the source of their injury.

*Second*, Defendants' argument that there is no causation because they did not "leave any threatening messages" attempts to whitewash their actions.  Plaintiffs allege that Defendants' action of defacing the Arthur Ashe mural was *itself* a threatening message, which Plaintiffs received loud and clear, and which caused Plaintiffs' emotional injuries.  *See supra* Section I.A. Defendants, in other words, seem to be suggesting that they should be exonerated because they did not commit *more* intimidating and unlawful acts than they actually did.  That nonsensical proposition should be rejected out of hand.  Plaintiffs have standing under Article III.

## II.    Plaintiffs Have Pleaded a § 1985(3) Claim

Section 1985(3) was originally enacted by Congress as part of the Ku Klux Klan Act in order to enforce the Civil War amendments to the Constitution and to provide a means of redress for persons victimized by the Klan's acts of terror and intimidation.  *Harrison* v. *KVAT Food Mgmt., Inc.*, 766 F.2d 155, 156–57 (4th Cir. 1985).  That law was passed "in response to widespread violence and acts of terror directed at [Black people] and their supporters in the postwar South."  *Id.* at 157.  It was "[a]gainst this backdrop of political terrorism" that "Congress enacted § 1985(3), affording a remedy for the vindication of the civil rights of those being threatened and injured, notably [Black people] and advocates for their cause."  *Id*.  This case evokes, and is furtherance of, the Act's original purpose.

The elements of a § 1985(3) claim are:  (1) a conspiracy of two or more persons; (2) motivated by a specific class-based, invidiously discriminatory animus; (3) that deprives the plaintiff of the equal enjoyment of rights secured by the law; (4) and results in an overt act; that (5) causes injury to the plaintiff.  *See Simmons* v. *Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Defendants cannot credibly, and do not in fact, deny Plaintiffs' allegations that they, a group of

two or more persons, committed the overt act of vandalizing the Arthur Ashe mural—indeed, it is hard to imagine how they could, as they recorded the incident and used it in a Patriot Front recruiting video.    ¶¶ 51–71.    Instead, Defendants raise challenges as to their discriminatory animus, Plaintiffs' predicate rights, and causation.  All of Defendants' arguments lack merit, and many have already been rejected by this Court in related cases.

*First*, Defendants deny the basis of Plaintiffs' predicate right, asserting that under *Bray* v. *Alexandria Women's Health Clinic*, 506 U.S. 263 (1993), § 1985(3) applies only to conspiracies involving involuntary servitude or the right of interstate travel.  MTD Br. at 13–14.  Defendants are incorrect.

Section 1985(3) serves as a vehicle to remedy violations of substantive rights guaranteed by federal law or the Constitution.  *See Doski* v. *M. Goldseker Co.*, 539 F.2d 1326, 1333 (4th Cir. 1976); *Sines* v. *Kessler*, 558 F. Supp. 3d 250, 273–74 (W.D. Va. 2021).  Courts around the country have long recognized that enjoyment of a public accommodation is a predicate right for a § 1985 claim.  In *Fisher* v. *Shamburg*, 624 F.2d at 162, the Tenth Circuit held that "a racially motivated conspiracy to interfere with one's enjoyment of a place of public accommodation constitutes a badge of slavery which is a deprivation of equal privileges and immunities under 42 U.S.C. § 1985(3)."  Similarly, in *Lowden* v. *William M. Mercer, Inc.*, 903 F. Supp. 212, 221 (D. Mass. 1995), the court held that "together with the Thirteenth Amendment, section 1985(3) creates a remedy prescribing racially motivated conspiracies which, for example, interfere with a minority person's right to public accommodation."

Several federal courts have also recognized that public parks are places of public accommodations and that the race-based denial of access to public parks violates civil rights statutes because deprivation of the right to enjoy a public accommodation is a "badge of slavery."

*See United States* v. *Allen*, 341 F.3d 870, 884 (9th Cir. 2003); *United States* v. *Greer,* 939 F.2d 1076, 1091 n.15 (5th Cir. 1991) ("Under [42 U.S.C. § 2000a(a)], public parks are places of public accommodation."). Courts have also recognized that discriminatory harassment in parks may constitute a violation of the right to access public accommodations under 18 U.S.C. § 245 (Federally Protected Activities), which is § 1985's sister statute. *See United States* v. *Bledsoe*, 728 F.2d 1094, 1097 (8th Cir. 1984) ("Nor can there be doubt that interfering with a person's use of a public park because he is black is a badge of slavery."); *Allen*, 341 F.3d at 884 (similar).

Battery Park is a public park in the City of Richmond that holds a special place for many Black and allied residents of the area.  ¶¶ 42, 44.  For many years, the Park was home to the only public swimming pool Black residents felt comfortable using after the end of government-sanctioned segregation given the persistence of racial tensions.  *Id.*  Use of the Park by Plaintiffs and other neighborhood residents is thus a public accommodation that federal courts have readily recognized as a predicate right to a § 1985 claim.

