UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **SEALED PLAINTIFF 1** <br> and <br> **SEALED PLAINTIFF 2,** <br><br> Plaintiffs, <br><br> v. <br><br> **PATRIOT FRONT, et al.** <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 3:22 cv 670-MHL <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPLY MEMORANDUM IN FURTHER
## SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Nathan Noyce, Thomas Dail, Paul Gancarz, Daniel Turetchi, and Aedan Tredinnick, by counsel, respectfully submit this reply memorandum in further support of their motion to dismiss plaintiffs' First Amended Complaint under FRCP 12(b)(6).

### INTRODUCTION

Plaintiffs in their opposition memorandum continue to characterize the defendants as "White Supremacists," adding now a new slur -- that they are members of a "hate group." No one, obviously, is asking the plaintiffs or this Court to approve of the defendants' ideology, and certainly not the distorted versions plaintiffs ascribe to them. But there is a danger to the fair adjudication of this important case arising from plaintiffs' ongoing resort to rank name calling. The labels are an attempted improper shortcut to satisfying plaintiffs' strict pleading obligations.

Name calling aside, plaintiffs are required to clearly demonstrate all elements of standing. They have not done so. They are required to meet a high threshold to establish a prima facie case

1

for their civil rights conspiracy claims; they have fallen short here as well. They need to show how their factual allegations fit into the required elements of Virginia Code § 8.01-42.1 but cannot do so. Plaintiffs' heavy reliance on cases involving violent actions by the Ku Klux Klan, the January 6 defendants, the demonstrators at Charlottesville, and others bear no fair resemblance to the facts alleged in this case, and show that the plaintiffs cannot support their claims without grasping for straws.

In *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), *Snyder v. Phelps*, 502 U.S. 443 (2011), and many other cases, the Supreme Court has stood firm against penalizing parties based on the emotional antipathy many feel toward those parties' statements or ideologies. These cases, both in their general tenor and their particular application to this case, along with the other cases cited in defendants' initial memorandum and this reply, demonstrate that defendants here should not be punished for having disfavored views. Plaintiffs' complaint, accordingly, should be dismissed.

## ARGUMENT

### I.

### PLAINTIFFS LACK STANDING TO MAKE THEIR CLAIMS.

Plaintiffs bear the burden of establishing standing at the time they bring suit. *Carney v. Adams*, 141 S.Ct. 493, 497 (2020). Plaintiffs must, accordingly, clearly allege facts demonstrating each element of standing, i.e., that they have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). The cases on which plaintiffs rely to establish their standing in reality undermine it, for they demonstrate how far plaintiffs' factual allegations fall short of satisfying their required burden.

2

The following are summaries of five cases ("Plaintiffs' Cases") on which plaintiffs primarily rely in their opposition memorandum to support their standing argument. Comparing the facts in these cases to plaintiffs' factual allegations shows dramatically that plaintiffs' standing arguments impermissibly rely on conjecture and speculation:

- *Fisher v. Shamburg*, 624 F.2d 156 (10th Cir. 1980). As the plaintiff Fisher, a black man, was entering a restaurant, the defendant Shamburg, a white man who was there with two other white men, uttered a racial slur at Fisher and later criminally assaulted him.
- *Vietnamese Fisherman's Ass'n v. Knights of Ku Klux Klan*, 518 F. Supp. 993 (S.D. Tex. 1981). Members of the Ku Klux Klan, wearing their robes, fired cannons and burned crosses in the presence of Vietnamese fishermen in Texas and burned the fishermen's shrimp boats.
- *Sines v. Kessler*, 324 F. Supp.3d 765 (W.D. Va. 2018). This case arose from the tumultuous and violent events at the Unite the Right Rally in Charlottesville on August 11 and 12, 2017. Those events included physical assaults, a torchlight march, and offensive signs and chants by the defendants.
- *Nat'l Coal. On Black Civic Participation v. Wohl*, 512 F. Supp.3d 500 (S.D.N.Y. 2021). Plaintiffs alleged that defendants sent threatening robocalls containing false information intended to prevent African-American recipients from voting by mail.
- *Thompson v. Trump*, 590 F. Supp.3d 46 (D.D.C. 2022). This opinion arose from the violent and gargantuan events of January 6, 2021. As to one of the plaintiffs, Congressman Swalwell, the court addressed the issue of Article III standing on the premise that Congressman Swalwell suffered only emotional injuries relating to the January 6 events. Congressman Swalwell had alleged in his complaint that he had been trapped in the House chamber as plainclothes officers barricaded doors and held off the mob at gunpoint.

