**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **SEALED PLAINTIFF 1** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SEALED PLAINTIFF 2,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:22-cv-00670-MHL** |
| | ) | |
| **PATRIOT FRONT,** | ) | |
| | ) | |
| **THOMAS ROUSSEAU,** | ) | |
| | ) | |
| **PAUL GANCARZ,** | ) | |
| | ) | |
| **NATHAN NOYCE ,** | ) | |
| | ) | |
| **THOMAS DAIL,** | ) | |
| | ) | |
| **DANIEL TURETCHI,** | ) | |
| | ) | |
| **JACOB BROWN,** | ) | |
| | ) | |
| **WILLIAM RING,** | ) | |
| | ) | |
| **AEDAN TREDINNICK** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN DOES 1–19,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS GANCARZ, NOYCE, DAIL, TURETCHI, AND TREDINNICK'S**
**AMENDED MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................ 1

FACTS ............................................................................................................................... 1

I.     Patriot Front Is an Organized Hate Group ........................................................... 1

II.    Battery Park and the Arthur Ashe Mural Are Symbols of Richmond's Black
       Community .............................................................................................................. 2

III.   Defendants Engaged in Racially Motivated Vandalism of the Arthur Ashe Mural .......... 3

IV.    Defendants' Vandalism Made Plaintiffs Feel Intimidated and Threatened ...................... 3

LEGAL STANDARD ........................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

I.     Plaintiffs Have Standing to Assert Their Claims .................................................. 4

       A.     Plaintiffs Suffered a Cognizable Injury-in-Fact ....................................... 5

       B.     Plaintiffs' Injuries Are Fairly Traceable to the Conspiracy ...................... 8

II.    Plaintiffs Have Pleaded a § 1985(3) Claim ........................................................ 10

       A.     Plaintiffs' § 1985(3) Claim Is Pleaded Consistent with Precedent ....................... 10

       B.     Plaintiffs Meet the Pleading Requirement for § 1985(3) Conspiracy Claims ...... 13

       C.     Plaintiffs Have Adequately Pleaded Recklessness ................................. 15

III.   Plaintiffs Have Pleaded a § 1986 Claim ............................................................. 17

IV.    Plaintiffs' § 1986 Claim Is Not Time-Barred .................................................... 20

V.     The Intracorporate Conspiracy Doctrine Does Not Apply to Plaintiffs' §§ 1985(3)
       and 1986 Claims ................................................................................................... 21

VI.    Plaintiffs Have Pleaded a Claim under Virginia Code § 8.01-42.1, and Defendants'
       Constitutional Arguments in the Alternative Are Meritless. ........................................ 24

       A.     Plaintiffs Have Adequately Pleaded Defendants' Liability under § 8.01-42.1 ..... 24

# TABLE OF CONTENTS
## (Continued)

**Page**

B.    Defendants Have Failed to Establish That § 8.01-42.1 Is Unconstitutional as Applied to Their Campaign of Intimidation and Harassment ............................ 28

CONCLUSION.................................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A Soc'y Without a Name* v. *Virginia*,
655 F.3d 342 (4th Cir. 2011) ................................................15

*Abernathy* v. *Conroy*,
429 F.2d 1170 (4th Cir. 1970) ...............................................28

*Ali* v. *Raleigh Cnty.*,
2018 WL 1582722 (S.D. W. Va. Mar. 29, 2018) ...............................20

*United States* v. *Allen*,
341 F.3d 870 (9th Cir. 2003) ...........................................11, 12

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)........................................................4

*Bank Realty* v. *Practical Mgmt. Tech.*,
935 F.2d 267 (4th Cir. 1991) ...............................................22

*Bell* v. *City of Milwaukee*,
746 F.2d 1205 (7th Cir. 1984) ..............................................18

*Berry* v. *Target Corp.*,
214 F. Supp. 3d 530 (E.D. Va. 2016) ........................................25

*Virginia* v. *Black*,
538 U.S. 343 (2003)....................................................26, 28

*United States* v. *Bledsoe*,
728 F.2d 1094 (8th Cir. 1984) ..............................................11

*Bray* v. *Alexandria Women's Health Clinic*,
506 U.S. 263 (1993).........................................................11

*Buschi* v. *Kirven*,
775 F.2d 1240 (4th Cir. 1985) .......................................21, 22, 23

*Callum* v. *CVS Health Corp.*,
137 F. Supp. 3d 817 (D.S.C. 2015).....................................17, 18, 19

*Chao* v. *Rivendell Woods, Inc.*,
415 F.3d 342 (4th Cir. 2005) ...............................................12

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*City of Lakewood* v. *Plain Dealer Publ'g Co.*,
   486 U.S. 750 (1988)................................................................30

*Clark* v. *Clabaugh*,
   20 F.3d 1290 (3d Cir. 1994)...............................................17

*United States* v. *Conlan*,
   786 F.3d 380 (5th Cir. 2015) ............................................29

*Counterman* v. *Colorado*,
   143 S. Ct. 2106 (2023)...............................................15, 16, 28

*Detrick* v. *Panalpina, Inc.*,
   108 F.3d 529 (4th Cir. 1997) ............................................22

*Dobbey* v. *Jeffreys*,
   417 F. Supp. 3d 1103 (N.D. Ill. 2019) ..............................23

*Dombrowski* v. *Dowling*,
   459 F.2d 190 (7th Cir. 1972) ............................................22

*Doski* v. *M. Goldseker Co.*,
   539 F.2d 1326 (4th Cir. 1976) ..........................................11

*Eplus Tech, Inc.* v. *Aboud*,
   313 F.3d 166 (4th Cir. 2002) ............................................22

*Feminist Majority Found.* v. *Hurley*,
   91 F.3d 674 (4th Cir. 2018) .........................................28, 30

*Fisher* v. *Shamburg*,
   624 F.2d 156 (10th Cir. 1980) ........................................5, 11

*Forsyth Cnty.* v. *Nationalist Movement*,
   505 U.S. 123 (1992)..........................................................30

*Frazier* v. *Cooke*,
   2017 WL 5560864 (E.D. Va. Nov. 17, 2017).....................13

*Friends of the Earth, Inc.* v. *Gaston Copper Recycling Corp.*,
   204 F.3d 149 (4th Cir. 2000) ..............................................7

*United States* v. *Gonzalez*,
   905 F.3d 165 (3d Cir. 2018)..............................................29

iv

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*United States* v. *Greer*,
   939 F.2d 1076 (5th Cir. 1991) ............................................................................11

*Haigh* v. *Matsushita Elec. Corp.*,
   676 F. Supp. 1332 (E.D. Va. 1987) .....................................................................23

*Harrison* v. *KVAT Food Mgmt., Inc.*,
   766 F.2d 155 (4th Cir. 1985) ..............................................................................10

*Hawkins* v. *i-TV Digitalis Tavkozlesi zrt.*,
   935 F.3d 211 (4th Cir. 2019) ..............................................................................21

*Hill* v. *Colorado*,
   530 U.S. 703 (2000).............................................................................................29

*Hock* v. *Substitute Trustee Servs., Inc.*,
   791 F.3d 473 (4th Cir. 2015) ..............................................................................27

*Johnson* v. *Hill St Dales Gen. Hosp.*,
   40 F.3d 837 (6th Cir. 1994) ................................................................................23

*Law* v. *Hilton Domestic Operating Co.*,
   2020 WL 7130785 (E.D. Va. Dec. 4, 2020) ...................................................25, 27

*Legend Night Club* v. *Miller*,
   637 F.3d 291 (4th Cir. 2011) ..............................................................................30

*Libertarian Party of Virginia* v. *Judd*,
   718 F.3d 308 (4th Cir. 2013) ................................................................................9

*Locus* v. *Fayetteville State Univ.*,
   1989 WL 21442 (4th Cir. Mar. 8, 1989)...........................................................22, 23

*Lowden* v. *William M. Mercer, Inc.*,
   903 F. Supp. 212 (D. Mass. 1995) ......................................................................11

*Lujan* v. *Defenders of Wildlife*,
   504 U.S. 555 (1992)...............................................................................................4

*McHam* v. *N.C. Mut. Life Ins. Co.*,
   2007 WL 1695914 (M.D.N.C. June 11, 2007) ....................................................17

*Nat'l Coal. On Black Civic Participation* v. *Wohl*,
   512 F. Supp. 3d 500 (S.D.N.Y. 2021)....................................................................6

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Nguyen* v. *Hoang*,
    318 F. Supp. 3d 983 (S.D. Tex. 2018) ...................................................................22

*Nieto* v. *United Auto Workers Local 598*,
    672 F. Supp. 987 (E.D. Mich. 1987)......................................................................23

*O'Brien* v. *Welty*,
    818 F.3d 920 (9th Cir. 2016) .................................................................................29

*Painter's Mill Grille, LLC* v. *Brown*,
    716 F.3d 342 (4th Cir. 2013) ..........................................................................21, 22

*Perez* v. *Cucci*,
    725 F. Supp. 209 (D.N.J. 1989)........................................................................18, 19

*United States* v. *Petras*,
    879 F.3d 155 (5th Cir. 2018) .................................................................................26

*Phoenix Renovation Corp.* v. *Rodriguez*,
    403 F. Supp. 2d 510 (E.D. Va. 2005) ....................................................................24

