# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| **SEALED PLAINTIFF 1** ) | |
| ) | |
| **and** ) | |
| ) | |
| **SEALED PLAINTIFF 2,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:22-cv-00670 |
| ) | |
| **PATRIOT FRONT, et al.** ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................... 1

LEGAL STANDARD............................................................................................................... 2

ARGUMENT............................................................................................................................ 3

I.     The Court Was Plainly Correct On the Merits of Each Claim and There Are No Grounds For Substantial Difference of Opinion. ............................................................ 4

    A.     There is No Substantial Difference of Opinion Regarding the Application of *Counterman* v. *Colorado*. ..................................................................... 5

    B.     There is Clear Authority That Emotional Harm Is A Cognizable Injury for Article III Standing. ..................................................................... 8

    C.     Defendants' Argument That a Section 1985(3) Claim Must Be Based on a Violation of Criminal Law Enacted Under the 13th Amendment Is Unsupported. ..................................................................... 9

II.     An Immediate Appeal Would Not Materially Advance the Litigation............................. 11

    A.     Dismissal of Federal Claims Will Not Advance Litigation Because the Parties Will Still Have To Litigate Plaintiffs' Claim Under the Virginia Hate Crime Statute. ..................................................................... 11

    B.     Adopting Defendants' Interpretation of *Counterman* Would Not Materially Advance the Litigation. ..................................................................... 12

CONCLUSION........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States v. Adam Bros. Farming, Inc.*,
    369 F. Supp. 2d 1180 (C.D. Cal. 2004) ...................................................................................6

*Boquist* v. *Courtney*,
    682 F. Supp. 3d 957 (D. Or. 2023) ..........................................................................................5

*Cider Riot LLC v. Patriot Prayer USA, LLC*,
    544 P.3d 363 (Or. Ct. App. 2024)............................................................................................6

*Counterman v. Colorado*,
    600 U.S. 66 (2003)........................................................................................................3, 5, 6, 7

*Crawl Space Door Sys., Inc. v. Smartvent Prods., Inc.*,
    No. 2:19-cv-320, 2020 WL 13691775 (E.D. Va. June 12, 2020).............................................3

*Eckert Int'l, Inc. v. Sovereign Democratic Republic of Fiji*,
    834 F. Supp. 167 (E.D. Va. 1993) ............................................................................................3

*Friends of the Earth, Inc.* v. *Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) ...................................................................................................9

*Gibbs v. Elevate Credit, Inc.*,
    No. 3:20-cv-632, 2021 WL 4851066 (E.D. Va. Oct. 17, 2021) ...............................................2

*In re Health Diagnostic Lab'y, Inc.*,
    No. 3:17-cv-297, 2017 WL 2129849 (E.D. Va. May 16, 2017).................................2, 4, 7, 11

*Hinton v. Va. Union Univ.*,
    No. 3:15-cv-569, 2016 WL 3922053 (E.D. Va. July 20, 2016)................................................3

*McKesson v. Doe*,
    144 S. Ct. 913 (2024)................................................................................................................6

*Myles v. Laffitte*,
    881 F.2d 125 (4th Cir. 1989) ....................................................................................................3

*New York Times v. Sullivan*,
    376 U.S. 254 (1964)..................................................................................................................7

*Prince v. Johnson Health Tech Trading, Inc.*,
    No. 5:22-cv-00035, 2023 WL 3190403 (W.D. Va. May 1, 2023).........................................12

*Simmons v. Poe*,
   47 F.3d 1370 (4th Cir. 1995) ...............................................................................................12

**Statutes**

18 U.S.C. § 241..............................................................................................................................10

18 U.S.C. § 245..............................................................................................................................10

28 U.S.C. § 1292(b) ..............................................................................................................2, 3, 4, 13

Ku Klux Klan Act of 1871, 42 U.S.C. § 1985, *et seq.*............................................................ *passim*

Virginia Code § 8.01-42.1 .....................................................................................................1, 11, 12

**Other Authorities**

U.S. Const. amend. XIII...........................................................................................................4, 10