*Second*, Defendants assert that Plaintiffs fail to plead discriminatory intent because the Defendants' vandalism *could* "readily be interpreted as an ill-conceived protest against the defacement and removal of Confederate statues."  MTD Br. at 14–15.  Regardless of Defendants' post-hoc rationalizations, on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations as true and draw all reasonable inferences in favor of Plaintiffs.  *See Chao* v. *Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005).

Plaintiffs allege more than sufficient facts from which the Court can infer Defendants' discriminatory, race-based intent to deprive Plaintiffs of their protected rights.  Defendants are part of the white supremacist group Patriot Front, which promotes as its mission "a hard reset on the nation we see today – a return to the traditions and virtues of our [European] forefathers" who "left

13

their European homes . . . [and who] found a common cause and a common identity as Americans." ¶ 1.  Defendant Gancarz is Patriot Front's Network Director for the region covering Virginia, D.C., Maryland, and Delaware and by virtue of his position is required to approve "large scale mural cover-ups . . . before members initiate[d] them in their networks."  ¶ 24.  Defendants Gancarz, Noyce, Dail, Turetchi, and Tredinnick all participated in the October 12, 2021, meeting where they planned to vandalize the Arthur Ashe mural, ¶ 50, and Defendants Noyce and Dail were captured on film committing the act, ¶ 65.  Defendant John Doe 1, while filming Defendants Noyce and Dail, suggested they vandalize Arthur Ashe's face; Defendants Noyce and Dail began to do exactly that as Defendant John Doe 1 said, "Fucking n*****'s face." *Id.*  Once Defendants Noyce and Dail were finished vandalizing the first mural, Arthur Ashe's face was completely destroyed.  ¶ 68.  Defendants Noyce and Dail then continued to vandalize another mural of Arthur Ashe celebrating his victory at Wimbledon.   ¶ 69.   Defendants cannot replace Plaintiffs' particularized allegations with their own version of what Defendants' motives *could have been*. Whether Defendants' proffered reason for the vandalism is pretext can and should be decided at trial by a trier of fact, and not by this Court on a Rule 12(b)(6) motion to dismiss.

*Finally*, Defendants argue that Plaintiffs fail to plead Defendants' action caused them any injury, citing back to their arguments about Plaintiffs' standing.  MTD Br. at 15. As explained above, these arguments are without merit.  *See supra* Section I.A.

## III.   Plaintiffs Have Pleaded a § 1986 Claim

Plaintiffs have alleged sufficient facts to state a viable claim under § 1986, which imposes liability on "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses" to do so.  42 U.S.C. § 1986. To state a claim under § 1986, a plaintiff must allege that (1) a § 1985 conspiracy occurred; (2) the

defendant had knowledge of the conspiracy; (3) the defendant had the power to prevent or aid in preventing the commission of acts pursuant to that conspiracy; and (4) the defendant neglected or refused to act to prevent the conspiracy. *Callum* v. *CVS Health Corp.*, 137 F. Supp. 3d 817, 844 (D.S.C. 2015); *see also Clark* v. *Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (setting forth the elements of a § 1986 claim); *McHam* v. N. Carolina Mut. Life Ins. Co., 2007 WL 1695914, at *5 (M.D.N.C. June 11, 2007), *aff'd*, 250 F. App'x 545 (4th Cir. 2007) (citing *Clark* v. *Clabaugh* for the elements of a § 1986 claim).

Plaintiffs allege specific facts supporting each of these elements. As to the first element, as explained above, Plaintiffs have sufficiently pleaded the existence of a § 1985 conspiracy. *See supra* Section II. Plaintiffs satisfy the second and third elements by alleging that all Defendants had actual knowledge of the conspiracy and the power to prevent the vandalism because they all participated in planning the conspiracy, and Defendants Noyce and Dail actually vandalized the mural—allegations that Defendants nowhere deny. ¶¶ 103–04. *See Callum*, 137 F. Supp. 3d at 843–44 (denying motion to dismiss when the plaintiff alleged store employees had knowledge of and the power to prevent a § 1985 conspiracy where they actively participated in conspiracy to impede the plaintiffs from shopping in CVS stores); *Waller* v. *Butkovich*, 584 F. Supp. 909, 923, 932 (M.D.N.C. 1984) (rejecting motion to dismiss when plaintiffs alleged that defendants had "full advance knowledge" of conspiracy and the power to prevent it where the defendants "actively participated in the planning of [an] attack," "monitored" the attack, and "failed to take any action to stop [it]"). Plaintiffs allege that each of the Defendants could have aided in preventing the vandalism with "reasonable diligence." *Bell* v. *City of Milwaukee*, 746 F.2d 1205, 1258 (7th Cir. 1984), *overruled on other grounds*, *Russ* v. *Watts*, 414 F.3d 783 (7th Cir. 2005).

In particular, Defendant Gancarz, as the Network Director for the region covering Virginia, D.C., Maryland, and Delaware, had the power to prevent or aid in preventing the vandalism by virtue of his supervisory role over the activities in his assigned region.  ¶ 24.  Defendant Gancarz had to approve "large scale mural cover-ups before . . . members initiate[d] them in their networks."  *Id.*  Such "supervisory power over [the] alleged conspirators" is sufficient to satisfy this element where organizational rules or procedures establish that the defendant had supervisory authority over the conspirators.  *Bell*, 746 F.2d at 1258; *see, e.g.*, *Perez* v. *Cucci*, 725 F. Supp. 209, 254–55 (D.N.J. 1989) (finding element satisfied where police director had "managerial discretion" over conspirators pursuant to organization's rules and regulations).