Plaintiffs thus rely on cases involving criminal assaults on black persons, Ku Klux Klan attacks on Vietnamese fishermen, the riotous events at Charlottesville, the January 6 attacks on the Capitol, and directed robo calls that made false and threatening statements. None of Plaintiffs' Cases bear a fair and relevant resemblance to the plaintiffs' factual allegations regarding defendants' conduct in this case. To the contrary, the contrast is striking.

**In all Plaintiffs' Cases - but not in this case - the defendants directly confronted the plaintiffs**. The term "confronted" understates the various defendants' conduct toward the plaintiffs in nearly all the Plaintiffs' Cases, involving as these cases did criminal assaults, cross burning, racially offensive signs and chanting while engaging in riotous behavior, and other violent actions. Even the robo call case involved the defendants' invasion of the plaintiffs' private space with false and threatening messages. No conduct remotely like this is set forth in plaintiffs' allegations in this case. There was no confrontation; indeed there were no encounters at all. There were no signs or messages, that, in the words of the Supreme Court in *Virginia v. Black*, had "a long and pernicious history as a signal of impending violence." 538 U.S. 343, 363 (2011) (referring to cross burning).

Plaintiffs are attempting to construct their claims based on their claims of subjective fear alone. Their logic, essentially, is "I experienced fear; therefore I was threatened; therefore I was injured; therefore I have standing." But subjective fear or other emotional reaction without facts that objectively describe a true threat is not a basis for alleging a constitutional violation. In *Virginia v. Black*, the Supreme Court explained what constitutes an objectively verifiable true threat:

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.… Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

*Id*. at 359-60. The painstaking care with which the Court addressed why cross burning meets these stringent definitions bespeaks a reluctance to open the floodgates on constitutional claims based on subjective fear, where the objective facts show no confrontations and no messages with a "long and pernicious history as a signal of impending violence."

**In none of Plaintiffs' Cases was there – as there is in the present case – the critical involvement of an unknown third party in the chain of causation leading to plaintiffs' alleged injury.** Plaintiffs must satisfy the "fairly traceable" component of the standing requirements, which "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000). While the defendants' conduct need not be last link in the causal chain, the plaintiffs must be able to demonstrate that the alleged harm was caused by the defendants as opposed to the "independent action of some third party not before the court." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018). This traceability requirement, not an issue in any of the Plaintiffs' Cases, is a critical factor with regard to the viability of the present complaint.

Plaintiffs' allegations make indisputably clear that their anxiety about Patriot Front arose from a description or characterization of Patriot Front provided to them by an unknown entity or person. *See* Complaint at ¶ 74. Neither the Patriot Front logo placed over the Arthur Ashe mural nor the Patriot Front stickers allegedly placed on lampposts communicated anything to the plaintiffs. Plaintiffs allegedly researched the stickers and learned from some unnamed source information about Patriot Front -- information that, almost certainly, characterized Patriot Front in a hostile manner. But who or what was the source of this information?[1]

It might be contended that what and how the plaintiffs were told about the Patriot Front is a factual question that should not be resolved on a motion to dismiss. The plaintiffs, however, have

---

[1] Certain advocacy groups have been chastised for recklessly labelling any number of groups with whom they disagree as "hate groups." *See, e.g.*, June 22, 2018 *Washington Post* article by Marc Thiessen entitled "The Southern Poverty Law Center Has Lost All Credibility" ("[The SPLC] has become a caricature of itself, labeling virtually anyone who does not fall in line with its left-wing ideology an 'extremist' or 'hate group.'") https://www.washingtonpost.com/opinions/the-southern-poverty-law-center-has-lost-all-credibility/2018/06/21/22ab7d60-756d-11e8-9780-b1dd6a09b549_story.html?utm_term=.8c0cb2dfaee3.

the burden of establishing every element of their standing, including traceability, at the outset of the case. Their own allegations point directly and necessarily to information provided by this unknown third party or entity as the source of the fearfulness that plaintiffs characterize as their injury. When plaintiffs filed their complaint, they knew or should have known what they had been told about the Patriot Front, and by whom. Plaintiffs have inexplicably omitted this critical information.