*Pinder* v. *Knorowski*,
    660 F. Supp. 2d 726 (E.D. Va. 2009) ......................................................................4

*R.A.V.* v. *City of St. Paul*,
    505 U.S. 377 (1992)...............................................................................................30

*Rebel Van Lines* v. *Compton*,
    663 F. Supp. 786 (C.D. Cal. 1987) ........................................................................23

*United States* v. *Richardson*,
    418 U.S. 166 (1974).................................................................................................5

*Rogers* v. *United States Dep't of Health & Hum. Servs.*,
    466 F. Supp. 3d 625 (D.S.C. 2020)..........................................................................9

*Roncales* v. *Cnty. of Henrico*,
    451 F. Supp. 3d 480 (E.D. Va. 2020) ....................................................................20

*Russ* v. *Watts*,
    414 F.3d 783 (7th Cir. 2005) .................................................................................18

*S.C. Wildlife Fed'n* v. *Limehouse*,
    549 F.3d 324 (4th Cir. 2008) ...................................................................................5

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Salcedo* v. *Town of Dudley*,
    629 F. Supp. 2d 86 (D. Mass. 2009) ....................................................................20

*Salim* v. *Dahlberg*,
    170 F. Supp. 3d 897 (E.D. Va. 2016) ......................................................28, 29, 30

*Sierra Club* v. *United States Dep't of the Interior*,
    899 F.3d 260 (4th Cir. 2018) ................................................................................9

*Simmons* v. *Poe*,
    47 F.3d 1370 (4th Cir. 1995) ................................................................10, 13, 15

*Sines* v. *Kessler*,
    324 F. Supp. 3d 765 (W.D. Va. 2018) ..................................................................6

*Sines* v. *Kessler*,
    558 F. Supp. 3d 250 (W.D. Va. 2021) ................................................................11

*Sirajullah* v. *Ill. State Med. Inter-Insurance Exchange*,
    1988 WL 53210 (N.D. Ill. May 17, 1988) ..........................................................22

*Smith* v. *Town of South Hill*,
    611 F. Supp. 3d 148 (E.D. Va. 2020) ..................................................................15

*Smith* v. *Trump*,
    2023 WL 417952 (D.D.C. Jan. 26, 2023) ............................................................24

*Spokeo, Inc.* v. *Robins*,
    578 U.S. 330 (2016) ..............................................................................................5

*Thompson* v. *Trump*,
    590 F. Supp. 3d 46 (D.D.C. 2022) ........................................................................6

*TransUnion LLC* v. *Ramirez*,
    141 S. Ct. 2190 (2021) ..........................................................................................4

*Travis* v. *Gary Cmty. Mental Health Ctr., Inc.*,
    921 F.2d 108 (7th Cir. 1990) ..............................................................................22

*Turner* v. *Commonwealth*,
    792 S.E.2d 299 (Va. Ct. App. 2016) ....................................................................26

*Venkatraman* v. *REI Sys., Inc.*,
    417 F.3d 418 (4th Cir. 2005) ................................................................................4

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Vietnamese Fishermen's Ass'n* v. *Knights of Ku Klux Klan*,
    518 F. Supp. 993 (S.D. Tex. 1981) ...................................................................6, 19

*Waller* v. *Butkovich*,
    584 F. Supp. 909 (M.D.N.C. 1984) .....................................................................18

*West* v. *Derby Unified Sch. Dist. No. 260*,
    206 F.3d 1358 (10th Cir. 2000) ...........................................................................29

*Weston* v. *City of Chi.*,
    2021 WL 2156459 (N.D. Ill. May 27, 2021) ......................................................23

*Williams* v. *AM Lapomarda*,
    2020 WL 3643466 (E.D. Va. July 6, 2020) .............................................25, 27, 28

**Statutes**

18 U.S.C. § 245 ...........................................................................................................6, 11

42 U.S.C. § 1985 ....................................................................................................... *passim*

42 U.S.C. § 1986 ....................................................................................................... *passim*

42 U.S.C. § 2000a(a) ......................................................................................................11

17 Stat. 13 (Chapter 22) ...............................................................................................1, 10

Va. Code § 8.01-42.1 ................................................................................................. *passim*

Va. Code § 18.2-423.2 ...................................................................................................26

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)............................................................................................4, 12, 13

Fed. R. Civ. P. 17(b)(2)...................................................................................................21

Fed. R. Civ. P. 17(b)(3)...................................................................................................21

U.S. Const. amend. I ................................................................................................. *passim*

U.S. Const. amend. XIII...................................................................................................11

U.S. Const. art. III..........................................................................................................4, 7, 8

## INTRODUCTION

In October 2021, members of a white supremacist group known as Patriot Front conspired among themselves and with non-members to intimidate and harass members of racial minorities and their supporters in Battery Park, a predominantly Black neighborhood in Richmond, Virginia. On or about October 18, 2021, a week after meeting to discuss their plan, members of the conspiracy descended on Battery Park under cover of darkness to vandalize and destroy the Arthur Ashe Mural, a symbol of the neighborhood's support for and pride in Black lives and Black accomplishments. They spray-painted over Ashe's face and used stencils to leave the Patriot Front mark so that there could be no mistake who had destroyed the mural.

This action, brought by two Battery Park residents, aims to hold Patriot Front and the individuals associated with the conspiracy accountable for their conduct. As the First Amended Complaint ("FAC"), ECF No. 31, outlines in detail, these actors conspired to launch a racially motivated campaign of vandalism with the intent to deprive Battery Park residents of equal access to the park, in violation of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985, *et seq.*, and Virginia Code § 8.01-42.1. Five of those conspirators—Defendants Paul Gancarz, Nathan Noyce, Thomas Dail, Daniel Turetchi, and Aedan Tredinnick (the "Defendants")—ask the Court to dismiss this action as they seek to evade accountability for the injuries they caused and the laws they violated. *See* ECF No. 103. Defendants' myriad arguments are without merit and should be rejected.

## FACTS[1]

### I.    Patriot Front Is an Organized Hate Group

Defendant Patriot Front is a white supremacist group founded in 2017. ¶ 12. Its ideology is based on a deeply racist belief system and mission to preserve America's "pan-European

---

[1] Facts relevant to this motion are set forth in the FAC and incorporated fully herein. Citations to "¶ _" are to paragraphs of the FAC.

identity." *Id.*  Patriot Front spreads its message of white supremacy through vandalism of, in part, public art that supports racial justice and LGBTQ+ inclusion, namely, by placing Patriot Front stickers and spray painting with Patriot Front stencils.  ¶¶ 16–17.  Patriot Front requires its members to partake in such "activism" and provides its members with detailed instructions about how to standardize these acts of vandalism.  ¶¶ 15, 18.

Although Patriot Front is not an incorporated entity, it has a well-organized and defined leadership structure.  ¶ 21.  Defendant Thomas Rousseau serves as National Director and supervises Patriot Front's activities nationwide. The group has regional Network Directors, including Defendant Paul Gancarz, who oversee Patriot Front activities in a particular region and report to Rousseau.  ¶¶ 21–24.  Patriot Front activities are frequently carried out by rank-and-file members like the defendants here.  Patriot Front's leadership, including Rousseau, requires members to seek approval from regional and national leadership for large-scale, high-profile acts of vandalism.  ¶ 17.  Those acts frequently involve the use of Patriot Front stickers and stencils that members must purchase from leadership like Rousseau.  *Id.*

## II.     Battery Park and the Arthur Ashe Mural Are Symbols of Richmond's Black Community

Battery Park is a predominantly Black neighborhood in the North Side of Richmond, Virginia.  ¶ 43.  The City of Richmond owns and manages a public park (the "Park") located in the heart of the neighborhood.  ¶¶ 3, 42.

In 2017, the City of Richmond's Parks and Recreation Department commissioned a mural of Arthur Ashe, a revered son of Richmond who in 1968 became the first Black man to win the U.S. Open tennis tournament.  ¶ 4.  Painted by a group of Black-led local artists, the mural was located at the entrances and inside of a pedestrian tunnel joining the north and south ends of the Park.  ¶¶ 40–41.  The mural depicted paintings of Mr. Ashe's face, an image of Mr. Ashe holding

a Wimbledon trophy, and signs listing several of his tennis achievements.  ¶ 41.

## III.   Defendants Engaged in Racially Motivated Vandalism of the Arthur Ashe Mural

Patriot Front began targeting Battery Park by the summer of 2021, when residents of Battery Park, including Sealed Plaintiff 1, noticed Patriot Front stickers placed on lampposts, stop signs, and elsewhere throughout the neighborhood.  ¶ 48.  A group of Patriot Front members that included Defendants Gancarz, Dail, Noyce, Turetchi, Brown, Ring, Tredinnick, and John Does 1 through 6, as well as John Does 7 and 8 (who were not yet members of Patriot Front), decided to escalate their tactics.  ¶¶ 37–38, 49–50.  They decided to vandalize the Arthur Ashe mural to "destroy a symbol of the neighborhood's support for and pride in Black lives and Black accomplishments."  ¶ 49.  On or about October 12, 2021, these same Defendants met, discussed, and planned the vandalization of the Arthur Ashe mural in Battery Park.  ¶ 50.