## **PRELIMINARY STATEMENT**

This case arises from Defendants' conspiracy to terrorize members of the historically Black Battery Park neighborhood in Richmond, Virginia and to deprive Plaintiffs of their ability to exercise their civil rights. On or about October 18, 2021, two of the Defendants, Nathan Noyce and Thomas Dail, along with a currently unknown Defendant John Doe 1, vandalized and destroyed a mural in Battery Park celebrating Arthur Ashe, a symbol of the neighborhood's support for and pride in Black lives and Black accomplishments. They did so following a planning meeting that they attended along with other members of the Patriot Front, a white supremacist group. Carrying out the objective of the conspiracy, Noyce and Dail spray-painted over Ashe's face and used stencils to leave the Patriot Front mark so that there could be no mistake who had done this, while John Doe 1 filmed them.

Plaintiffs—two residents of the Battery Park neighborhood who understood this act of vandalism to be a warning that Black residents of the neighborhood and their allies were not safe in their own community—sued to hold Patriot Front and the individuals associated with the conspiracy accountable for their misconduct. Plaintiffs' First Amended Complaint explains in detail how Defendants conspired to launch a racially motivated campaign of vandalism and harassment with the intent to deprive Battery Park residents of equal access to the park, in violation of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985, *et seq.*, and Virginia Code § 8.01-42.1. Defendants moved to dismiss Plaintiffs' claims on several grounds, which this Court thoroughly addressed and rejected in a 71-page opinion, ECF No. 127 (the "MTD Opinion").

Defendants have now moved to certify three issues from the Court's MTD Opinion for interlocutory appeal, in a ploy to circumvent the normal course of litigation. Despite having the opportunity to refine these issues to address the shortcomings identified by the Court, Defendants instead propound exactly the same meritless (if not frivolous) legal theories that this Court has

already rejected, using inapposite case law and irrelevant hypotheticals.  *See* ECF No. 138 (the "Motion").

Defendants' efforts to paint this Court's ruling as novel or controversial are belied by the thorough and supported reasoning contained in the Court's 71-page MTD Opinion.  Contrary to Defendants' arguments otherwise, this Court applied settled legal principles to the well-pleaded allegations and claims of the First Amended Complaint, with thorough reference to persuasive and controlling case law.

Defendants fail to provide compelling justification to warrant the extraordinary step of an interlocutory appeal of this Court's MTD Opinion.  Ultimately, their dispute boils down to a misguided belief that this Court erred in denying their motion to dismiss.  But mere disagreement with the Court's decision cannot justify interlocutory appellate review, and to the extent that Defendants believe this Court erred, they will have multiple opportunities to present their arguments during the normal course of litigation.  The Court should deny Defendants' Motion.

## **LEGAL STANDARD**

Section 1292(b) allows a district judge to certify as appealable "an order not otherwise appealable" when she is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also Gibbs v. Elevate Credit, Inc.*, No. 3:20-cv-632, 2021 WL 4851066, at *13 (E.D. Va. Oct. 17, 2021).  "However, '[m]ere disagreement, even if vehement, with a court's ruling does not establish a substantial ground for difference of opinion sufficient to satisfy the statutory requirements for an interlocutory appeal.'"  *In re Health Diagnostic Lab'y, Inc.*, No. 3:17-cv-297, 2017 WL 2129849, at *4 (E.D. Va. May 16, 2017) (alteration in original) (quoting *Nat'l Cmty.*

*Reinvestment Coal. v. Accredited Home Lenders Holding Co.*, 597 F. Supp. 2d 120, 122 (D.D.C. 2009)).

The Fourth Circuit has emphasized the general rule that interlocutory appeals under Section 1292(b) "should be used sparingly and . . . its requirements must be strictly construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). Courts in this district likewise have read Section 1292(b) narrowly, finding it "a narrow exception to the final judgment rule of § 1291, to be used 'only in extraordinary cases' to 'avoid protracted and expensive litigation.'" *Eckert Int'l, Inc. v. Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167, 174 (E.D. Va. 1993) (quoting *McKann v. Commc'ns Design Corp.*, 775 F. Supp. 1506, 1534 (D. Conn. 1991)).