Finally, Defendants do not dispute that Plaintiffs satisfy the fourth element of a § 1986 claim—that the Defendants plainly neglected or refused to act to prevent the conspiracy.  Courts hold defendants liable for neglecting or refusing to prevent a conspiracy where the defendant does "not attempt to dissuade" the conspirators from acting, *Vietnamese Fisherman's Ass'n*, 518 F. Supp. at 1007, or where they remain "reticent" or take "steps to assure" that the conspiracy is completed, *Perez*, 725 F. Supp. at 255.  Not only were Defendants Noyce and Dail not "reticent," video evidence shows that they took "steps to assure" that the vandalism was complete and actively encouraged each other to participate.  From the moment they arrived in Battery Park, Defendants acted deliberately and without hesitation.  ¶¶ 51–69.  Defendant Dail began spray painting within moments of arriving in the tunnel.  ¶ 54.  Defendant Noyce encouraged Defendant Dail, reminding him to "shake [the can]" to make sure it "spray[s] well."  ¶ 57.  Defendants Noyce and Dail worked together to spray-paint and stencil the mural, coordinating amongst themselves and with Defendant John Doe 1 to use different colored stencils and to cover different portions of the Arthur Ashe mural, including Ashe's face and signs celebrating Ashe's accomplishments.  ¶¶ 60–69.  At no

16

point did either Defendant attempt to dissuade the others from continuing with their act of vandalism.

Defendants make two related arguments in support of their position that Plaintiffs have failed to state a claim under § 1986.  Each is without merit.

*First*, Defendants assert that because Plaintiffs fail to plead the existence of a § 1985 conspiracy, their § 1986 claim also fails.  MTD Br. at 15–16.  As explained above, Plaintiffs have adequately pleaded the existence of a § 1985 conspiracy.  *See supra* Section II.

*Second*, Defendants argue that the § 1986 claim must fail because if § 1986 were given "stand-alone viability" without also requiring a § 1985 claim, it would violate the constitutional vagueness and overbreadth doctrines.  MTD Br. at 16–17.  This argument is a straw man.  Plaintiffs do not dispute that "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."  *Callum*, 137 F. Supp. 3d at 844.  This Court need not decide whether § 1986 would be unconstitutionally vague or overbroad if it were divorced from § 1985, because that simply is not at issue in the case.

More than that, Defendants' arguments as to § 1986's supposed vagueness and overbreadth fail on their own merits.  Defendants first assert that § 1986 is overbroad because it does not provide notice of when a person can be held liable for the acts of others, giving the example of a "mass demonstration."  MTD Br. at 16.  This ignores that two of the elements of a § 1986 claim are knowledge of the § 1985 conspiracy and the power to prevent it.  *Callum*, 137 F. Supp. 3d at 844.  Someone who is merely participating in a mass demonstration, without knowledge of the conspiratorial acts of others or the ability to stop them, could not be liable under § 1986.

Defendants also make the passing suggestion that § 1986 "must be limited to persons who had an independent, recognized duty to prevent unlawful conduct, such as sheriffs or the police."

17

MTD Br. at 17.  Defendants cite nothing for that proposition, and an avalanche of precedent buries it.  *See Griffin* v. *Breckenridge*, 403 U.S. 88, 101 (1971) (holding that § 1986 "reach[es]" conspiracies between private citizens); *Callum*, 137 F. Supp. 3d at 844 (denying motion to dismiss § 1986 claim against CVS store managers who conspired against Black customer); *Sullen* v. *Midwest ISO*, 2005 WL 4889257, at *1, *4 (S.D. Ind. Jul. 27, 2005) (same for § 1986 claim brought by employee against former employer); *Vietnamese Fishermen's Ass'n*, 518 F. Supp. at 1007 (granting preliminary injunction on § 1986 claims brought by Vietnamese fisherman against members of the Ku Klux Klan).

## IV.   The Intracorporate Conspiracy Doctrine Does Not Apply to Plaintiffs' §§ 1985(3) and 1986 Claims

Defendants argue that Plaintiffs' §§ 1985(3) and 1986 conspiracy claims fail under the intracorporate conspiracy doctrine, which provides that agents of a corporation cannot conspire with their principals.  MTD Br. at 9–11.  Plaintiffs do not dispute that the Fourth Circuit has applied this  doctrine to § 1985 claims.  *See Buschi* v. *Kirven*, 775 F.2d 1240, 1257–59 (4th Cir. 1985); *Painter's Mill Grille, LLC* v. *Brown*, 716 F.3d 342, 352–53 (4th Cir. 2013).  But those cases are inapplicable here for two reasons.  *First*, Patriot Front is not a corporation, and neither Plaintiffs nor Defendants allege otherwise.  *Second*, Plaintiffs allege that Defendants conspired with persons who were not Patriot Front members, and therefore not agents of the same principal.