**Unlike any of Plaintiffs' Cases, in this case harm to public property is at the core of plaintiffs' allegations.** Even when a plaintiff satisfies the basic constitutional requirements for standing, federal courts will not adjudicate a "generalized grievance shared in substantially equal measure by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This latter requirement was not an issue in Plaintiffs' Cases but is central to the standing question in this case, given that plaintiffs' allegations, stripped to their essence, predicate their alleged injury on their emotional reactions to vandalism that harmed public property. In addition to the reasons presented in defendants' initial memorandum, the Fourth Circuit's decision in *Burke v. City of Charleston*, 139 F.3d 401 (4th Cir. 1998), demonstrates why plaintiffs fail this requirement.

In the *Burke* case, the owner of a building in Charleston, South Carolina, commissioned an artist to paint a mural for the building. The Charleston Board of Architectural Review (BAR) denied the owner a permit and issued a stop work order. The artist (not the owner) sued Charleston in federal court, asserting that the permit denial violated the artist's First Amendment free speech and Fourth Amendment Equal Protection rights. The artist argued he had standing because the permit denial caused him to "fear [his] work would not be permitted" in other parts of Charleston.

Finding no standing, the Fourth Circuit rejected the artist's suit, holding that

> federal courts are venues preserved for those who have a direct stake in the outcome of the controversy which they seek to litigate. Like the thousands upon thousands of

6

> Charlestonians and Charleston visitors who would likely take pleasure in Burke's creation were they only allowed to view it there on Klenk's wall, Burke himself, although the creator of the work, lacks such a direct stake, and as a consequence the district court lacked jurisdiction to adjudicate his claims.

139 F.3d at 407. The plaintiffs in this case similarly lack standing. Like the artist in *Burke*, the logic of their theory of injury leads inescapably through harm done to a mural for which they had no greater rights than the general public.

## II.

### PLAINTIFFS HAVE NOT PLEADED AND CANNOT PLEAD THE NECESSARY ELEMENTS OF A 42 U.S.C. § 1985(3) CLAIM.

To validate their § 1985 conspiracy claims, plaintiffs seek a novel and expansive interpretation of that statute. Plaintiffs' allegations, however, fail to satisfy either the stringent pleading rules for § 1985 conspiracies or the substantive requirements for such claims set forth by Supreme Court and Fourth Circuit precedents.

As this Court noted in *Smith v. Town of South Hill*, 611 F.Supp.3d 148, 187-88 (E.D. Va. 2020), when plaintiffs assert claims of conspiracy to violate civil rights under § 1985 they must meet a high threshold to establish a prima facie case. *See also Simmons v. Poe,* 47 F.3d 1370, 1376-77 (4th Cir. 1995); *A Society Without a Name for People Without a Home v. Virginia*, 699 F.Supp.2d 787, 796 (E.D. 2010), *aff'd*, 655 F.3d 342 (4th Cir. 2011). The Fourth Circuit emphasized in *Simmons* that a § 1985 conspiracy claim requires the plaintiff to show a "meeting of the minds" among conspirators and requires courts to look closely as to whether "a plaintiff has set forth sufficient facts to establish a § 1985 conspiracy." 47 F.3d at 1377. The Fourth Circuit and this Court have specifically rejected § 1985 claims in many cases where the purported conspiracies were alleged in a conclusory manner, in the absence of concrete supporting facts. *See, e.g., Simmons; Town of South Hill; A Society Without a Name.* These strict requirements specifically

7

for § 1985 conspiracy pleading are in addition to those required generally for pleading conspiracies under *Twombly*. *See, e.g., Society Without a Name*, 699 F.3d at 798:

> ASWAN fails to allege with any specificity…the specific communications amongst the conspirators, or the manner in which any such communications were made…. "These bare assertions ... amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim.... As such, the allegations are conclusory and not entitled to be assumed true." *Twombly*, 550 U.S. at 554-55.

Plaintiffs' conspiracy allegations do not satisfy these standards. As to defendants Turetchi and Tredinnick (and 21 other alleged conspirators) they merely repeat in cookie cutter fashion the conclusory phrase "was present for, and participated in, a meeting on or about October 12, 2021, planning the vandalism of the Arthur Ashe mural in Battery Park, Richmond, Virginia." This phrase fails to provide the required "specific communications amongst the conspirators" or concrete detail about what the conspirators allegedly agreed to, e.g., what their alleged role was to be, as to what actions and goals.