On or about October 18, 2021, Defendants Noyce, Dail, and John Doe 1 arrived at the pedestrian tunnel where the Arthur Ashe mural was located.  ¶ 51.  Defendant John Doe 1 filmed the entire incident.  ¶ 52.  Defendants Noyce and Dail spray-painted white the signs describing his accomplishments and covered them with Patriot Front stencils.  ¶¶ 58–67. While filming, Defendant John Doe 1 egged on Defendants Noyce and Dail, encouraging them to cover up a painting of Arthur Ashe's face, saying as they did so "Fucking n*****'s face."  ¶ 65.

## IV.   Defendants' Vandalism Made Plaintiffs Feel Intimidated and Threatened

On or about October 21, 2021, Battery Park residents discovered the desecrated mural. ¶ 72.  Battery Park residents, including Sealed Plaintiffs 1 and 2, immediately felt fear and apprehension about visiting the park.  ¶ 74.  Plaintiffs reasonably understood the vandalism to be a warning that Black residents of the neighborhood and their allies were not safe in their community.  Plaintiffs both lost sleep and felt anxious as a result, and both limited—and at times altogether stopped—their use of Battery Park and the Arthur Ashe tunnel.  ¶¶ 80–83.  Sealed

Plaintiff 2 considered placing their oldest child in therapy.  ¶ 84.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal "sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense." *Pinder* v. *Knorowski*, 660 F. Supp. 2d 726, 730 (E.D. Va. 2009) (citing *Republican Party of N.C.* v. *Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). To survive, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In considering a motion to dismiss, the Court should "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman* v. *REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citation omitted).

## ARGUMENT

Defendants raise several arguments, broadly challenging Plaintiffs' standing and arguing that Plaintiffs fail to state a claim under 42 U.S.C. §§ 1985(3) and 1986, and Virginia Code § 8.01-42.1.  Each is without merit and Defendants' motion to dismiss should be denied.

## I.    Plaintiffs Have Standing to Assert Their Claims

Defendants argue that Plaintiffs do not meet the standing requirements under Article III of the U.S. Constitution.  ECF No. 103 ("MTD Br.") at 6–10.  To have Article III standing, the familiar three-part test requires a plaintiff to demonstrate that:  (1) she has suffered a concrete, particularized, and actual "injury in fact"; (2) the injury is fairly traceable to the actions of the defendant(s); and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by judicial relief. *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *TransUnion*

*LLC* v. *Ramirez*, 141 S. Ct. 2190, 2203 (2021). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct" are sufficient to survive a motion to dismiss. *S.C. Wildlife Fed'n* v. *Limehouse*, 549 F.3d 324, 329 (4th Cir. 2008).

Defendants challenge the first and second standing requirements. In particular, they contend that Plaintiffs' injuries are neither concrete, particularized, or actual nor traceable to Defendants' conduct. *See* MTD Br. at 6–10. Defendants are wrong on both issues.

### A.      Plaintiffs Suffered a Cognizable Injury-in-Fact

An injury-in-fact must be "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). An injury is "concrete" when it is "real and not abstract." *Id*. at 340 (internal quotations omitted). An injury is particularized if there is a "particular individual or class" that has been affected by the challenged conduct differently from other "members of the public." *United States* v. *Richardson*, 418 U.S. 166, 178–179 (1974). "The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo*, 578 U.S. at 339 n.7. Defendants' injury-in-fact contentions can be distilled into several arguments. None of them is correct.

*First*, Defendants argue that Plaintiffs suffered no injury because they have no property interest in the Park. MTD Br. at 7. This argument, unburdened by citation to law or precedent, is misguided. Defendants incorrectly argue that civil rights protections for public accommodations are limited to causes of action against property owners. However, Section 1985 does not require an underlying property interest and provides an actionable right against race-based interference with one's enjoyment of places of public accommodation. *See Fisher* v. *Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980) ("[A] racially motivated conspiracy to interfere with one's enjoyment of a place of public accommodation constitutes a badge of slavery which is a deprivation of equal

5

privileges and immunities under 42 U.S.C. § 1985(3)."). In fact, § 1985(3) plaintiffs have successfully brought claims where they had no property interest in the public space blocked by a racially motivated conspiracy. *See*, *e.g.*, *id*. (use of public parking lot used by plaintiff to access public inn); *Vietnamese Fishermen's Ass'n* v. *Knights of Ku Klux Klan*, 518 F. Supp. 993 (S.D. Tex. 1981) (use of and access to public waterway). Plaintiffs allege that they each "regularly used the Park and its amenities"—a place of public accommodation—and that Defendants' racially motivated vandalism caused them to limit or cease that use. ¶¶ 10–11. That is a cognizable injury under § 1985. *See also infra* Section II.A (discussing right to access public accommodations under 18 U.S.C. § 245 (Federally Protected Activities), which is 42 U.S.C. § 1985's sister statute).

*Second*, Defendants assert, again without authority, that "a subjective fear that was of indeterminant length and indefinite strength" is insufficiently concrete because Plaintiffs suffered only "subjective, emotional responses to a public event," and did not, in Defendants' view, "suffer[] any physical harm in any way." MTD Br. at 7, 9–10. But courts have long recognized emotional harm as a concrete injury sufficient to show standing in the context of §§ 1985 and 1986 claims. *See*, *e.g.*, *Thompson* v. *Trump*, 590 F. Supp. 3d 46, 72 (D.D.C. 2022) (recognizing that § 1985 "makes no distinction between physical and emotional injury, and in that sense it aligns with the common law tradition of permitting recovery for emotional distress for certain torts without a showing of physical injury"); *Nat'l Coal. On Black Civic Participation* v. *Wohl*, 512 F. Supp. 3d 500, 515–16 (S.D.N.Y. 2021) (allegations that racially motivated robocalls intimidated plaintiffs, had "irreversibly undermined her confidence in voting by mail," and were "particularly traumatic," were "sufficient to show a concrete and particularized injury for the purposes of standing" for § 1985); *Sines* v. *Kessler*, 324 F. Supp. 3d 765, 774 (W.D. Va. 2018) (denying motion to dismiss § 1985 claim where plaintiffs "suffered various emotional injuries").

Plaintiffs have sufficiently alleged an injury that is cognizable under §§ 1985 and 1986: the emotional harm caused by racially motivated acts of intimidation and harassment.  Upon seeing that the Arthur Ashe mural had been vandalized by the Defendants, Sealed Plaintiff 1 "immediately felt a sense of fear and apprehension at being in the Park" and "interpreted the vandalism as a warning from the Patriot Front that Black residents of the neighborhood and those who opposed white supremacy were not safe."  ¶ 76.  As a result of Patriot Front's vandalism in Battery Park, Sealed Plaintiff 1 "lost sleep, had racing thoughts, and felt anxious" enough to avoid using the Park in ways they did before.  ¶ 80.  Similarly, Sealed Plaintiff 2 "lost sleep and felt anxious, fatigued, and scared as a result of the vandalism," and even considered placing their oldest child in therapy as a result of the stress and anxiety the child felt because of the vandalism.  ¶¶ 83–84.  These effects of the vandalism—an act that Defendants concede was "regrettable," MTD Br. at 6, 9—are sufficiently concrete to confer Article III standing.

*Third*, Defendants argue that Plaintiffs' injury is not particularized because the same injury could be claimed by all patrons of the Park, suggesting a slippery slope if the Court allows this case to go forward.  MTD Br. at 7–8.  This argument is a red herring.  To be particularized, an alleged injury "must affect the plaintiff in a personal and individual way."  *Friends of the Earth, Inc.* v. *Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000).  Plaintiffs allege that they used the Park less because of fears resulting directly from Defendants' conduct.  ¶¶ 76, 80, 83–84.  Plaintiffs further allege they lost sleep and suffered from anxiety, reflecting the personal and individual impact of Defendants' conduct.  ¶¶ 80, 83.  "These facts unquestionably differentiate" the Plaintiffs "from the general public" and show that they seek to vindicate their own legal rights against racially based harassment and intimidation, "not some ethereal public interest."  *Friends of the Earth*, 204 F.3d at 157.

7

It bears emphasis that Defendants specifically targeted Battery Park, a historically and majority Black neighborhood, because of its racial characteristics and its ethos of advocacy for Black people.  ¶¶ 3, 42–44.  They destroyed the Arthur Ashe mural because it was a "symbol of the neighborhood's support for and pride in Black lives and Black accomplishments."  ¶¶ 1–3, 49.  In other words, Defendants targeted a *community*.  They cannot now escape accountability to these Plaintiffs by complaining that *other* members of the community could also have standing.  The breadth of Defendants' potential liability is a consequence of Defendants' community-based campaign of racial hatred.  It is not a reason to find that these Plaintiffs, who are members of the targeted community, lack a particularized injury.

### B.    Plaintiffs' Injuries Are Fairly Traceable to the Conspiracy

Moving to the second requirement of Article III standing, Defendants argue that Plaintiffs have not alleged a sufficient causal connection between their injury and Defendants' conduct because Defendants did not "[leave] any threatening messages."  MTD. Br. at 8.  Instead, Defendants suggest that Plaintiffs' "anxiety arose" only because Plaintiffs had researched the Patriot Front and learned about the group from this research.  MTD Br. at 9.  Defendants also suggest that Plaintiffs were "upset" about the ongoing civil rights trial regarding the Charlottesville Unite the Right 2017 white supremacist rally, which Defendants say was "unrelated" and in which Plaintiffs had no role themselves.  MTD Br. at 8.  Both arguments fail.