Even if all the requirements of Section 1292(b) are met, the district court has "unfettered discretion" to deny a motion to certify issues for interlocutory appeal absent exceptional circumstances. *Hinton v. Va. Union Univ.*, No. 3:15-cv-569, 2016 WL 3922053, at *7 (E.D. Va. July 20, 2016) (citing *United States ex rel. Howard v. Harmer Constr. Co.*, No. 7:12-cv-215, 2015 WL 9463103, at *1 (E.D.N.C. Dec. 28, 2015)). A district court can freely exercise such discretion and deny a motion for certification if it is not persuaded that "exceptional circumstances justify departure from the basic policy of postponing appellate review until after [the] [c]ourt enters a final judgment[.]" *Crawl Space Door Sys., Inc. v. Smartvent Prods., Inc.*, No. 2:19-cv-320, 2020 WL 13691775, at *1 (E.D. Va. June 12, 2020).

## ARGUMENT

Defendants ask this Court to overlook the stringent standard applicable to their Motion and to certify for interlocutory appeal their unremarkable claims of error. Defendants argue that the Court erred in its analysis rejecting three of the arguments raised in Defendants' motion to dismiss: (1) that *Counterman v. Colorado*, 600 U.S. 66 (2003), applies here and Plaintiffs failed to adequately plead a *mens rea* of recklessness by Defendants; (2) that Plaintiffs lack standing to sue

3

because their injuries were not concrete and particularized; and (3) that Plaintiffs' claim under 42 U.S.C. § 1985(3) fails because Plaintiffs did not plead that Defendants violated a criminal statute enacted under the Thirteenth Amendment.  Mot. at 2–4, 8–9, 11–12.  But interlocutory appeal is not warranted merely because Defendants disagree with the Court's conclusions on these issues.  As discussed below, the Court's decision was entirely correct, and there are no grounds for a *substantial* difference of opinion about any of the three claims of error.  Furthermore, other than Defendants' contention regarding Plaintiffs' lack of standing—a borderline frivolous and unsupported argument in its own right—none of the claims of error, if resolved in Defendants' favor, would materially advance the litigation.

Even if this Court finds that the exacting requirements of Section 1292(b) are met, Defendants do not establish any "exceptional circumstances" that justify departure from the basic tenet of finality in judicial proceedings.  In such an unlikely event, the Court should exercise its discretion and allow this case to move forward to discovery.

**I.      The Court Was Plainly Correct On the Merits of Each Claim and There Are No Grounds For Substantial Difference of Opinion.**

Defendants seek to convince this Court that it incorrectly decided each of their arguments in support of their joint motions to dismiss.  Substantial ground for difference of opinion exists only where "there is a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits, or where a court's challenged decision conflicts with decisions of several other courts" or where "the dispute raises a novel and difficult issue of first impression." *In re Health Diagnostic Lab'y, Inc.*, 2017 WL 2129849, at *4.  None of these circumstances apply here.  Accordingly, each of Defendants' arguments fail.

4

A. **There is No Substantial Difference of Opinion Regarding the Application of *Counterman* v. *Colorado*.**

Defendants moved to dismiss all of Plaintiffs' claims on the grounds that the Supreme Court's decision in *Counterman* v. *Colorado*, 600 U.S. 66 (2003), applies to civil cases and requires Plaintiffs to allege that Defendants acted with at least a *mens rea* of recklessness. This Court rejected this argument and ruled in Plaintiffs' favor, holding that *Counterman*, which arose in the context of a criminal prosecution, does not apply to civil cases, and even if it does, Plaintiffs alleged facts from which "it is plausible to infer at least recklessness." MTD Op. at 62–65. In the Motion, Defendants take issue with the Court's ruling, arguing that there is a substantial ground for disagreement both as to whether *Counterman* applies to civil cases, and if it does whether the Court correctly determined that Plaintiffs had alleged recklessness. Mot. at 4–7. Defendants' arguments fail on both scores.