Defendants' first argument fails because Plaintiffs do not allege that Patriot Front is a corporation.  *See*  ¶¶ 12–22.  Indeed, Defendants agree with that proposition.  MTD Br. at 10 ("Patriot Front is not a corporation.").  The Fourth Circuit has never held that the intracorporate conspiracy doctrine applies to unincorporated associations like Patriot Front.  Its formulation of the doctrine as applied to § 1985 claims uniformly refers solely to "corporations," or other legally distinct juridical entities, and government bodies.  Of all the Fourth Circuit cases applying the

intracorporate conspiracy doctrine to § 1985 claims, none involved an unincorporated association. *See e.g.*, *Painter's Mill Grille*, 716 F.3d at 352–53 (limited liability company); *Eplus Tech, Inc.* v. *Aboud*, 313 F.3d 166, 179–80 (4th Cir. 2002) (corporation); *Detrick* v. *Panalpina, Inc.*, 108 F.3d 529, 544 (4th Cir. 1997) (corporation); *Bank Realty* v. *Practical Mgmt. Tech.*, 1991 WL 97490, at *4 (4th Cir. June 11, 1991) (corporation); *Locus* v. *Fayetteville State Univ.*, 1989 WL 21442, at *2  (4th Cir. Mar. 8, 1989) (state university); *Buschi*, 775 F.2d at 1257–59 (state officials and employees).

District courts outside the Fourth Circuit that have addressed the question have held uniformly that the doctrine does not apply to unincorporated associations.  As the court reasoned in *Nguyen* v. *Hoang*, 318 F. Supp. 3d 983, 1024 (S.D. Tex. 2018), "[t]he underlying reasoning behind the doctrine, that the corporation is a single entity, does not apply to an unincorporated association," and thus "it is not appropriate to apply the intracorporate conspiracy doctrine" to unincorporated associations.  *See also Sirajullah* v. *Ill. State Med. Inter-Insurance Exchange*, 1988 WL 53210, at *4–5 (N.D. Ill. May 17, 1988) (doctrine does not apply to associations because "[c]orporations have a legal existence, in contrast with voluntary unincorporated associations").

Further, the intracorporate conspiracy doctrine should not be applied to claims brought against unincorporated groups formed for the purpose of depriving persons of civil rights.  Indeed, the Seventh Circuit, in the seminal decision that applied the intracorporate conspiracy doctrine to § 1985—*Dombrowski* v. *Dowling*, 459 F.2d 190 (7th Cir. 1972) (Stevens, J.)—recognized that the doctrine does not preclude claims against unincorporated hate groups like the Ku Klux Klan.  The *Dombrowski* court wrote:

> We do not suggest that an agent's action within the scope of his authority will always avoid a conspiracy finding.  Agents of the Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders of the Grand Dragon.

*Id*. at 196; *see also Travis* v. *Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990) (holding "members of the Ku Klux Klan could not avoid liability" by incorporating). Other federal courts similarly have held that the intracorporate conspiracy doctrine does not  bar § 1985 claims against organizations formed for the purpose of depriving persons of civil rights. *See, e.g.*, *Johnson* v. *Hill St Dales Gen. Hosp.*, 40 F.3d 837, 890 (6th Cir. 1994) ("The corporation's mission is also an important factor to be considered.  A corporation formed for the purpose of depriving citizens of their civil rights would not be shielded by the intracorporate conspiracy doctrine."); *Dobbey* v. *Jeffreys*, 417 F. Supp. 3d 1103, 1112 (N.D. Ill. 2019) (doctrine does not apply to "conspiracies 'that permeate the ranks of the organization's employees'"); *Weston* v. *City of Chi.*, 2021 WL 2156459, at *9 (N.D. Ill. May 27, 2021) (same); *Nieto* v. *United Auto Workers Local 598*, 672 F. Supp. 987, 993 (E.D. Mich. 1987) ("The Ku Klux Klan certainly is not a legitimate business entity, and its concerted activities are, by definition, the result of personal discriminatory animus on the part of its members.").

The reasoning of *Dombrowski* and these other decisions makes sense.  Congress enacted § 1985 to outlaw organized campaigns to deprive persons of their civil rights.  If members of a conspiracy could evade § 1985 by giving a name to their undertaking and calling themselves "members" of their self-styled group, the very purpose for which Congress enacted § 1985 would fail.  The Court should not read a doctrine into the statute that neuters Congress' intent.  *Rebel Van Lines* v. *Compton*, 663 F. Supp. 786, 792 (C.D. Cal. 1987) ("Conspirators should not be able to avoid the civil rights laws merely by incorporating before they commit their discriminatory acts."). This Court should follow *Dombrowski* and rule that the intracorporate conspiracy does not apply

to Patriot Front, an unincorporated group formed for the purpose of depriving persons of their civil rights.[2]

The second reason that Defendants' intracorporate conspiracy argument fails is that the Amended Complaint does not allege that all of the conspirators were members of Patriot Front. To the contrary, it alleges that two of the conspirators—Defendants John Does 7 and 8—were *not* Patriot Front members (they were merely prospective members).  ¶¶ 37–38.  The intracorporate conspiracy doctrine bars a conspiracy claim only where *all* the conspirators were employees of the same qualifying entity.  The participation of a single non-employee means the claim is not barred. *Phoenix Renovation Corp.* v. *Rodriguez*, 403 F. Supp., 2d 510, 517 (E.D. Va. 2005) (denying motion to dismiss conspiracy claim where not all conspirators were employees of same corporation).