Indeed, the plaintiffs' cut-and-paste phrase is ambiguous as to whether the conspirators actually agreed to anything. It first states that the conspirators "were present for, and participated in, a meeting." Then it adds "planning the vandalism of the Arthur Ashe mural." The phrase thus does not even clearly allege the alleged conspirators *agreed* to the plan, only that they allegedly "participated in" a meeting in which the planning allegedly occurred. The phrase does not say the alleged planning was the only topic at the meeting, does not indicate who among the alleged conspirators said anything, does not state whether the meeting was in person or telephonic, and does not say who if any of the alleged conspirators approved the alleged plans. And the phrase says nothing about what the alleged planning consisted of, a particularly critical point since none of the alleged conspirators except Noyce, Dial, and John Doe 1 had any involvement in the actual vandalism.

The allegations regarding Paul Gancarz have a little more detail, but here too lack the concrete specificity necessary to pass muster under the stringent § 1985 conspiracy pleading standards. Given that plaintiffs' allegations are indefinite as to what was discussed at the alleged meeting, and by whom, or what the alleged planning consisted of, it does not necessarily follow that, even assuming Mr. Gancarz was a Network Director, he had knowledge of or control over what could have been a rogue operation.

In summary, plaintiffs' conspiracy allegations fail to meet the required conspiracy pleading standards.  Plaintiffs' § 1985 conspiracy claims further fail on substantive grounds – i.e., plaintiffs' failure to set forth substantive rights defendants allegedly violated that are protected by § 1985. As explained in defendants' initial memorandum, under the Supreme Court's *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993), decision, § 1985(3) "applies only to such conspiracies as are 'aimed at interfering with rights . . . protected against private, as well as official, encroachment.'… There are few such rights (we have hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude… and, in the same Thirteenth Amendment context, the right of interstate travel.)" 506 U.S. at 278 (internal citations omitted).  The plaintiffs dispute the defendants' assertion, based on *Bray*, that § 1985 is limited to claims that involve Thirteenth Amendment involuntary servitude or right of interstate travel. They cite *Sines v. Kessler* to support their position. But the court in *Sines* actually agreed with this assertion. 324 F.3d at 781.

The *Sines* court did hold that implicit in the Thirteenth Amendment is a right to be free from racial violence. *Id*. The court, based on the many allegations of violence at the Charlottesville events, then allowed the plaintiffs' § 1985 conspiracy claims to proceed on the predicate that plaintiffs had the right to be free from conspiracies to commit racial violence. The *Sines* decision may have expanded the scope of § 1985 claims beyond what Supreme Court precedents would justify.  But in any event, the plaintiffs' allegations in the present case, unlike those in *Sines*

9

involving the Charlottesville disaster, do not support the *Sines v. Kessler* theory of claims based on an alleged conspiracy to commit racial violence. Plaintiffs do not even contend they do.

Plaintiffs instead seek to expand the scope of § 1985 in a different direction, by implying into the Thirteenth Amendment a right to be free from conspiracies to deprive African Americans of the use of places of public accommodation. In support of this theory, they cite the *Fisher v. Shamburg* case previously discussed, in which a black man was criminally assaulted when he tried to enter a restaurant. Plaintiffs fail to appreciate how disparate the circumstances of *Fisher* and our case are, as they apparently place the criminal assault in *Fisher* on par with painting over a mural and putting stickers on lampposts when no plaintiffs were even present. Allowing a § 1985 action predicated on the Thirteenth Amendment to proceed based on the latter set of facts would open up the § 1985 action in precisely the way the Supreme Court in *Griffin v. Breckenridge,* 403 U.S. 88, 101 (1971), warned against: that it should not be allowed to "apply to all tortious, conspiratorial interferences with the rights of others." It would set a precedent that would lead to federalizing a broad array of tort and quasi tort claims.