*First*, Defendants misstate Plaintiffs' claim.  Plaintiffs allege that as a direct and proximate result of Defendants' conspiracy and vandalization of the Arthur Ashe mural, Plaintiffs suffered emotional injuries.  ¶¶ 88–95.  To provide context for that act of vandalism, Plaintiffs describe the tensions the community faced as it braced for the start of the civil trial stemming from the Charlottesville Unite the Right 2017 white supremacist rally.  ¶ 45.  At no point, however, do Plaintiffs plead that the Charlottesville Unite the Right rally or the subsequent trial were

8

themselves the source of their injury.

*Second*, Defendants' argument that there is no causation because they did not "leave any threatening messages" attempts to whitewash their actions.  Plaintiffs allege that Defendants' destruction of the Arthur Ashe mural was *itself* a threatening message, which Plaintiffs received loud and clear and which caused their injuries.  *See supra* Section I.A.  Defendants seem to suggest that they should be exonerated because they did not commit *more* intimidating and unlawful acts than they actually did.  That nonsensical proposition should be rejected out of hand.

Defendants argue that Plaintiffs only knew about Patriot Front—and thus were intimidated by its actions—because they researched the group after seeing Patriot Front stickers and symbols beginning in summer 2021.  *See* MTD Br. at 9.  In Defendants' view, that Plaintiffs had some knowledge of Patriot Front that was not learned from Defendants' defacing the Arthur Ashe mural means that Plaintiffs' injuries are not traceable to the defacement itself.

This argument is unavailing.  The Fourth Circuit has explained that traceability is not a "stringent" standard.  *Libertarian Party of Virginia* v. *Judd*, 718 F.3d 308, 316 (4th Cir. 2013). Traceability "does not require the challenged action to be the sole or even immediate cause of the injury."  *Sierra Club* v. *United States Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018). Rather, the "relevant inquiry to determine traceability is simply whether the Defendants' alleged actions are at least in part responsible for Plaintiffs' injuries."  *Rogers* v. *United States Dep't of Health & Hum. Servs.*, 466 F. Supp. 3d 625, 642 (D.S.C. 2020); *Judd*, 718 F.3d at 316.  The defacement of the Arthur Ashe mural—and Defendants' conspiracy to do so—is clearly "at least in part responsible" for Plaintiffs' injuries.

Moreover, Defendants' argument that prior acts by Patriot Front break causation ignores that Patriot Front's *modus operandi* is to engage in vandalism and property destruction for the

purpose of promoting their white supremacist message and intimidating minority communities, which is exactly what they did in Battery Park starting in the summer of 2021.  ¶¶ 1–3, 17, 48. Suggesting that the Arthur Ashe mural—the culmination of that campaign—is entirely distinct from Patriot Front's earlier actions strains credulity.

## II.      Plaintiffs Have Pleaded a § 1985(3) Claim

### A.      Plaintiffs' § 1985(3) Claim Is Pleaded Consistent with Precedent

Section 1985(3) was originally enacted by Congress as part of the Ku Klux Klan Act in order to enforce the Civil War amendments to the Constitution and to provide a means of redress for persons victimized by the Klan's acts of terror and intimidation.  *Harrison* v. *KVAT Food Mgmt., Inc.*, 766 F.2d 155, 156–57 (4th Cir. 1985).  That law was passed "in response to widespread violence and acts of terror directed at [Black people] and their supporters in the postwar South."  *Id.* at 157.  It was "[a]gainst this backdrop of political terrorism" that "Congress enacted § 1985(3), affording a remedy for the vindication of the civil rights of those being threatened and injured, notably [Black people] and advocates for their cause."  *Id.*  This case evokes, and is furtherance of, the Act's original purpose.

The elements of a § 1985(3) claim are:  (1) a conspiracy of two or more persons; (2) motivated by a specific class-based, invidiously discriminatory animus; (3) that deprives the plaintiff of the equal enjoyment of rights secured by the law; (4) and results in an overt act; that (5) causes injury to the plaintiff.  *See Simmons* v. *Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Defendants cannot credibly, and do not in fact, deny Plaintiffs' allegations that they, a group of two or more persons, committed the overt act of vandalizing the Arthur Ashe mural—indeed, it is hard to imagine how they could, as they recorded the incident and used it in a Patriot Front recruiting video.   ¶¶ 51–71.  Instead, Defendants raise challenges as to their discriminatory animus, Plaintiffs' predicate rights, and causation.  MTD Br. at 10–14.  All of Defendants'

arguments lack merit, and many have already been rejected by this Court in related cases.

*First*, Defendants deny the basis of Plaintiffs' predicate right, asserting that under *Bray* v. *Alexandria Women's Health Clinic*, 506 U.S. 263 (1993), § 1985(3) applies only to conspiracies involving involuntary servitude or the right of interstate travel.  MTD Br. at 13.  Defendants are incorrect.   Section 1985(3) serves as a vehicle to remedy violations of substantive rights guaranteed by federal law or the Constitution.  *See Doski* v. *M. Goldseker Co.*, 539 F.2d 1326, 1333 (4th Cir. 1976); *Sines* v. *Kessler*, 558 F. Supp. 3d 250, 273–74 (W.D. Va. 2021).  Courts around the country have long recognized that enjoyment of a public accommodation is a predicate right for a § 1985 claim.  In *Fisher* v. *Shamburg*, 624 F.2d at 162, the Tenth Circuit held that "a racially motivated conspiracy to interfere with one's enjoyment of a place of public accommodation constitutes a badge of slavery which is a deprivation of equal privileges and immunities under 42 U.S.C. § 1985(3)."  Similarly, in *Lowden* v. *William M. Mercer, Inc.*, 903 F. Supp. 212, 221 (D. Mass. 1995), the court held that "together with the Thirteenth Amendment, section 1985(3) creates a remedy prescribing racially motivated conspiracies which, for example, interfere with a minority person's right to public accommodation."

Several federal courts have also recognized that public parks are places of public accommodations and that the race-based denial of access to public parks violates civil rights statutes because deprivation of the right to enjoy a public accommodation is a "badge of slavery." *See United States* v. *Allen*, 341 F.3d 870, 884 (9th Cir. 2003); *United States* v. *Greer*, 939 F.2d 1076, 1091 n.15 (5th Cir. 1991) ("Under [42 U.S.C. § 2000a(a)], public parks are places of public accommodation."). Courts have also recognized that discriminatory harassment in parks may constitute a violation of the right to access public accommodations under 18 U.S.C. § 245 (Federally Protected Activities), which is § 1985's sister statute.  *See United States* v. *Bledsoe*, 728

F.2d 1094, 1097 (8th Cir. 1984) ("Nor can there be doubt that interfering with a person's use of a public park because he is black is a badge of slavery."); *Allen*, 341 F.3d at 884 (similar).

Battery Park is a public park in Richmond that holds a special place for many Black and allied residents of the area.  ¶¶ 42, 44.  For many years, the Park was home to the only public swimming pool Black residents felt comfortable using after the end of government-sanctioned segregation given the persistence of racial tensions.  *Id.*  Use of the Park by Plaintiffs and other neighborhood residents is thus a public accommodation that federal courts have readily recognized as a predicate right to a § 1985 claim.

*Second*, Defendants assert that Plaintiffs fail to plead discriminatory intent because the Defendants' vandalism *could* "readily be interpreted as an ill-conceived protest against the defacement and removal of Confederate statues."  MTD Br. at 13–14.  Regardless of Defendants' post-hoc rationalizations, on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations as true and draw all reasonable inferences in favor of Plaintiffs.  *See Chao* v. *Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005).

Plaintiffs allege more than sufficient facts from which the Court can infer Defendants' discriminatory, race-based intent to deprive Plaintiffs of their protected rights.  Defendants are part of the white supremacist group Patriot Front, which promotes as its mission "a hard reset on the nation we see today – a return to the traditions and virtues of our [European] forefathers" who "left their European homes . . . [and who] found a common cause and a common identity as Americans."  ¶ 1.  Defendant Gancarz is Patriot Front's Network Director for the region covering Virginia, D.C., Maryland, and Delaware and by virtue of his position is required to approve "large scale mural cover-ups . . . before members initiate[d] them in their networks."  ¶ 24.  Defendants Gancarz, Noyce, Dail, Turetchi, and Tredinnick all participated in the October 12, 2021, meeting

where they planned to vandalize the Arthur Ashe mural, ¶ 50, and Defendants Noyce and Dail were captured on film committing the act, ¶ 65. Defendant John Doe 1, while filming Defendants Noyce and Dail, suggested they vandalize Arthur Ashe's face; Defendants Noyce and Dail began to do exactly that as Defendant John Doe 1 said, "Fucking n*****'s face." *Id.* Once Defendants Noyce and Dail were finished vandalizing the first mural, Arthur Ashe's face was completely destroyed. ¶ 68. Defendants Noyce and Dail then continued to vandalize another mural of Arthur Ashe celebrating his victory at Wimbledon. ¶ 69. Defendants cannot replace Plaintiffs' particularized allegations with their own version of what Defendants' motives *could have been*. Whether Defendants' proffered reason for the vandalism is pretext can and should be decided at trial by a trier of fact, and not by this Court on a Rule 12(b)(6) motion to dismiss.