*First*, *Counterman* does not apply to civil cases. The majority opinion in *Counterman* focused on the application of a subjective intent standard to criminal cases, repeatedly referencing the "prosecution" of true threats, and ultimately determined that a showing of recklessness was required to prosecute true threats. *Counterman*, 600 U.S. at 79–80 (deciding that recklessness is the "right path forward" for prosecuting true threats and recognizing that "when . . . we require use of a subjective mental-state standard, we necessarily impede some true-threat prosecutions"). As this Court explained, *Counterman's* majority opinion "limits its holding to what a state must prove to successfully bring a *criminal* true threat charge." MTD Op. at 63 n.37 (emphasis added). In reaching that conclusion, this Court cited *Boquist* v. *Courtney*, 682 F. Supp. 3d 957 (D. Or. 2023), in which a federal district court declined to apply *Counterman* to the analysis of a true threat claim in a civil case, and found that *Counterman* is inapplicable in civil cases where no criminal statute is at issue. *See* MTD Op. at 63.

5

None of the sources that Defendants rely on to argue that *Counterman* should apply to civil cases are controlling on this Court or create any meaningful, much less substantial, ground for difference of opinion. Defendants cite the *dissent* in *Counterman*, written by Justice Barrett and joined by only Justice Thomas, in an effort to convince this Court that this opinion warrants interlocutory appeal. Mot. at 4–5. But, the dissent merely assumed, without citation to supporting precedent, that "the [*Counterman*] Court's holding affects the civil consequences for true threats just as much as it restricts criminal liability." 600 U.S. at 118 (emphasis omitted). Whether the *Counterman* recklessness standard applies in the context of civil litigation was not at issue, and Defendants cannot create a substantial ground for difference of opinion by pointing to the *dissent*'s discussion of separate issues. *See United States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1184 (C.D. Cal. 2004) (rejecting argument that dissent in Ninth Circuit case "g[a]ve rise to substantial grounds for differences of opinion" where dissent did not address precise legal question at issue). Regardless, the *Counterman* dissent failed to persuade a majority of the Supreme Court and should not persuade this Court now.

Neither of the other two cases that Defendants cite save their argument. First, Defendants cite a single sentence by Justice Sotomayor in a non-precedential statement respecting the denial of certiorari in a civil case, *McKesson v. Doe*, 144 S. Ct. 913, 914 (2024), where she encouraged lower courts to "give full and fair consideration to arguments regarding *Counterman*'s impact in any future proceedings in this case." *See* Mot. at 5. Second, Defendants cite a case from an intermediate Oregon state appellate court, *Cider Riot LLC v. Patriot Prayer USA, LLC*, 544 P.3d 363 (Or. Ct. App. 2024), which applied *Counterman* in the context of a civil First Amendment lawsuit. *See* Mot. at 5. Neither of these sources creates a conflict between this Court's MTD Opinion and the "decisions of several other courts," nor do they prove that this Court's decision

"raises a novel and difficult issue of first impression," *In re Health Diagnostic Lab'y, Inc.*, 2017 WL 2129849, at *4, that would warrant the extraordinary relief of certifying an interlocutory appeal.

*Second*, even if *Counterman* did apply, this Court correctly concluded that Plaintiffs have plausibly alleged Defendants acted with a *mens rea* of at least recklessness. Under the standard articulated in *Counterman*, the *mens rea* of recklessness requires that the "speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Counterman*, 600 U.S. at 79 (quoting *Elonis* v. *United States*, 575 U.S. 723, 746 (2015) (Alito, J., concurring in part and dissenting in part)). This Court found that it was plausible to infer at least "recklessness" under the standard articulated in *Counterman* "because Defendants were 'aware' at a minimum that 'others *could* regard [the defacement of the mural] as' threatening violence, and they nonetheless directly or indirectly contributed to the defacement of the mural anyway." MTD Op. at 64 (alteration in original) (quoting *Counterman*, 600 U.S. at 79). Indeed, as explained in Plaintiffs' opposition to the motion to dismiss, Plaintiffs' allegations demonstrate not only that Defendants acted recklessly, but that they "knew of and intentionally organized to ensure their statements were received as threats." ECF No. 106 at 16–17.