The recent decision in *Smith* v. *Trump*, 2023 WL 417952 (D.D.C. Jan. 26, 2023), is instructive.  In *Smith*, the plaintiffs were U.S. Capitol Police officers who were at the Capitol on January 6, 2021.  *Id.*  They sued former President Donald Trump, members of three white supremacist groups—the Proud Boys, the Oath Keepers, and the Three Percenters—and other individuals and organizations under §§ 1985 and 1986.  *Id.*  One of the Proud Boy members and one of the Oath Keepers members moved to dismiss on the ground that the intracorporate conspiracy doctrine barred the plaintiffs' claims.  *Id.*  The district court denied their motion on the

---

[2] Indeed, the Fourth Circuit has previously relied on *Dombrowski* in applying the intracorporate conspiracy doctrine to § 1985.  *Buschi*, 775 F.2d at 1251.  *See also Locus*, 1989 WL 21442, at *2 (citing *Dombrowski* approvingly).  This Court also has described *Dombrowski* as "establish[ing] the framework of the debate" over the applicability of the intracorporate conspiracy doctrine to § 1985, quoting the discussion from *Dombrowski* that says the Ku Klux Klan is outside the intracorporate conspiracy doctrine's purview.  *Haigh* v. *Matsushita Elec. Corp.*, 676 F. Supp. 1332, 1342 (E.D. Va. 1987).

grounds that each movant "[was] alleged to have conspired with others outside of their organization." *Id.* at *5.  "The intracorporate conspiracy doctrine," the court wrote, "does not, of course, apply to conspiracies involving persons outside the organization." *Id*.

Here, the Amended Complaint specifically alleges that Defendants conspired with Defendants John Does 7 and 8, who were not members of the Patriot Front.  ¶¶ 49–50.  This Court should follow *Smith* and other cases, and rule that the intracorporate conspiracy doctrine does not bar Plaintiffs' claims because the alleged conspiracy is not limited to Patriot Front members.

**V.    Plaintiffs Have Pleaded a Claim under Virginia Code § 8.01-42.1**

**A.    Defendants Have Failed to Establish That § 8.01-42.1 Is Facially Unconstitutional**

Section 8.01-42.1 is not facially unconstitutional under the First Amendment.  To raise a facial challenge under the First Amendment, a party must either: (1) "demonstrate 'that no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep'" or (2) "show that the law is 'overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Greater Balt. Ctr. for Pregnancy Concerns, Inc.* v. *Mayor & City Council of Balt.*, 721 F.3d 264, 282 (4th Cir. 2013) (en banc) (quoting *United States* v. *Stevens*, 559 U.S. 460, 472–73 (2010)). Parties raising a facial challenge to the constitutionality of a statute "confront 'a heavy burden' in advancing their claim." *Nat'l Endowment for the Arts* v. *Finley*, 524 U.S. 569, 580 (1998) (quoting *Rust* v. *Sullivan*, 500 U.S. 173, 183 (1991)).

Defendants cannot establish that § 8.01-42.1 would be invalid in every application.  The statute proscribes three narrow categories of conduct: "(i) intimidation or harassment, (ii) violence directed against [a] person, or (iii) vandalism directed against [a person's] real or personal property."  § 8.01-42.1(A). Such conduct falls beyond the scope of the First Amendment's

protections.  *See Abernathy* v. *Conroy*, 429 F.2d 1170, 1176 (4th Cir. 1970) ("[I]t is axiomatic that violent acts are not accorded protection under the first amendment, even though they also constitute expressive or communicative conduct.").  And to the extent that intimidation or harassment involves speech, such speech also falls outside the protections of the First Amendment where it qualifies as a "true threat," which states may ban without violating an individual's right to free speech.  *Salim* v. *Dahlberg*, 170 F. Supp. 3d 897, 913 (E.D. Va. 2016); *see also Feminist Majority Found.* v. *Hurley*, 91 F.3d 674, 691 (4th Cir. 2018) ("The Supreme Court and our Court have consistently recognized the principle that threatening speech is not protected by the Constitution.").  "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death."  *Virginia* v. *Black*, 538 U.S. 343, 360 (2003).  Section 8.01-42.1 is constitutional as it prohibits only that speech that rises to the level of actual intimidation or harassment.  *See Salim*, 170 F. Supp. 3d at 913.