There is a First Amendment aspect to these issues as well. As discussed, the Patriot Front logos on the stickers and the mural were not threatening in themselves. Allegedly, plaintiffs *interpreted* these as threatening, after their supposed research. Even assuming *arguendo* that the information third parties provided to plaintiffs led them to conclude that Patriot Front is a "white supremacist" organization, our nation remains committed to protecting even offensive and hurtful speech on public issues "to ensure that we don't stifle public debate," *Snyder v. Phelps*, 502 U.S. at 461. Moreover, under *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), legal attacks on abstract advocacy, however repugnant to many, must be rejected; only incitement to imminent lawless action may become the basis of a suit. In basing their action on their claimed anxiety alone, without

confrontations or incitement to imminent lawless action, plaintiffs are improperly seeking to use § 1985 as an end run around basic First Amendment values and protections.

In addition, the Supreme Court in *Bray* emphasized that the "intent to deprive of a right'" element requires that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it. This admonition is particularly apposite as to defendants Gancarz, Turetchi, and Tredinnick, who are not alleged to have had any involvement in the vandalism itself, but only to have been present at a meeting in which the vandalism was allegedly in some unspecified way "planned."

### III.

### THE PLAINTIFFS' § 1986 CLAIMS ARE TIME-BARRED[2]

Section 1986 of the Civil Rights laws incorporates its own one-year statute of limitations, i.e., "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." Based on plaintiffs' own allegations in their complaint as amplified by their memorandum in opposition to defendants' motion to dismiss, this one-year statute of limitations bars plaintiffs' § 1986 claims.

Plaintiffs filed their complaint on October 18, 2022. Their complaint alleges and their memorandum argues, however, that defendants' alleged "campaign of vandalism" began in the summer of 2021 with the posting of stickers in the Battery Park neighborhood, *see* Complaint, ¶¶ 48 and 74 and Memo. in Opp. at page 3 and page 24, footnote 4; and, according to plaintiffs,

---

[2] Defendants acknowledge that this argument was not raised in their initial memorandum and apologize for this omission. The issue raised, however, is simple, discrete, and appropriate for resolution at the outset of the case. Defendants accordingly respectfully request permission to present the issue and of course recognize it is appropriate that plaintiffs be given the opportunity to respond.

11

culminated in the stencilling of the Arthur Ashe mural on October 18, 2021, *see* Complaint ¶ 51, Memo. in Opp. at 4. The summer of 2021 was approximately 16 or 17 months prior to the filing of plaintiffs' Complaint and the stenciling of the mural was one year and one day before the filing the Complaint. Section 1986's one-year limitation period is not subject to tolling. *See, e.g., Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 401 (S.D.N.Y 2004); *Smith v. Orange County*, 1995 WL 405018 at * 1 (E.D.N.Y. June 27, 1995); *Bieros v. Nicola*, 839 F.Supp. 332, 337 (E.D. Pa. 1993). Plaintiffs' § 1986 claims, accordingly, are time-barred

## IV.

### PLAINTIFFS HAVE NOT PLEADED, AND CANNOT PLEAD, A VIABLE CLAIM UNDER 42 U.S.C. § 1986.

With one exception, the plaintiffs in their opposition memorandum accurately enumerate the four elements of a § 1986 claim. They do not, however, accurately apply them.

**Existence of § 1985 Conspiracy**. Defendants dispute this for the reasons set forth in arguments I, II and III.

**Defendants' Knowledge of the § 1985 Conspiracy**. Defendants dispute this for the reasons set forth in Argument II regarding plaintiffs' failure to meet § 1985 conspiracy pleading standards. Defendants would note that the *Clark v. Clabaugh*, 20 F.3d 1290 (3d Cir. 1994) opinion on which plaintiffs rely requires proof of "*actual* knowledge" not merely "knowledge" as the plaintiffs state. *Id*. at 1295. The "actual" modifier underscores that plaintiffs must allege and prove the defendants' focused attention on the essential aspects and aims of the § 1985 conspiracy, not merely the defendants' alleged presence in an environment where the conspiracy may (or may not) have been discussed. *See Hampton v. City of Chicago*, 484 F.2d 602, 610 (7th Cir. 1973) (requiring actual knowledge and finding plaintiffs' allegation insufficient in this regard). In any

event, by either standard, "knowledge," or "actual knowledge," plaintiffs' cookie cutter phrase does not pass muster.