*Finally*, Defendants argue that Plaintiffs fail to plead Defendants' action caused them any injury, citing back to their arguments about Plaintiffs' standing. MTD Br. at 14. As explained above, these arguments are without merit. *See supra* Section I.

### B.      Plaintiffs Meet the Pleading Requirement for § 1985(3) Conspiracy Claims

Proving a § 1985(3) conspiracy claim requires the plaintiff to show an agreement or a "meeting of the minds" to "violate the claimant's constitutional rights." *Simmons*, 47 F.3d. at 1376. However, that meeting of the minds need not be supported by direct evidence, and can instead be proved by "'circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective,'" which "reasonably lead[s] to an inference that co-conspirators positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Frazier* v. *Cooke*, 2017 WL 5560864, at *3 (E.D. Va. Nov. 17, 2017) (quoting *Hinkle* v. *City of Clarksburg*, W. Va., 81 F.3d 416, 421 (4th Cir. 1996)). Whether the allegations in a complaint sufficiently allege a meeting of the minds as a pleading matter is a "'context specific-task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.*

13

(quoting *Francis* v. *Giacomeli*, 588 F.3d 186, 193 (4th Cir. 2009)).

Defendants argue that Plaintiffs have not met this requirement because the FAC purportedly includes "cookie cutter" allegations that do not provide details about Defendants' planning of the Arthur Ashe mural.  MTD Br. at 15–16.  Defendants are wrong.  Plaintiffs allege that Defendants Gancarz, Noyce, Dail, Turetchi, and Tredinnick, along with 10 others (John Does 1–8 and defendants Jacob Brown and William Ring), were "present for, and participated in, a meeting on or about October 12, 2021, planning the vandalism of the Arthur Ashe mural in Battery Park, Richmond, Virginia."  ¶¶ 24–38.  Plaintiffs also allege that during this meeting, all of these individuals "discussed and planned the vandalization of the Arthur Ashe mural," as a result of which they had knowledge of the conspiracy.  ¶ 50, 89, 102–06.  Plaintiffs were not at this meeting and do not know exactly what words were exchanged among the conspirators.  But Plaintiffs' pleading of the who, the when, and the general subject matter of the October 12 meeting is far beyond mere "conclusory" allegations free of "concrete detail about what the conspirators allegedly agreed to," as Defendants assert.  MTD Br. at 15.

Plaintiffs' allegations regarding the defacement of the Arthur Ashe mural itself further support that the vandalism was the intended result of the conspiracy formed during the October 12 meeting.  Defendants Noyce, Dail, and John Doe 1 vandalized the Arthur Ashe mural on October 18, 2021, just six days after the October 12 meeting. ¶¶ 51–70.  During the vandalism, Defendant Dail wore a hat "identical to the hats worn by other members of the Patriot Front around the country," ¶ 53, and Defendants Noyce and Dail spray painted "Patriot Front stencils" on the mural, using the same logos and colors as used in other acts of vandalism by Patriot Front members elsewhere in the country, ¶¶ 18–19, 62.  "Footage of the vandalism of the Arthur Ashe mural featured prominently in a video Defendant Patriot Front produced of their nationwide acts of

14

vandalism occurring in October 2021," which was used by Patriot Front "as part of their efforts to recruit new members." ¶ 71.

Considered together, these allegations reasonably lead to an inference that the co-conspirators came to a mutual understanding to try to accomplish a common and unlawful plan, which was then carried out by Defendants Noyce, Dail, and John Doe 1.  That makes this situation unlike cases cited by Defendants.  For example, in *A Society Without a Name* v. *Virginia*, 655 F.3d 342, 347 (4th Cir. 2011), the plaintiffs had made only conclusory allegations that defendants "entered into" and "became part of" a conspiracy, without any details as to "the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made."  The same is true of *Smith* v. *Town of South Hill*, 611 F. Supp. 3d 148, 188 (E.D. Va. 2020), in which the plaintiff's allegations "consist[ed] almost entirely of 'formulaic recitation of the elements of a cause of action,' via 'naked assertions of wrongdoing'" (citations omitted).[2]  In this case, Plaintiffs have provided specific factual allegations about how the conspiracy to deface the Arthur Ashe mural came to be, who was involved, when they agreed on a plan, and how that plan was carried out.  Plaintiffs have adequately pleaded a "meeting of the minds" for their § 1985(3) claim.

### C.    Plaintiffs Have Adequately Pleaded Recklessness

Finally, Defendants argue that under the Supreme Court's recent decision in *Counterman* v. *Colorado*, 143 S. Ct. 2106, 2109 (2023), that because Plaintiffs' case is (in Defendants' eyes) a "true threat" case under the First Amendment, Plaintiffs are required to have pleaded a *mens rea of* "recklessness," which Defendants assert Plaintiffs have not done.  MTD Br.

---

[2] In *Simmons*, 47 F.3d at 1377, it was "uncontested" that there was no explicit or implicit conspiracy, and the plaintiff was proceeding on a theory of "willful blindness" by a superior officer as to his subordinate's actions—a situation that is totally unlike the one here.

at 16–20.  In the first place, it is not clear that *Counterman*—which arose in the context of a criminal prosecution—applies to Plaintiffs' § 1985 claim.  But even if *Counterman* does apply, Plaintiffs have more than sufficiently alleged facts supporting that Defendants had the requisite *mens rea*.

As described in *Counterman*, the *mens rea* of recklessness is the lowest level of culpable mental state available, requiring that the "speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'"  *Counterman*, 143 S. Ct. at 2117 (quoting *Elonis* v. *United States*, 575 U.S. 723, 746 (2015) (Alito, J., concurring in part and dissenting in part)).  Above recklessness in the *mens rea* hierarchy is knowledge, which requires the speaker to "know[] to a practical certainty that others will take his words as threats."  *Id.*  The highest *mens rea*, purpose, requires that the speaker "'consciously desires' a result," that is, "he wants his words to be received as threats."  *Id.* (quoting *United States* v. *Bailey*, 444 U.S. 394, 404 (1980)).

Plaintiffs' allegations not only demonstrate that Defendants acted recklessly, it shows that Defendants knew of and intentionally organized to ensure their statements were received as threats.  As discussed above, Plaintiffs allege more than sufficient facts from which the Court can infer Defendants' discriminatory, race-based intent to deprive Plaintiffs of their protected rights.  *See supra* Section II.A.  Patriot Front's members have been responsible for dozens of acts of damage to public and private property all over the country, "intimidate[ing] communities based on race and sexual orientation" as "part of their campaign to promote their extreme and racist credo."  ¶ 2.  Defendants' actions here were just another part of this campaign.  Moreover, the fact that Defendants were masked and acted under cover of darkness in destroying the mural is evidence of the fact that they were "aware 'that others could regard [their] statements as' threatening violence."  *Counterman*, 143 S. Ct. at 2117. Given that Defendants here are all members of Patriot Front,

¶¶ 24–27, 30, and Patriot Front's control over its members' vandalism (including providing detailed instructions on what color paints to use and sharing stencils and logos of its insignia, ¶ 18), it is reasonable to infer that Defendants intended their defacement of the Arthur Ashe mural to be received by the Battery Park community as a threat, just as Patriot Front's other acts of vandalism had intimidated other communities around the country.  At the very least, there is a plausible inference that Defendants were aware that the Battery Park community *could* have received the defacement of the Arthur Ashe mural as a threat.  Plaintiffs' allegations thus satisfy *Counterman*.[3]

### III.   Plaintiffs Have Pleaded a § 1986 Claim

Plaintiffs have alleged sufficient facts to state a claim under § 1986, which imposes liability on "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses" to do so.  42 U.S.C. § 1986.  A § 1986 claim requires a plaintiff to allege: (1) a § 1985 conspiracy occurred; (2) the defendant had knowledge of the conspiracy; (3) the defendant had the power to prevent or aid in preventing the commission of acts pursuant to that conspiracy; and (4) the defendant neglected or refused to act to prevent the conspiracy.  *Callum* v. *CVS Health Corp.*, 137 F. Supp. 3d 817, 844 (D.S.C. 2015); *see also Clark* v. *Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994); *McHam* v. *N.C. Mut. Life Ins. Co.*, 2007 WL 1695914, at \*5 (M.D.N.C. June 11, 2007), *aff'd*, 250 F. App'x 545 (4th Cir. 2007).

Plaintiffs allege specific facts supporting each of these elements.  As to the first element, as explained above, Plaintiffs have sufficiently pleaded the existence of a § 1985 conspiracy.  *See supra* Section II.   Plaintiffs satisfy the second and third elements by alleging that all Defendants had actual knowledge of the conspiracy and the power to prevent the vandalism because they all

---

[3] If the Court finds that Plaintiffs have not sufficiently pleaded Defendants' *mens rea* under *Counterman*, it should allow Plaintiffs to amend their Complaint in light of the change in law.

participated in planning the conspiracy, and Defendants Noyce and Dail actually vandalized the mural—allegations that Defendants nowhere deny.   ¶¶ 103–04.  *See Callum*, 137 F. Supp. 3d at 843–44 (denying motion to dismiss when the plaintiff alleged store employees had knowledge of and the power to prevent a § 1985 conspiracy where they actively participated in conspiracy to impede the plaintiffs from shopping in CVS stores); *Waller* v. *Butkovich*, 584 F. Supp. 909, 923, 932 (M.D.N.C. 1984) (rejecting motion to dismiss when plaintiffs alleged that defendants had "full advance knowledge" of conspiracy and the power to prevent it where the defendants "actively participated in the planning of [an] attack," "monitored" the attack, and "failed to take any action to stop [it]").  Plaintiffs allege that each of the Defendants could have aided in preventing the vandalism with "reasonable diligence."  *Bell* v. *City of Milwaukee*, 746 F.2d 1205, 1258 (7th Cir. 1984), *overruled on other grounds*, *Russ* v. *Watts*, 414 F.3d 783 (7th Cir. 2005).