Defendants do not contest the accuracy of any of the factual allegations, or whether the Court correctly found that those allegations met the recklessness standard. Instead, Defendants argue only that the issue is "novel" and "important," asserting that *Counterman* has effected a sea-change in pleading standards for true threat cases that is analogous to the "profound change[]" that the "constitutional malice" standard set forth in *New York Times v. Sullivan*, 376 U.S. 254 (1964) had on defamation actions. Mot. at 6–7. Whatever the novelty of *Counterman*'s imposition of a recklessness *mens rea* requirement, however, the recklessness standard itself is not novel. The

7

Court correctly applied that standard, and found that the well-pleaded allegations of Plaintiffs' First Amended Complaint met it—a finding which, again, Defendants do not contest. Interlocutory appeal is not warranted on this issue.

### B. There is Clear Authority That Emotional Harm Is A Cognizable Injury for Article III Standing.

In their motion to dismiss, Defendants argued that Plaintiffs lacked standing because their feelings of fear and anxiety as a result of Defendants' racially motivated acts of vandalism did not amount to a concrete and particularized injury sufficient to constitute an injury-in-fact. This Court rejected that argument, finding that both Plaintiffs' alleged "emotional injuries stem from the racially motivated vandalism of the mural and the message it sent to patrons of the Park," and Plaintiffs' ensuing limitations on accessing Battery Park were sufficient to allege cognizable injury-in-fact. *See* MTD Op. at 26–29. The Court also rejected Defendants' arguments that Plaintiffs have no more than a "generalized grievance," concluding that Defendants "attacked the community by ruining the mural in Battery Park," and just because "others can also claim this injury, and might also have standing, does not thwart [Plaintiffs'] cause of action." *Id.* at 29–30.

In this Motion, Defendants argue that there is a substantial ground for difference of opinion by recycling their same arguments that Plaintiffs' subjective fear was not "concrete and particularized" because they were not physically threatened by Defendants and their fear could have been felt by anyone near the park. Mot. at 8–10. But Defendants are incorrect: there is no disagreement in this Circuit or any other court that plaintiffs can seek redress for emotional harm and have Article III standing and that plaintiffs can seek redress for their personal injuries, notwithstanding the fact that others may have similar injuries caused by Defendants' misconduct.

This is not a case of "first impression." Nor are there irreconcilable differences among several other circuits that plaintiffs alleging emotional harm can demonstrate a concrete and

8

particularized injury. As this Court recognized, courts both within the Fourth Circuit and in other circuits have found that "emotional distress, without any showing of physical injury, can suffice to show a concrete and particularized injury for the purposes of standing under Plaintiffs' causes of action." *See* MTD Op. at 24–25 (citing *Sines v. Kessler*, 324 F. Supp. 3d 765, 774–75, 797 (W.D. Va. 2018); *Thompson v. Trump*, 590 F. Supp. 3d 46, 72 (D.D.C 2022); *Nat'l Coal on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 515-16 (S.D.N.Y. 2021); *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1412 (4th Cir. 1992)). Defendants have identified no case that calls that conclusion into question, instead citing only general principles and hypotheticals about emotional harm to argue that Plaintiffs lack standing. Mot. at 7–8.

Defendants are also incorrect that Plaintiffs cannot establish standing because they "cannot claim to have suffered anything beyond what anyone" "within an indeterminant radius of the park" "might have suffered." Mot. at 9. The Fourth Circuit has made clear that an injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000). Plaintiffs alleged that Defendants targeted the Battery Park community specifically, and that Defendants' actions caused Plaintiffs to curtail their use of Battery Park because of their fear stemming from Defendants' actions. Under Fourth Circuit law, "[t]hese facts unquestionably differentiate [Plaintiffs] from the general public." *Friends of the Earth*, 204 F.3d at 157. Defendants point to no contrary authority in the Fourth Circuit or any other court that would create a substantial ground for difference of opinion.