Defendants also cannot establish that the statute is unconstitutionally overbroad.  "[T]he Supreme Court has counseled lower courts to declare statutes facially overbroad 'sparingly and only as a last resort.'"  *Legend Night Club* v. *Miller*, 637 F.3d 291, 297 (4th Cir. 2011) (quoting *Broadrick* v. *Oklahoma*, 413 U.S. 610, 613 (1973)).  As noted above, § 8.01-42.1 is limited to intimidation or harassment, physical violence, and vandalism.  *See* § 8.01-42.1(A).  Contrary to Defendants' assertions, that such conduct is motivated by racial (or other) animus does not transform it into speech subject to First Amendment protection.  *Am. Life League, Inc.* v. *Reno*, 855 F. Supp. 137, 142 (E.D. Va. 1994) ("[C]onduct does not become 'speech' entitled to the protection of the First Amendment whenever the actor intends to express an idea through his conduct." (citing *Wisconsin* v. *Mitchell*, 508 U.S. 476, 484 (1993))).

23

Lastly, Defendants' argument that § 8.01-42.1 is facially unconstitutional under *R.A.V.* v. *City of St. Paul*, 505 U.S. 377 (1992) is meritless.  The statute at issue in *R.A.V.* criminalized the display on public or private property of any symbol that "one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender." *Id.* at 380.  Section 8.01-42.1 does not impose civil liability on a defendant whose conduct "arouses anger, alarm or resentment" in others, but only on a defendant that intimidates or harasses another, which, as explained above, falls within the state's authority to regulate conduct and to ban "true threats." *See Salim*, 170 F. Supp. 3d at 913; *Feminist Majority Found.*, 91 F.3d at 691. The Court in *R.A.V.* explicitly acknowledged that "threats of violence are outside the First Amendment." *See R.A.V.*, 505 U.S. at 388.

### B.   Defendants Have Failed to Establish That § 8.01-42.1 Is Unconstitutional as Applied to Their Campaign of Intimidation and Harassment

Section 8.01-42.1 is likewise constitutional as applied to Defendants' campaign of intimidation and harassment.  In contrast to a facial challenge, an as-applied challenge is "based on a developed factual record and the application of a statute to a specific person." *Richmond Med. Ctr. for Women* v. *Herring*, 570 F.3d 165, 172 (4th Cir. 2009).  "In order to prevail on an as-applied First Amendment challenge, a [challenger] 'must show that the regulations are unconstitutional as applied to their particular speech activity.'" *Fusaro* v. *Howard*, 19 F.4th 357, 368 (4th Cir. 2021) (quoting *Edwards* v. *Dist. of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014)).

As explained above, the First Amendment's protections do not extend to Defendants' course of conduct intended to intimidate and instill fear of violence in members of a discrete community.  Defendants characterize their acts as mere "painting over a mural, as an expression of disagreement with its content" without acknowledging the full scope and context of their

actions.[3]  Patriot Front members entered Plaintiffs' neighborhood and used racist iconography to intimidate and harass local community members over a period of several months.  ¶ 48. Using white spray paint, Defendants then effectively erased a mural of a Black American icon in a predominantly Black neighborhood while recording themselves and using a racial slur.  ¶¶ 51–70.  Moreover, Defendants' destruction of the Arthur Ashe mural occurred only one week before the Unite the Right trial was scheduled to begin.  ¶¶ 49–70.  Given the deadly nature of the rally, which occurred an hour away from the Battery Park neighborhood, the vandalism was reasonably understood by Plaintiffs as a warning that Black residents of the neighborhood and their allies were not safe in their own community.[4]  ¶¶ 45, 74–85.  That Defendants may not have intended to cause immediate physical harm to members of the Battery Park neighborhood does not transform their conduct from a true threat into protected speech. *See Black*, 538 U.S. at 359–60 ("The speaker need not actually intend to carry out the threat.  Rather, a prohibition on true threats 'protects individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" (quoting *R.A.V.*, 505 U.S. at 388)).

Further, Defendants' suggestion that a true threat requires the use of "highly offensive symbols" or explicit "threats or offensive/vulgar epithets" is unsupported by the case law.  In *Law* v. *Hilton Domestic Operating Co.*, 2020 WL 7130785 (E.D. Va. Dec. 4, 2020), this court

---

[3] Defendants do not elaborate on what they mean by "disagreement with [the mural's] content," but they appear to acknowledge that the vandalism was a racist attempt to denigrate the mural specifically because it was dedicated to the achievements of a prominent Black American.

[4] Defendants misstate facts alleged in the complaint regarding Plaintiffs' knowledge of Patriot Front's white supremacist ideology.  Defendants suggest that Plaintiffs were unaware of the meaning of the symbols when Defendants vandalized the Arthur Ashe memorial. MTD Br. at 17. But Sealed Plaintiff 1 alleges that they became aware of Patriot Front's mission when its members first began their campaign of vandalism in Battery Park during the summer of 2021, several months before Defendants destroyed the mural.  ¶ 74.

considered the constitutionality of a § 8.01-42.1 claim arising out of the defendants' use of racial profiling.  The plaintiff in *Law* alleged that he was approached by a security guard in defendants' hotel while waiting in the lobby and repeatedly asked whether he "belonged there."  *Id.* at *1.  The security guard allegedly demanded that plaintiff "produce identification and his room key to prove that he had a reservation at the hotel."  *Id.*  The only other guests in the lobby were white, and plaintiff alleged that none of them were asked to provide identification.  *Id.*  When he complained to the front desk and corporate office, plaintiff was allegedly told that he "fit the homeless profile."  *Id.*  The district court rejected defendant's argument that application of § 8.01-42.1 would violate defendant's First Amendment rights.  *Id.* at *12.  The court noted that states can ban "true threats" and found that plaintiff plausibly alleged that defendants' acts could rise to that level.  *Id.*  As in *Law*, Plaintiffs need not allege that Defendants made explicit threats or used highly offensive symbols; Plaintiffs have plausibly alleged that Defendants' conduct intended to intimidate Plaintiffs and other members of the Battery Park community who supported Black accomplishment and history.  ¶¶ 48–71.