Plaintiffs' reliance on *Waller v. Butkovich*, 584 F. Supp. 909 (M.D.N.C. 1984), and *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), does not change this conclusion. Both cases are from 1984, well before the *Simmons*, *Twombly*, *Society Without a Name*, and other cases heightened the requirements for conspiracy pleading. The court in *Waller*, in fact, explicitly rejected the more rigorous pleading requirements for civil rights conspiracies that the Fourth Circuit and Supreme Court later adopted. 584 F. Supp. at 930. And both cases continue plaintiffs' penchant for equating the Patriot Front's stickering and stencilling of a mural with truly violent acts by the Ku Klux Klan and others.

**Defendants' Power to Prevent or Aid in Preventing Wrongs Conspired to Be Done.** Plaintiffs' § 1985 claims are deficient also with respect to the "power to prevent" element as to defendants Turetchi and Tredinnick, who have been entangled in this case by the plaintiffs' copy-and-paste "was present for, and participated in, a meeting" allegations. Plaintiffs do not allege that these defendants had managerial or supervisory authority at the meeting, either in general or over the planning in particular. Nor do they allege that these defendants or defendant Gancarz were asked to approve or did approve the alleged planning or were asked to comment or did comment on the alleged plan. If merely attending - probably telephonically - a meeting with a sizable number of participants at which an alleged conspiracy was addressed in unspecified ways by unknown persons is enough to make a person liable under § 1986, that provision is indeed unconstitutionally vague, for it suffers intensely from the dangerous aspects of vague statutes.

The cases on which plaintiffs rely are readily distinguishable. In the *Perez* and *Waller* cases, the § 1986 defendants had managerial or supervisory authority – indeed, in *Waller* the

defendants were federal officials who had infiltrated the organizations; in *Vietnamese Fisherman*, the defendant whom the court chided for not attempting to dissuade the other defendants was the "Grand Dragon" of the Ku Klux Klan; and in *Cullum*, the § 1986 defendants were corporate managers of the same large drugstore chain who had spoken with each other about the plaintiff.

V.

**PLAINTIFFS' § 1985(3) AND § 1986 CLAIMS ARE BARRED BY THE DOCTRINE THAT AGENTS CANNOT CONSPIRE WITH THEIR PRINCIPALS.**

Plaintiffs acknowledge that under Fourth Circuit law, the intracorporate conspiracy doctrine applies to **§** 1985(3) conspiracies. Plaintiffs could hardly avoid this concession, for Fourth Circuit law is quite clear on this point. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342 (4th Cir. 2013); *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985). Moreover, the Fourth Circuit is not an outlier. *See Bowie v. Maddox*, 642 F.3d 1122, 1130 (D.C. Cir. 2011) (noting that at least seven circuits, including the Fourth Circuit, have held that the intracorporate conspiracy doctrine applies to civil rights conspiracies). Plaintiffs, however, contend that *Painter's Mill, Buschi*, and the other cases cited in defendants' initial memorandum are inapplicable because Patriot Front is an unincorporated association. This argument suffers from multiple flaws.

First, the argument is a red herring. Defendants' argument rests not on the intracorporate conspiracy doctrine *per se* but on the more general rule that agents of the same principal cannot conspire with themselves or with the principal. The viability of this general rule under Virginia law, which applies here, is incontrovertible. *See, e.g., Fox v. Deese*, 234 Va. 412, 362 S.E.2d 699, 708 (1987); *Michigan Mut Ins. Co. v. Smoot*, 128 F. Supp.2d 917, 925 (E.D. Va. 2000); *Rogers v. Deane,* 992 F.Supp.2d 621, 633 (E.D. Va. 2014), *aff'd*, 594 Fed. Appx 768 (4th Cir. 2014).

Plaintiffs in their complaint repeatedly – in ¶¶ 92, 108, and 115 – allege that the Patriot Front members acted as Patriot Front's agents.

In any event, carving out unincorporated associations from the intracorporate conspiracy doctrine is inconsistent with plaintiffs' own pleadings. Federal Rule 17(b)(3) provides that an unincorporated association may sue or be sued to enforce a substantive right under the Constitution. Plaintiffs necessarily relied on this rule to sue Patriot Front. Moreover, plaintiffs expressly allege that Patriot Front has the legal capacity to form an agency relationship. The *Nguyen v. Hoang*, 318 F.Supp.3d 983, 1024 (S.D. Tex. 2018) and *Sirajullah v. State Med. Inter-Insurance Exchange*, 1988 WL 53210 (N.D. Ill. May 17, 1988) cases on which plaintiffs rely do not support excluding unincorporated associations from the general rule in this case. *Nguyen* and *Sirajullah* are based on Texas and Illinois law, not Virginia law.