In particular, Defendant Gancarz, as the Network Director for the region covering Virginia, D.C., Maryland, and Delaware, had the power to prevent or aid in preventing the vandalism by virtue of his supervisory role over the activities in his assigned region.  ¶ 24.  Defendant Gancarz had to approve "large scale mural cover-ups before . . . members initiate[d] them in their networks."  *Id.*  Such "supervisory power over [the] alleged conspirators" is sufficient to satisfy this element where organizational rules or procedures establish that the defendant had supervisory authority over the conspirators.  *Bell*, 746 F.2d at 1258; *see, e.g.*, *Perez* v. *Cucci*, 725 F. Supp. 209, 254–55 (D.N.J. 1989) (finding element satisfied where police director had "managerial discretion" over conspirators pursuant to organization's rules and regulations).

Finally, Defendants do not dispute that Plaintiffs satisfy the fourth element: that the Defendants plainly neglected or refused to act to prevent the conspiracy.  Courts hold defendants liable for neglecting or refusing to prevent a conspiracy where the defendant does "not attempt to

dissuade" the conspirators from acting, *Vietnamese Fisherman's Ass'n*, 518 F. Supp. at 1007, or where they remain "reticent" or take "steps to assure" that the conspiracy is completed, *Perez*, 725 F. Supp. at 255.  Not only were Defendants Noyce and Dail not "reticent," video evidence shows that they took "steps to assure" that the vandalism was complete and actively encouraged each other to participate.  From the moment they arrived in Battery Park, Defendants acted deliberately and without hesitation.  ¶¶ 51–69.  Defendant Dail began spray painting within moments of arriving in the tunnel.  ¶ 54.  Defendant Noyce encouraged Defendant Dail, reminding him to "shake [the can]" to make sure it "spray[s] well."  ¶ 57.  Defendants Noyce and Dail worked together to spray-paint and stencil the mural, coordinating amongst themselves and with Defendant John Doe 1 to use different colored stencils and to cover various portions of the Arthur Ashe mural, including Ashe's face and signs celebrating Ashe's accomplishments.  ¶¶ 60–69.  At no point did either Defendant attempt to dissuade the others from continuing with their act of vandalism.

Defendants make two related arguments in support of their motion to dismiss Plaintiffs' § 1986 claim.  Each is without merit.  *First*, Defendants assert that because Plaintiffs fail to plead the existence of a § 1985 conspiracy, their § 1986 claim also fails.  MTD Br. at 20.  As explained above, however, Plaintiffs have adequately pleaded the existence of a § 1985 conspiracy.  *See supra* Section II.

*Second*, Defendants argue that the § 1986 claim must fail because if § 1986 were given "stand-alone viability" without also requiring an underlying § 1985 claim, it "would impose amorphous and virtually unlimited obligations on even private citizens to prevent alleged violations by others of § 1985."  MTD Br. at 20–21.  This argument is a straw man.  Plaintiffs do not dispute that "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."  *Callum*, 137 F. Supp. 3d at 844.  This Court need not decide whether § 1986

19

comports with "basic principles of statutory construction" if it were divorced from § 1985, MTD Br. at 21, because that simply is not at issue in the case.

## IV.   Plaintiffs' § 1986 Claim Is Not Time-Barred

Defendants argue that Plaintiffs' § 1986 claim is time-barred under the one-year statute of limitations in § 1986, because the Complaint was filed more than sixteen months after the summer of 2021 when Defendants began their campaign of intimidation and more than one year after Defendants' vandalism on October 18, 2021. MTD Br. at 23. These arguments fail.

Plaintiffs allege that the Defendants' defacement of the Arthur Ashe mural on the night of October 18, 2021, is the cause of their injury and the basis for this action. *See* ¶ 51. Plaintiffs only learned of the defacement on October 21, 2021. ¶ 72. A federal "civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Roncales* v. *Cnty. of Henrico*, 451 F. Supp. 3d 480, 493 (E.D. Va. 2020) (quoting *A Soc'y Without a Name*, 655 F.3d at 348). Plaintiffs' initial Complaint was timely filed on October 18, 2022, which is three days less than one year after Plaintiffs discovered the defacement.[4]

Defendants are also incorrect that the statute of limitations began running earlier in 2021, when Patriot Front's "campaign of vandalism" in Battery Park began. The statute of limitations period for a § 1986 claim "begins to accrue from the last act that caused the plaintiff an injury." *Ali* v. *Raleigh Cnty.*, 2018 WL 1582722, at *8 (S.D. W. Va. Mar. 29, 2018). The sole act alleged in this case to be the source of Plaintiffs' injuries is the defacement of the Arthur Ashe mural. The allegations regarding Patriot Front's prior actions merely provide context for that incident. But even if these prior acts were considered to be part of Plaintiffs' claims, those events would be part

---

[4] The Complaint would also be timely if the accrual date were October 18, 2021—the day the defacement occurred—because the Complaint was filed on October 18, 2022, one year to the day later. *See, e.g.*, *Salcedo* v. *Town of Dudley*, 629 F. Supp. 2d 86, 97 (D. Mass. 2009).

of a single months-long campaign by the Patriot Front to terrorize the residents of Battery Park, including Plaintiffs.  The statute of limitations did not begin to run until the last act in that campaign took place:  the defacement of the Arthur Ashe mural on October 18, 2021.

## V.   The Intracorporate Conspiracy Doctrine Does Not Apply to Plaintiffs' §§ 1985(3) and 1986 Claims

Defendants argue that Plaintiffs' §§ 1985(3) and 1986 conspiracy claims fail under the intracorporate conspiracy doctrine, which provides that agents of a corporation cannot conspire with their principals.  MTD Br. at 21–22.  Plaintiffs do not dispute that the Fourth Circuit has applied this doctrine to § 1985 claims.  *See Buschi* v. *Kirven*, 775 F.2d 1240, 1257–59 (4th Cir. 1985); *Painter's Mill Grille, LLC* v. *Brown*, 716 F.3d 342, 352–53 (4th Cir. 2013).  But those cases are inapplicable here for two reasons.  *First*, Patriot Front is not a corporation, and neither Plaintiffs nor Defendants allege otherwise.  *Second*, Plaintiffs allege that Defendants conspired with persons who were not Patriot Front members, and therefore not agents of the same principal.

Defendants' first argument fails because Plaintiffs do not allege that Patriot Front is a corporation.  *See* ¶¶ 12–22.  Indeed, Defendants agree with that proposition.  MTD Br. at 22 ("Patriot Front is not a corporation.").  Defendants' implicit suggestion that unincorporated associations should be treated the same as corporations is inconsistent with established case law and practice in federal courts.  *See, e.g.*, *Hawkins* v. *i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 222–23 (4th Cir. 2019) (noting the different tests for establishing citizenship of unincorporated associations and corporations); Fed. R. Civ. P. 17(b)(2), (3) (establishing separate standards for determining the capacity of a corporation or unincorporated association to sue and be sued).

The Fourth Circuit has never held that the intracorporate conspiracy doctrine applies to unincorporated associations like Patriot Front.  Its formulation of the doctrine as applied to § 1985 claims uniformly refers solely to "corporations," or other legally distinct juridical entities, and

government bodies.  Of all the Fourth Circuit cases applying the intracorporate conspiracy doctrine to § 1985 claims, none involved an unincorporated association.  *See e.g.*, *Painter's Mill Grille*, 716 F.3d at 352–53 (limited liability company); *Eplus Tech, Inc.* v. *Aboud*, 313 F.3d 166, 179–80 (4th Cir. 2002) (corporation); *Detrick* v. *Panalpina, Inc.*, 108 F.3d 529, 544 (4th Cir. 1997) (corporation); *Bank Realty* v. *Practical Mgmt. Tech.*, 935 F.2d 267 (4th Cir. 1991) (corporation); *Locus* v. *Fayetteville State Univ.*, 1989 WL 21442, at *2  (4th Cir. Mar. 8, 1989) (state university); *Buschi*, 775 F.2d at 1257–59 (state officials and employees).

District courts outside the Fourth Circuit that have addressed the question have held uniformly that the doctrine does not apply to unincorporated associations.  *See e.g.*, *Nguyen* v. *Hoang*, 318 F. Supp. 3d 983, 1024 (S.D. Tex. 2018) (finding that "[t]he underlying reasoning behind the doctrine, that the corporation is a single entity, does not apply to an unincorporated association," and thus "it is not appropriate to apply the intracorporate conspiracy doctrine" to unincorporated associations).  *See also Sirajullah* v. *Ill. State Med. Inter-Insurance Exchange*, 1988 WL 53210, at *4–5 (N.D. Ill. May 17, 1988) (doctrine does not apply to associations because "[c]orporations have a legal existence, in contrast with voluntary unincorporated associations").