    C.    **Defendants' Argument That a Section 1985(3) Claim Must Be Based on a Violation of Criminal Law Enacted Under the 13th Amendment Is Unsupported.**

Defendants argued in their motion to dismiss that Plaintiffs' claims impermissibly expanded the scope of Section 1985(3), and at oral argument they presented a new argument that a Section 1985(3) claim must be tied to an underlying violation of a criminal statute enacted by

9

Congress using its power under the Thirteenth Amendment, specifically pointing to 18 U.S.C. §§ 241 and 245. *See* ECF No. 103 at 10–14; Mar. 27, 2024 MTD Oral Arg. Tr. at 13–19. In its order denying Defendants' motion to dismiss, this Court correctly rejected the argument that Section 1985(3) was so narrowly proscribed. Instead, this Court relied on numerous precedents, including from the Supreme Court, which have found that Section 1985(3) protects "the right to be free from badges of slavery." MTD Op. at 50–52 (citing, *inter alia*, *Griffin v. Breckenridge*, 403 U.S. 88, 104–05 (1971); *Great Am. Fed. Sav. & Loan Ass'n* v. *Novotny*, 442 U.S. 366, 383 (Stevens, J., concurring)). This Court then joined others in finding that the deprivation of the right to enjoy a public accommodation such as a park constitutes a denial amounting to a "badge of slavery" that is actionable under Section 1985(3). *Id.* at 52–54 (citing *Fisher* v. *Shamburg*, 624 F.2d 156, 159 (10th Cir. 1980); *Vietnamese Fishermen's Ass'n* v. *Knights of Ku Klux Klan*, 518 F. Supp. 993, 1006 (S.D. Tex. 1981)).

Here, Defendants again argue that there is a substantial difference of opinion that would support Defendants' "restrictive" interpretation of the scope of Section 1985(3), which would require a plaintiff to plead a violation of an underlying criminal statute. Defendants are incorrect, and there is no divergence between this Court's MTD Opinion and any other court's decision, or between any other courts, warranting interlocutory appeal on this issue. Defendants point to no case supporting their interpretation Section 1985(3) that would require a plaintiff to "identify a criminal statute (or perhaps a civil cause of action) enacted or authorized under the Thirteenth Amendment" that has been violated to state a Section 1985(3) claim. Mot. at 12. As this Court recognized, multiple courts have adjudicated Section 1985(3) cases that are not tied to an underlying violation of criminal law but to a deprivation of a federal substantive right, such as the denial of access to a public accommodation that amounts to a badge of slavery under the Thirteenth

10

Amendment. MTD Op. at 49–54. Defendants' legally unsupported arguments, and straw-man hypotheticals about what might happen if a defendant were acquitted under one of the identified criminal statutes, are insufficient to create a substantial grounds for difference of opinion with these precedents.

## II. An Immediate Appeal Would Not Materially Advance the Litigation

"In determining whether [granting a motion for interlocutory appeal] will materially advance the ultimate termination of the litigation, a district court should consider whether an immediate appeal would: '(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.'" *In re Health Diagnostic Lab'y, Inc.*, 2017 WL 2129849, at *5 (quoting *Coal. for Equity & Excellence in Md. Higher Educ.* v. *Md. Higher Educ. Comm'n*, No. CIV.CCB-06-2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015)).

Defendants have failed to demonstrate that an immediate appeal would streamline the trial process, prevent the need for trial, or reduce the expenses associated with discovery. The only potentially case-dispositive claim of error by Defendants is on the standing issue. Even so, as detailed above, this Court's ruling was based on established law, and the Defendants' arguments for seeking interlocutory appeal on that issue border on frivolous.

As explained below, the rest of Defendants' arguments, even if accepted, would not meaningfully streamline this case.

### A. Dismissal of Federal Claims Will Not Advance Litigation Because the Parties Will Still Have To Litigate Plaintiffs' Claim Under the Virginia Hate Crime Statute.

Even if Plaintiffs' Section 1985(3) claim were dismissed based on Defendants' contentions regarding the need to plead a violation of a criminal statute to establish a Section 1985(3) violation, *see supra* Section I.C, Plaintiffs' claim under Virginia's hate crime statute, Va. Code § 8.01-42.1,

would remain. This state-law claim relies on the same factual allegations of the federal claims, has overlapping elements, and will require developing similar evidence to establish those elements. The elements of a Section 1985(3) claim are: (1) a conspiracy of two or more persons; (2) motivated by a specific class-based, invidiously discriminatory animus; (3) that deprives the plaintiff of the equal enjoyment of rights secured by the law; (4) and results in an overt act; that (5) causes injury to the plaintiff. *See Simmons* v. *Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Establishing liability under § 8.01-42.1 requires a demonstration that (1) defendant subjected the plaintiff to intimidation or harassment and (2) the intimidation or harassment was "motivated by racial, religious, gender, disability, gender identity, sexual orientation, or ethnic animosity." § 8.01-42.1(A). In order to succeed on either claim, then, Plaintiffs will need to prove that Defendants defaced (or conspired to deface) the Arthur Ashe mural, and did so motivated by racial animus. Consequently, an interlocutory appeal would neither streamline discovery nor trim costs, nor would it avoid or shorten the time for trial or simplify the case considerably.[1]