### C.   Defendants Have Failed to Establish That §§ 8.01-42.1 Is Unconstitutionally Vague

Section 8.01-42.1 is not unconstitutionally vague.  A statute can be impermissibly vague if it either: (1) fails to provide people of ordinary intelligence reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement.  *Hill* v. *Colorado*, 530 U.S. 703, 732 (2000).  Neither element is present here.

Defendants attempt to analogize the words "intimidation" and "harassment" as set forth in the Virginia statute, to the words "obscene," "profane," and "indecent" which were found unconstitutionally vague in *FCC* v. *Fox Television Stations, Inc*., 567 U.S. 239 (2012).  However, this analogy is inapt.  Defendants cherry-pick the words found unconstitutionally vague in *FCC*

and fail to take into account the facts of the case and the regulatory background which informed the Supreme Court's decision. In *FCC*, the Court held that because the Commission failed to give defendants fair notice that fleeting expletives and momentary nudity could be found actionably indecent prior to the broadcasts in question, the Commission's standards were vague as applied to these broadcasts. *Id.* at 258. Critically, the *FCC* Court based its holding on the regulatory background. The broadcasters pointed to a lengthy procedural history demonstrating that the Commission had altered its own interpretation of the types of conduct that qualified as obscene under the statute without providing any notice to the broadcaster or public. *Id.* at 254. Here, unlike in *FCC*, Defendants can point to no authority or history suggesting the terms harassment or intimidation as used in §§ 8.01-42.1 were subject to a change in interpretation without notice.

Defendants also seek to analogize the words "vilify, humiliate, or incite," which were found unconstitutionally vague in *Volokh* v. *James*, 2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023). Again, Defendants miss the mark. Defendants fail to articulate what is indefinite or vague about the terms "harassment" and "intimidate." To the contrary, both are commonly understood by ordinary people and—unlike in *Volokh*—put ordinary people on notice of the type of conduct that is proscribed.

Defendants contend that the word "harassment" has only been "imparted a definite meaning" in the context of sexual harassment and domestic abuse. However, an ordinary person understands what the term harassment covers, and the dictionary definitions for this word are clear. *See United States* v. *Osinger*, 753 F.3d 939, 944–45 (9th Cir. 2014) (noting that "harass" "[is] not [an] esoteric or complicated term[] devoid of common understanding"). *See* "Harassment," *Merriam-Webster.com,* https://www.merriam-webster.com (16 March 2023) (defined as making someone "timid or fearful," especially "to compel or deter by or as if by threats").

Moreover, courts routinely have held that the words "harassment" and "intimidation" are not unconstitutionally vague.  In *O'Brien* v. *Welty*, 818 F.3d 920, 930–31 (9th Cir. 2016), the Ninth Circuit held that a California regulation authorizing state universities to discipline students for threatening conduct, including "intimidation" or "harassment," was not an unconstitutionally vague limitation on speech under the First Amendment.  The court concluded that the fact that the terms "might entail subjective interpretation in some cases was not enough to sustain a vagueness challenge."  *Id.* at 930; *see also West* v. *Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1367–68 (10th Cir. 2000) (holding school district's "Racial Harassment and Intimidation" policy was not unconstitutionally vague where a reasonable student of ordinary intelligence could understand what conduct it prohibited); *United States* v. *Gonzalez*, 905 F.3d 165, 190 n.10 (3d Cir. 2018) (stalking statute was not unconstitutionally vague, in part, because it used readily understandable terms such as "harass" and "intimidate"); *United States* v. *Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) (same).

Despite Defendants' assertions to the contrary, the plain meaning of the "intimidation" and "harassment" is clear, and there is no doubt that Defendants' campaign of vandalism, defacement, and property destruction falls within the conduct the Virginia statute is intended to proscribe.

### D.     Plaintiffs' Have Adequately Pleaded Defendants' Liability under § 8.01-42.1

Defendants devote merely one line of their memorandum to the argument that Plaintiffs' factual allegations fail if the statute is not unconstitutional.  A plaintiff can establish liability under § 8.01-42.1 by demonstrating that: (1) defendant subjected the plaintiff to intimidation or harassment and (2) the intimidation or harassment was "motivated by racial, religious, gender, disability, gender identity, sexual orientation, or ethnic animosity."  § 8.01-42.1(A).