Plaintiffs' additional argument, based on two non-Virginia cases, that the rule does not apply because defendants John Does 7 and 8 were not alleged to be members or agents of Patriot Front is also flawed.  Counsel for this motion to dismiss are not representing John Does 7 and 8.  Insofar, however, as plaintiffs' argument has an impact on the defendants represented for this motion to dismiss, defendants note that, for the reasons stated in Argument II, the conspiracy allegations against John Does 7 and 8 do not meet the stringent standards for pleading § 1985 conspiracies.  Moreover, a comparison of ¶¶ 92 and 93 of the complaint shows that John Does 7 and 8 are not even alleged to have been co-conspirators in the alleged conspiracy involving the defendants represented for this motion but rather in a separate conspiracy.  Further, on plaintiffs' theory John Does 7 and 8 can conspire with the 26 other defendants but the 26 others cannot conspire with each other. Such confusion adds to the impermissible indefiniteness of plaintiffs' conspiracy allegations.

## V.

## PLAINTIFFS' FACTUAL ALLEGATIONS ARE INSUFFICIENT TO SUPPORT THEIR CLAIMS UNDER VIRGINIA CODE § 8.01-42.1; IF THAT STATUTE WERE INTERPRETED TO ALLOW THEIR CLAIMS, IT WOULD VIOLATE THE FIRST AMENDMENT

Normally federal courts will not decide a constitutional question if there is some other ground upon which to dispose of it. *See, e.g., Bond v. United States*, 572 U.S. 844, 855 (2014). Defendants, accordingly, will first address whether plaintiffs' allegations state a claim under Virginia Code § 8.01-42.1 before addressing constitutional challenges to that statute.

Under any reasonable construction of the Virginia statute's key terms "harassment" and "intimidation" – especially the definition of "intimidation" set forth in *Virginia v. Black* -- plaintiffs' allegations are insufficient to state a claim. As explained in the defendants' Argument I on standing, the salient characteristics of plaintiffs' factual allegations are (1) there was no confrontation or even encounter between the plaintiffs and the defendants and the defendants did not use any symbols with a "long and pernicious history as a signal of impending violence"; 2) a third party, undoubtedly hostile to the defendants, interpreted the Patriot Front logos and values to the plaintiffs; and (3) the plaintiffs' core factual allegations involved damage to public property to which plaintiffs had no greater rights than the general public. These salient aspects sharply distinguish plaintiffs' factual allegations from the facts in any of the cases that have applied the Virginia statute, including the cases plaintiffs cite in their memorandum, *i.e., Berry v. Target Corp.*, 214 F. Supp. 3d 530, 535 (E.D. Va. 2016) (defendant accosted plaintiff while shopping and used a racial slur); *Salim v. Dahlberg*, 170 F. Supp. 3d 897, 913 (E.D. Va. 2016) (passenger in plaintiff's taxi "engaged in an alcohol-fueled rant against Muslims and Arabs that culminated in [passenger] punching [plaintiff] multiple times"); *Law v. Hilton Domestic Operating Co.*, 2020 WL 7130785 (E.D. Va. Dec. 4, 2020) (defendant hotel's security guard

aggressively and insultingly interrogated African-American plaintiff); *Williams v. AM Lapomarda*, 2020 WL 3643466 (E.D. Va. July 6, 2020) (defendant allowed employee to call plaintiff, a Muslim woman, a "security risk" and call police to have her removed from store); and *Frazier v. Cooke*, 2017 WL 5560864 (E.D. Va. Nov. 17, 2017) (defendants "used racial slurs and physically attacked [plaintiffs] because of their race"). All these cases involved defendants' physical invasion of plaintiffs' space and confrontational use of verbal threats and insults, not as in this case a presentation of the defendant's ideology by an unknown source undoubtedly hostile to the defendant.

Assuming *arguendo*, however, that plaintiffs' factual allegations were deemed sufficient to state a claim under the statute -- an assumption that would entail a broader and more amorphous construction of "intimidation" and "harassment" -- the statute becomes subject to constitutional challenge, as explained below.