Further, the intracorporate conspiracy doctrine should not be applied to claims brought against unincorporated groups formed for the purpose of depriving persons of civil rights.  Indeed, the Seventh Circuit, in the seminal decision that applied the intracorporate conspiracy doctrine to § 1985, recognized that the doctrine does not preclude claims against unincorporated hate groups like the Ku Klux Klan:

> We do not suggest that an agent's action within the scope of his authority will always avoid a conspiracy finding.  Agents of the Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders of the Grand Dragon.

*Dombrowski* v. *Dowling*, 459 F.2d 190, 196 (7th Cir. 1972) (Stevens, J.); *see also Travis* v. *Gary*

*Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990) (holding "members of the Ku Klux Klan could not avoid liability" by incorporating).  Other federal courts have reached the same result.  *See, e.g.*, *Johnson* v. *Hill St Dales Gen. Hosp.*, 40 F.3d 837, 890 (6th Cir. 1994) ("The corporation's mission is also an important factor to be considered.  A corporation formed for the purpose of depriving citizens of their civil rights would not be shielded by the intracorporate conspiracy doctrine."); *Dobbey* v. *Jeffreys*, 417 F. Supp. 3d 1103, 1112 (N.D. Ill. 2019) (doctrine does not apply to "conspiracies 'that permeate the ranks of the organization's employees'"); *Weston* v. *City of Chi.*, 2021 WL 2156459, at *9 (N.D. Ill. May 27, 2021) (same); *Nieto* v. *United Auto Workers Local 598*, 672 F. Supp. 987, 993 (E.D. Mich. 1987) ("The Ku Klux Klan certainly is not a legitimate business entity, and its concerted activities are, by definition, the result of personal discriminatory animus on the part of its members.").

The reasoning of *Dombrowski* and these other decisions makes sense.  Congress enacted § 1985 to outlaw organized campaigns to deprive persons of their civil rights.  Allowing conspirators to evade § 1985 "merely by incorporating before they commit their discriminatory acts" should not be allowed.  *Rebel Van Lines* v. *Compton*, 663 F. Supp. 786, 792 (C.D. Cal. 1987). This Court should follow *Dombrowski and* find that the intracorporate conspiracy doctrine does not apply to Patriot Front, a group formed for the purpose of depriving persons of their civil rights.[5]

The second reason that Defendants' intracorporate conspiracy argument fails is that the FAC does not allege that all of the conspirators were members of Patriot Front.  To the contrary,

---

[5] The Fourth Circuit has previously relied on *Dombrowski* in applying the intracorporate conspiracy doctrine to § 1985.  *Buschi*, 775 F.2d at 1251.  *See also Locus*, 1989 WL 21442, at *2 (citing *Dombrowski* approvingly).  This Court has described *Dombrowski* as "establish[ing] the framework of the debate" over the applicability of the intracorporate conspiracy doctrine to § 1985. *Haigh* v. *Matsushita Elec. Corp.*, 676 F. Supp. 1332, 1342 (E.D. Va. 1987).

it alleges that two of the conspirators—Defendants John Does 7 and 8—were *not* Patriot Front members (they were merely prospective members).  ¶¶ 37–38.  The intracorporate conspiracy doctrine bars a conspiracy claim only where *all* the conspirators were employees of the same qualifying entity.  The participation of a single non-employee means the claim is not barred.  *See, e.g.*, *Phoenix Renovation Corp.* v. *Rodriguez*, 403 F. Supp. 2d 510, 517 (E.D. Va. 2005).

The recent decision in *Smith* v. *Trump*, 2023 WL 417952 (D.D.C. Jan. 26, 2023), is instructive.  In *Smith*, the plaintiffs were U.S. Capitol Police officers who were at the Capitol on January 6, 2021.  *Id.*  They sued members of three white supremacist groups—the Proud Boys, the Oath Keepers, and the Three Percenters—and other individuals and organizations under §§ 1985 and 1986.  *Id.*  One of the Proud Boy members and one of the Oath Keepers members moved to dismiss on the ground that the intracorporate conspiracy doctrine barred the plaintiffs' claims.  *Id.*  The district court denied their motion on the grounds that each movant "[was] alleged to have conspired with others outside of their organization."  *Id.* at *5.  "The intracorporate conspiracy doctrine," the court wrote, "does not, of course, apply to conspiracies involving persons outside the organization."  *Id*.

Here, the Amended Complaint specifically alleges that Defendants conspired with Defendants John Does 7 and 8, who were not members of Patriot Front.  ¶¶ 49–50.  This Court should follow *Smith* and other cases, and rule that the intracorporate conspiracy doctrine does not bar Plaintiffs' claims because the alleged conspiracy is not limited to Patriot Front members.

## VI.   Plaintiffs Have Pleaded a Claim under Virginia Code § 8.01-42.1, and Defendants' Constitutional Arguments in the Alternative Are Meritless

### A.   Plaintiffs Have Adequately Pleaded Defendants' Liability under § 8.01-42.1

Plaintiffs' allegations regarding Defendants' campaign of intimidation and harassment are sufficient to establish a violation of Va. Code § 8.01-42.1.  A plaintiff can establish liability under

Section 8.01-42.1 by demonstrating that: (1) defendant subjected the plaintiff to intimidation or harassment and (2) the intimidation or harassment was "motivated by racial, religious, gender, disability, gender identity, sexual orientation, or ethnic animosity." § 8.01-42.1(A).

Defendants' campaign of racist vandalism in Plaintiffs' neighborhood constitutes intimidation and harassment for purposes of the first element of Section 8.01-42.1. Although "[f]ew courts have provided further elaboration of the statute or specific standards to follow," *Williams* v. *AM Lapomarda*, 2020 WL 3643466, at *13 (E.D. Va. July 6, 2020), the cases interpreting the statute demonstrate that Defendants' months-long vandalism of Plaintiffs' neighborhood culminating in the destruction of the Arthur Ashe mural plausibly constitutes intimidation and harassment prohibited under Section 8.01-42.1. For example, in *Williams*, the plaintiff, a Black Muslim woman dressed in a niqab and sunglasses, alleged that she entered the defendant's store and was told by the manager to uncover her face. *Id.* Plaintiff claimed that the manager laughed when she indicated that her religious beliefs require that she cover her face in public and stated that he "would need to identify her if a robbery were to occur." *Id.* The manager allegedly refused to serve the plaintiff, called her a "security risk" and ultimately called the police. *Id.* The Court found these allegations sufficient to state a plausible claim under Section 8.01-42.1. *Id.*[6] Against this backdrop, Defendants' campaign of vandalism of Plaintiffs' neighborhood park and their destruction of the Arthur Ashe mural fall within the definitions of intimidation and harassment under Section 8.01-42.1(A). ¶¶ 48–71.

---

[6] For other examples of claims under § 8.01-42.1(A) that have survived motions to dismiss, *see, e.g.*, *Law* v. *Hilton Domestic Operating Co.*, 2020 WL 7130785, at *11 (E.D. Va. Dec. 4, 2020) (defendant allowed its security guard to question and accost defendant, the only Black man in defendant's hotel lobby, about whether he belonged in the hotel); *Berry* v. *Target Corp.*, 214 F. Supp. 3d 530, 535 (E.D. Va. 2016) (defendant apprehended plaintiff while she was shopping, "used a racial slur, and later implied that African-Americans came into Target to steal").

Defendants attempt to dismiss Plaintiffs' claim by misconstruing the law. First, Defendants argue that their conduct cannot qualify as harassment or intimidation because they did not physically confront Plaintiffs. MTD Br. at 24. The plain language of the statute does not require that harassment or intimidation involve physical confrontation, and no court has imposed such a requirement. To the contrary, Virginia courts interpreting other statutes with similar language have found intimidation in the absence of physical contact. For example, in *Turner* v. *Commonwealth*, 792 S.E.2d 299 (Va. Ct. App. 2016), *aff'd*, 809 S.E.2d 679 (Va. 2018), the Virginia Court of Appeals considered a defendant's criminal conviction for a violation of Va. Code § 18.2-423.2, which prohibits a person from displaying a noose in a public place "with the intent of intimidating any person or group of persons." The defendant in *Turner* was convicted after his neighbors reported seeing an "all-black, life-size dummy hanging by a noose from a tree in [his] yard." *Id.* at 301. His neighbors testified that they were "especially upset because nine African-Americans had been killed in South Carolina earlier the same day at the Charleston Church Shooting," and that the display caused them to fear for their family's safety. *Id.* at 302. The Court of Appeals rejected defendant's statutory and First Amendment challenges and affirmed his conviction. *Id.* at 308.

Defendants' next argument, that harassment or intimidation under Section 8.01-42.1 requires the use of symbols with a "long and pernicious history as a signal of impending violence,"[7]

---

[7] This language comes from *Virginia* v. *Black*, 538 U.S. 343 (2003), which does not support Defendants' position. In *Black*, the Supreme Court held that the Commonwealth could ban cross burnings, "a particularly virulent form of intimidation," rather than "prohibit[] all intimidating messages" based on "cross burning's long and pernicious history as a signal of impending violence." 538 U.S. at 363. The Court in no way suggested that states could only ban intimidation involving such symbols and, in fact, reaffirmed that states can ban intimidation entirely because it is "a type of true threat." *See id.* at 359–60. Furthermore, the definition of "intimidation" in *Black* does not control this Court's interpretation of "intimidation or harassment" in Section 8.01-42.1. *See United States* v. *Petras*, 879 F.3d 155, 164–65 (5th Cir. 2018) ("*Black* was not a statutory-

MTD Br. at 24, is similarly unsupported by the text of the statute.  To the contrary, several of the cases cited by Defendants that have interpreted Section 8.01-42.1 permitted such claims to proceed without the use of any such symbolism.  *See, e.g.*, *Williams*, 2020 WL 3643466, at *13; *Law*, 2020 WL 7130785, at *11.