      B.    **Adopting Defendants' Interpretation of *Counterman* Would Not Materially Advance the Litigation.**

Additionally, even if Defendants were to succeed on both of their *Counterman* arguments, it would not materially advance the litigation.

*First*, merely addressing the question of whether *Counterman* applies in the civil context is ultimately irrelevant, as the Court correctly concluded that even if *Counterman* applies, Plaintiffs have adequately pleaded a *mens rea* of recklessness by Defendants—a finding that Defendants

---

[1] As a point of comparison, in *Prince v. Johnson Health Tech Trading, Inc.,* No. 5:22-cv-00035, 2023 WL 3190403 (W.D. Va. May 1, 2023), on which Defendants rely, *see* Mot. at 3, 10, the court denied interlocutory appeal on the grounds that the issue raised for appeal would only have disposed of some claims, leaving others needing to be adjudicated, and would not have obviated the need for class certification proceedings.

have not disputed. *See supra* Section I.A. Resolving this issue thus will not terminate or materially advance the litigation.

*Second*, even if the Fourth Circuit were to find that *Counterman* applies and reverse this Court by finding that recklessness was inadequately pleaded, the appropriate remedy would be to allow Plaintiffs to amend their complaint given that *Counterman* constitutes an intervening change in controlling law. The resolution of the question thus would not be case dispositive.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) should be denied.

Respectfully submitted,

SEALED PLAINTIFFS 1 and 2

By: /s/ Michael R. Shebelskie
Counsel

| | |
|---|---|
| Michael R. Shebelskie<br>VSB No. 27459<br>Kevin S. Elliker<br>VSB No. 87498<br>HUNTON ANDREWS KURTH LLP<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, VA  23219-4074<br>Telephone:  (804) 788-8200<br>Facsimile:  (804) 788-8218<br>mshebelskie@HuntonAK.com<br>kelliker@HuntonAK.com | Edward G. Caspar (admitted pro hac vice)<br>DC Bar No. 1644168<br>LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW<br>1500 K Street, NW, Suite 900<br>Washington, DC 20005<br>Telephone:  (202) 662-8600<br>Facsimile:  (202) 783-0857<br>ecaspar@lawyerscommittee.org |
| Nicholas Drews (admitted pro hac vice)<br>DC Bar No. 1779084<br>HUNTON ANDREWS KURTH LLP<br>2200 Pennsylvania Ave, NW<br>Washington, DC 20037-1701<br>Telephone:  (202) 955-1521<br>ndrews@HuntonAK.com | Daniel J. Kramer (admitted pro hac vice)<br>NY Bar No. 1979392<br>Joshua Hill (admitted pro hac vice)<br>NY Bar No. 4297826<br>Gregory F. Laufer (admitted pro hac vice)<br>NY Bar No. 4614764<br>Robert J. O'Loughlin (admitted pro hac vice)<br>NY Bar No. 5225966<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY  10019-6064<br>Telephone:  (212) 373-3000<br>Facsimile:  (212) 492-0441<br>dkramer@paulweiss.com<br>jhill@paulweiss.com<br>glaufer@paulweiss.com<br>roloughlin@paulweiss.com |

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2024, a true and accurate copies of the foregoing were served via ECF procedures of this Court to the following counsel of record:

Bradley P. Marrs (VSB#25281)
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226
Tel. (804) 662-5716
Fax (804) 662-5712
bmarrs@marrs-henry.com

By: /s/ Michael R. Shebelskie
Michael R. Shebelskie
VSB No. 27459
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
mshebelskie@HuntonAK.com