Defendants' campaign of racist vandalism in Plaintiffs' neighborhood constitutes intimidation and harassment for purposes of § 8.01-42.1.  Although "[v]ery few courts have

28

provided elaboration of the statute," *Sines*, 324 F. Supp. 3d at 800, claims under § 8.01-42.1(A) have survived motions to dismiss where, for example:  the defendant apprehended plaintiff while she was shopping, "used a racial slur, and later implied that African-Americans came into Target to steal," *Berry* v. *Target Corp.*, 214 F. Supp. 3d 530, 535 (E.D. Va. 2016); the defendants "used racial slurs and physically attacked [plaintiffs] because of their race," *Frazier* v. *Cooke*, 2017 WL 5560864, *7 (E.D. Va. Nov. 17, 2017); the defendant allowed an employee to refuse service to the plaintiff, a Muslim woman dressed in a niqab, and allowed the employee to call the plaintiff a "security risk" and call the police to have the plaintiff removed from the store, *Williams* v. *AM Lapomarda*, 2020 WL 3643466, at *13 (E.D. Va. July 6, 2020); and the defendant allowed its security guard to question and accost defendant, the only Black man in defendant's hotel lobby, about whether he belonged in the hotel, *Law*, 2020 WL 7130785, at *11.  Against this backdrop, Defendants' months-long vandalism of Plaintiffs' neighborhood park culminating in the destruction of the Arthur Ashe mural constitutes intimidation and harassment prohibited under § 8.01-42.1(A).  ¶¶ 48–71.

Defendants' conduct was undoubtedly motivated by racial animus, as Plaintiffs plausibly allege, *see* ¶¶ 112–13, particularly since all inferences must be drawn in Plaintiffs' favor on this motion.  *See Venkatraman*, 417 F.3d at 420.  Defendants argue, without any support, that "the most plausible interpretation of [their] motives was indignation at the widespread defacement of Confederate statutes [*sic*], not hostile intent directed specifically toward the plaintiffs."  MTD Br. at 21–22.  Defendants do not elaborate on how their destruction of the Arthur Ashe mural or preceding campaign of vandalism relate in any way to defacement of confederate statues. Whatever excuses Defendants may develop as this case proceeds, Plaintiffs have alleged facts that plausibly establish the racial animosity that motivated Defendants' conduct.  Defendants, members

29

of a white supremacist organization, destroyed a mural celebrating a Black American icon while using a racial slur.  ¶¶ 51–70. This act occurred after months of ongoing white supremacist vandalism in Battery Park and a week before the start of the Unite the Right trial.  ¶¶ 48–70.  These facts are more than sufficient to plausibly establish Defendants' racial animosity.  *See Williams*, 2020 WL 3643466, at * 13 (court can infer animus if no direct evidence of animus).  To the extent that Defendants argue their position is "the most plausible," that is a question of fact improper for resolution on a motion to dismiss.  *See Hock* v. *Substitute Trustee Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).

## <u>CONCLUSION</u>

For the reasons stated, Plaintiffs respectfully request that Defendants Gancarz, Noyce, Dail, Turetchi, and Tredinnick's motions to dismiss be denied.

Respectfully submitted,

SEALED PLAINTIFFS 1 and 2

By: /s/ Michael R. Shebelskie
Counsel

Michael R. Shebelskie
VSB No. 27459
Kevin S. Elliker
VSB No. 87498
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
mshebelskie@HuntonAK.com
kelliker@HuntonAK.com

Edward G. Caspar (admitted pro hac vice)
DC Bar No. 1644168
Arthur Ago (admitted pro hac vice)
DC Bar No. 463681

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005
Telephone:  (202) 662-8600
Facsimile:  (202) 783-0857
ecaspar@lawyerscommittee.org
aago@lawyerscommittee.org

Ryan P. Phair (admitted pro hac vice)
DC Bar No. 479050
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave, NW Suite 900
Washington, DC 20037-1701
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201
rphair@HuntonAK.com

Daniel J. Kramer (admitted pro hac vice)
NY Bar No. 1979392
Joshua Hill (admitted pro hac vice)
NY Bar No. 4297826
Gregory F. Laufer (admitted pro hac vice)
NY Bar No. 4614764
Robert J. O'Loughlin (admitted pro hac vice)
NY Bar No. 5225966
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 492-0441
dkramer@paulweiss.com
jhill@paulweiss.com
glaufer@paulweiss.com
roloughlin@paulweiss.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 29, 2023, I caused a copy of the foregoing to be electronically filed

using the CM/ECF system, which will send notification to counsel of record of such filing by

operation of the Court's electronic system.  Parties may access this filing via the Court's

electronic system.  Additionally, copies have been sent to the following via Email.

> Bradley P. Marrs (VSB#25281)
> Marrs & Henry
> 7202 Glen Forest Drive, Suite 307
> Richmond, VA 23226
> Tel. (804) 662-5716
> Fax (804) 662-5712
> bmarrs@marrs-henry.com
>
> Glen K. Allen
> Glen Allen Law (MD-NA)
> 5423 Springlake Way
> Baltimore, MD 21212
> Tel: (410) 802-6453
> Glenallenlaw@protonmail.com

By: /s/ Michael R. Shebelskie
Counsel

Michael R. Shebelskie
VSB No. 27459
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
mshebelskie@HuntonAK.com