First, the statute would be void for vagueness, as applied to this case. Vague laws offend important values: they fail to provide people of ordinary intelligence a reasonable opportunity to understand what is prohibited; they create the risk of arbitrary and discriminatory enforcement; and where the statute abuts on sensitive areas of First Amendment freedoms, they inhibit the exercise of those freedoms. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *White Coat Waste Project v. Greater Richmond Transit Co.*, 463 F.Supp.3d 661, 707 (E.D. Va. 2020). The statute, again assuming it were interpreted such that plaintiffs' allegations state a claim, would contravene all these values.

To illustrate, consider the allegation that the defendants placed Patriot Front stickers in a community that was 77% African-American. If the area were 50% African-American, would defendants' actions still be actionable? How does one select the boundaries of the community –

17

a few square blocks or square miles? Would the actions have been actionable if leaflets instead of stickers were involved? With respect to defacing the mural (or a statue), are the political views of the person depicted on the mural or statue a factor in determining whether the defacement is actionable? Are defendants barred from even speaking to an African-American audience? If we accept that the defendants, despite their unpopular views, are entitled under the First Amendment to actively promote them, these questions are consequential, but no answers are ascertainable from the statute. On the facts of this case, "intimidation" and "harassment," like the "outrageousness" at issue in *Snyder v. Phelps*, 562 U.S. at 460-61, would have "an inherent subjectiveness about [them] which would allow a jury to impose liability on the basis of the jurors' tastes or views, or perhaps on the basis of their dislike of a particular expression."

In opposing this conclusion, plaintiffs cite to several cases in which the terms "intimidation" and "harassment" were found to have definite meanings. In the context of those cases, however, the terms did not raise First Amendment issues as directly and centrally as they are presented in this case. "Where a statute's literal scope . . . is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974); *see also Farrell v. Burke,* 449 F.3d 470, 485 (2d Cir. 2006) ("vagueness in the law is particularly troubling when First Amendment rights are involved").

As a consequence of the Virginia statute's vagueness, it is also unconstitutionally overbroad. As this Court explained in *White Coat Waste Project*, a law is overbroad and subject to facial challenge where a substantial number of its applications are unconstitutional, judged in relation to its plainly legitimate sweep. 463 F. Supp.3d at 693. On the assumption that the Virginia statute were given the broad construction the plaintiffs urge and require to prevail, the

18

statute would indeed make actionable a substantial amount of activity protected by the First Amendment. Its lack of narrowly drawn and definite standards would be analogous to the permit regulations invalidated by the Supreme Court in *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992). *See also Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) (striking down decency provisions of Communications Decency Act as overbroad); *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 759 (1988) ("[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers.")

Finally, if given this broad and amorphous construction the Virginia statute would violate viewpoint neutrality as illustrated by the *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992, case discussed in defendants' initial memorandum. Although plaintiffs attempt to depict this case as turning on the mere posting of the Patriot Front stickers, it is manifestly the *content* of the stickers and the Patriot Front's ideology that, on plaintiffs' theory of their case, makes the defendants' conduct actionable under the Virginia statute. Plaintiffs have not plausibly alleged that the content of Patriot Front's ideology, although disfavored and intensely disliked by many, is constitutionally unprotected.

## CONCLUSION

For the reasons stated, defendants request that the plaintiffs' amended complaint be dismissed in its entirety.

Defendants respectfully request oral argument on their motion.

                                                NATHAN NOYCE
                                                THOMAS DAIL
                                                DANIEL TURETCHI
                                                AEDAN TREDINNICK
                                                PAUL GANCARZ

By:_____/s/_____
    Counsel

Bradley P. Marrs (VSB#25281)
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA  23226
Tel. (804) 662-5716
Fax (804) 662-5712
bmarrs@marrs-henry.com

Glen K. Allen, *Pro Hac Vice pending*
Glen Allen Law
5423 Springlake Way
Baltimore, MD  21212 Tel. (410) 802-6453
glenallenlaw@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2023, true and accurate copies of the foregoing were served via ECF procedures of this Court to the all counsel of record.

_____/s/_____
Bradley P. Marrs (VSB#25281)
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA  23226
Tel. (804) 662-5716
Fax (804) 662-5712
bmarrs@marrs-henry.com
*Counsel for defendants*
*Nathan Joyce, Thomas Dail,*
*Daniel Turetchi, Aedan Tredinnick,*
*And Paul Gancarz*