Defendants also argue, without support, that Plaintiffs' understanding of Patriot Front is limited solely to interpretations provided by "a third party, undoubtedly hostile to Defendants." MTD Br. at 24.  This is merely a rehashing of Defendants' traceability argument, and it fails for the same reasons described above.  *See supra* Section I.B.

Finally, Defendants argue that their conduct involved damage to public property in which Plaintiffs have no greater right than the general public. MTD Br. at 24.  As noted above with respect to Plaintiffs' standing, *see supra* Section I.A, the right at issue here is not an interest in property.  Instead, Defendants' misconduct resulted in injury to Plaintiffs' right to be free from harassment and intimidation, the exact interest protected by Section 8.01-42.1.

As to the second element of Plaintiffs' Section 8.01-42.1 claim, Plaintiffs have plausibly alleged their racist motivations.[8]  *See* ¶¶ 112–13.  Defendants, members of a white supremacist organization, coordinated and executed the destruction of a mural celebrating a Black American icon while using a racial slur.   ¶¶ 51–70. This act occurred after months of ongoing white supremacist vandalism in Battery Park and a week before the start of the Unite the Right trial. ¶¶ 48–70.  These facts are more than sufficient to plausibly establish Defendants' racial animosity.

---

interpretation case . . . .  So although *Black* discussed 'intimidation' as it was defined in that statute, it did not mandate that *all* statutes with 'intimidation' be interpreted accordingly." (citation omitted)).

[8] To the extent that Defendants were to ascribe another motivation to their misconduct, that would be a question of fact improper for resolution on a motion to dismiss.  *See Hock* v. *Substitute Trustee Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).

*See Williams*, 2020 WL 3643466, at * 13 (court can infer animus if no direct evidence of animus); *see also supra* Section II.A (Plaintiffs have pleaded discriminatory intent).

Defendants separately argue that *Counterman* precludes Plaintiffs' Section 8.01-42.1 claim because Plaintiffs have not adequately pleaded Defendants' *mens rea*. MTD Br. at 24–25. This argument fails for the same reasons discussed above. *See supra* Section II.C.

### B.    Defendants Have Failed to Establish That § 8.01-42.1 Is Unconstitutional as Applied to Their Campaign of Intimidation and Harassment

Defendants raise several arguments in the alternative that Section 8.01-42.1 is unconstitutional, including that the statute is void for vagueness, that it is unconstitutionally overbroad, and that it constitutes viewpoint discrimination. MTD Br. at 25–27. Each fails.

It is well established that harassing and intimidating conduct falls beyond the scope of the First Amendment's protections. *See Abernathy* v. *Conroy*, 429 F.2d 1170, 1176 (4th Cir. 1970) ("[I]t is axiomatic that violent acts are not accorded protection under the first amendment, even though they also constitute expressive or communicative conduct."). And to the extent that intimidation or harassment involves speech, such speech also falls outside the protections of the First Amendment where it qualifies as a "true threat," which states may ban without violating an individual's right to free speech. *Salim* v. *Dahlberg*, 170 F. Supp. 3d 897, 913 (E.D. Va. 2016); *see also Feminist Majority Found.* v. *Hurley*, 91 F.3d 674, 691 (4th Cir. 2018) ("The Supreme Court and our Court have consistently recognized the principle that threatening speech is not protected by the Constitution."). "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Black*, 538 U.S. at 360. Section 8.01-42.1 is constitutional as it prohibits only that speech that rises to the level of actual intimidation or harassment. *See Salim*, 170 F. Supp. 3d at 913.

Section 8.01-42.1 is not unconstitutionally vague.  A statute can be impermissibly vague if it either: (1) fails to provide people of ordinary intelligence reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement.  *Hill* v. *Colorado*, 530 U.S. 703, 732 (2000).  Neither element is present here.

Courts routinely find that the words "harassment" and "intimidation" are not unconstitutionally vague.  In *O'Brien* v. *Welty*, 818 F.3d 920, 930–31 (9th Cir. 2016), the Ninth Circuit held that a California regulation authorizing state universities to discipline students for threatening conduct, including "intimidation" or "harassment," was not an unconstitutionally vague limitation on speech under the First Amendment, because the fact that the terms "might entail subjective interpretation in some cases was not enough to sustain a vagueness challenge." *Id.* at 930; *see also West* v. *Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1367–68 (10th Cir. 2000) (school district's "Racial Harassment and Intimidation" policy was not unconstitutionally vague where a reasonable student of ordinary intelligence could understand what conduct it prohibited); *United States* v. *Gonzalez*, 905 F.3d 165, 190 n.10 (3d Cir. 2018) (stalking statute was not unconstitutionally vague, in part, because it used readily understandable terms such as "harass" and "intimidate"); *United States* v. *Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) (same).

In support of their argument, Defendants raise a parade of hypotheticals, MTD Br. at 26, none of which involves the facts at issue here, and none of which support their argument that Section 8.01-42.1 is unconstitutionally vague as applied to their conduct.  The determination of whether Defendants' vandalism constitutes intimidation or harassment does not require an analysis of the square mileage of the Battery Park neighborhood or differentiation between leaflets and stickers.  The plain meaning of "intimidation" and "harassment" is clear, and there is no doubt that Defendants' campaign of vandalism, defacement, and property destruction falls within the conduct

the Virginia statute is intended to proscribe.

Defendants also cannot establish that the statute is unconstitutionally overbroad. "[T]he Supreme Court has counseled lower courts to declare statutes facially overbroad 'sparingly and only as a last resort.'" *Legend Night Club* v. *Miller*, 637 F.3d 291, 297 (4th Cir. 2011) (quoting *Broadrick* v. *Oklahoma*, 413 U.S. 610, 613 (1973)). The statute proscribes three narrow categories of conduct: "(i) intimidation or harassment, (ii) violence directed against [a] person, or (iii) vandalism directed against [a person's] real or personal property." § 8.01-42.1(A). These narrow proscriptions of clearly delineated conduct differentiate Section 8.01-42.1 from the statutes at issue in *Forsyth Cnty.* v. *Nationalist Movement*, 505 U.S. 123, 129–30 (1992) and *City of Lakewood* v. *Plain Dealer Publ'g Co.*, 486 U.S. 750, 753–55 (1988), which involved prior restraints granting government officials unbounded discretion to regulate speech.

Lastly, Defendants' argument that Section 8.01-42.1 is unconstitutional viewpoint discrimination under *R.A.V.* v. *City of St. Paul*, 505 U.S. 377 (1992) is meritless. The statute at issue in *R.A.V.* criminalized the display on public or private property of any symbol that "one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender." *Id.* at 380. Section 8.01-42.1 does not impose civil liability on a defendant whose conduct "arouses anger, alarm or resentment" in others, but only on a defendant that intimidates or harasses another, which, as explained above, falls within the state's authority to regulate conduct and to ban "true threats." *See Salim*, 170 F. Supp. 3d at 913; *Feminist Majority Found.*, 91 F.3d at 691. The Court in *R.A.V.* explicitly acknowledged that "threats of violence are outside the First Amendment." *See R.A.V.*, 505 U.S. at 388.

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request that Defendants Gancarz, Noyce, Dail, Turetchi, and Tredinnick's motions to dismiss be denied.

Respectfully submitted,

SEALED PLAINTIFFS 1 and 2

By: /s/ *Michael R. Shebelskie*
       Counsel

Michael R. Shebelskie
VSB No. 27459
Kevin S. Elliker
VSB No. 87498
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
mshebelskie@HuntonAK.com
kelliker@HuntonAK.com

Edward G. Caspar (admitted pro hac vice)
DC Bar No. 1644168
Arthur Ago (admitted pro hac vice)
DC Bar No. 463681
Arusha Gordon (admitted pro hac vice)
DC Bar No. 1035129
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005
Telephone:  (202) 662-8600
Facsimile:  (202) 783-0857
ecaspar@lawyerscommittee.org
aago@lawyerscommittee.org

Daniel J. Kramer (admitted pro hac vice)
NY Bar No. 1979392
Joshua Hill (admitted pro hac vice)
NY Bar No. 4297826
Gregory F. Laufer (admitted pro hac vice)
NY Bar No. 4614764
Robert J. O'Loughlin (admitted pro hac vice)
NY Bar No. 5225966
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 492-0441
dkramer@paulweiss.com
jhill@paulweiss.com
glaufer@paulweiss.com
roloughlin@paulweiss.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2023, a true and accurate copies of the foregoing were

served via ECF procedures of this Court to the following counsel of record:

Bradley P. Marrs (VSB#25281)
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226
Tel. (804) 662-5716
Fax (804) 662-5712
bmarrs@marrs-henry.com

By: /s/ *Michael R. Shebelskie*
Michael R. Shebelskie
VSB No. 27459
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
mshebelskie@HuntonAK.com