IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SEALED PLAINTIFF 1,

and

SEALED PLAINTIFF 2,

                                               Civil Action No. 3:22-cv-00670

Plaintiffs,

v.

PATRIOT FRONT, *et al.*,

Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs' Supplemental Brief Regarding Plaintiffs' Entitlement to Damages, Equitable Relief, and Attorney's Fees (the "Supplemental Brief"). (ECF No. 213.) For the reasons articulated below, the Court will grant Plaintiffs' requests for attorney's fees and costs. The Court has addressed Plaintiffs' requests for legal and equitable relief in a separate memorandum opinion and order. (ECF Nos. 222, 223.)

## I. Factual and Procedural Background

### A. Factual Background

The Court described the facts relevant to this case in its opinion entering default judgments against Defendants Patriot Front, Thomas Rousseau, Jacob Brown, and William Ring (the "Defaulting Defendants"). *Sealed Plaintiff 1 v. Patriot Front*, No. 3:22-cv-670 (MHL), 2026 WL 561098, at *1–7 (E.D. Va. Feb. 27, 2026). To summarize, Patriot Front is a white supremacist organization that "calls for the formation of a white ethnostate." *Id.* at *1

(quotation omitted).   In 2021, Patriot Front members defaced a mural depicting the iconic Black athlete Arthur Ashe, which mural is located in Richmond Virginia in a historically Black and diverse neighborhood.   *Id.* at *5.

Plaintiffs filed a three-count Amended Complaint against Patriot Front and its members regarding their vandalism of the mural. (ECF No. 31.)   The Court entered a default judgment against Defendants Patriot Front, Thomas Rousseau, Jacob Brown, and Willing Ring (the "Defaulting Defendants")[1] in connection with Plaintiffs' claims arising out of the Defaulting Defendants' vandalism.

### B.      Procedural Background

On December 5, 2022, Plaintiffs filed their Amended Complaint.   (ECF No. 31.)   The Amended Complaint contains three Counts against the Defaulting Defendants for violations of 42 U.S.C. §§ 1985(3) and 1986, and Virginia Code § 8.01-42.1.   (ECF No. 31, at 28, 30, 33.)

In the Amended Complaint, Plaintiffs seek a declaratory judgment that the Defaulting Defendants' actions deprived Plaintiffs of their rights under state and federal law; injunctive relief enjoining the Defaulting Defendants from future violations of rights guaranteed by state and federal law; compensatory and punitive damages; and attorney's fees, costs, and interest. (ECF No. 31, at 35.)

On September 24, 2025, after the Clerk entered default as to each of the Defaulting Defendants, Plaintiffs filed Motions for Default Judgment against the Defaulting Defendants. (ECF Nos. 187, 188, 189.)   In their Motions for Default Judgment, Plaintiffs again sought a declaratory judgment; injunctive relief; compensatory and punitive damages; and attorney's fees,

---

[1] Defendants Nathan Noyce, Thomas Dail, and John Doe 1 have since been dismissed from this action.   The Court refers to those Defendants as the "Settling Defendants."

costs, and interest.   (ECF No. 187, at 1–2; ECF No. 188, at 1–2; ECF No. 189, at 1–2; ECF No. 190, at 23–25; ECF No. 191, at 27–30; ECF No. 192, at 23–26.)

On February 27, 2026, the Court granted Plaintiffs' Motions for Default Judgment. (ECF Nos. 206, 207.)   The Court entered (1) a default judgment against Defaulting Defendants Patriot Front, Brown, and Ring for violations of 42 U.S.C. § 1985(3); (2) a default judgment against Defaulting Defendants Patriot Front, Rousseau, Brown, and Ring for violations of 42 U.S.C. § 1986; and, (3) a default judgment against Defaulting Defendant Patriot Front for its violation of Virginia Code § 8.01-42.1.

In a separate opinion, the Court has determined that Plaintiffs are entitled to $15,000 each in compensatory damages, $15,000 each in punitive damages, a declaratory judgment, but not a permanent injunction.   (ECF Nos. 222, 223.)

The Court now determines the attorney's fees and costs to which Plaintiffs are entitled.

## II.   Standard of Review

42 U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. §§] 1985[] and 1986 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."   42 U.S.C. § 1988(b).   Virginia Code § 8.01-42.1(B) likewise provides that "[a]ny aggrieved party who initiates and prevails in an action authorized by this section shall be entitled to[,] . . . in the discretion of the court to an award of the cost of the litigation and reasonable attorney fees in an amount to be fixed by the court."   Va. Code § 8.01-42.1(B).

To determine whether a fee award is reasonable, district courts within the United States Court of Appeals for the Fourth Circuit engage in a three-step analysis. At the first step, a court must determine the lodestar figure by "multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). The lodestar "calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In assessing the reasonableness of the lodestar figure, the Court considers the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). These factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d 216 at 266 & n.28; *see also Robinson*, 560 F.3d at 243–44.

No strict formula exists as to the application of these factors. *Trimper v. City of Norfolk*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994). Indeed, "many of the[] [*Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9. And "to the extent that any of [the *Johnson* factors] ha[ve] already been incorporated into the lodestar analysis," a court need not "consider [those factors] a second time." *E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs*, 724 F.3d 561, 570

4

(4th Cir. 2013). Thus, "the lodestar fee is the proper focus of the entire *Johnson* analysis in most cases." *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986).

To calculate a reasonable hourly rate, the district court must look to the prevailing market rate in the community in which the court sits. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "[T]he burden rests with the fee applicant to establish the reasonableness of the requested rate." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). To meet this burden, the "fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he [or she] seeks an award." *Id.* (quotation omitted). The fee applicant may establish such evidence through a "range of sources," including evidence of the fee awards counsel has received in the past, *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 290 (4th Cir. 2010), or "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community," *Robinson*, 560 F.3d at 245.

To calculate a reasonable number of hours expended, the court must exclude any hours that are "'excessive, redundant, or otherwise unnecessary,' and therefore not reasonably expended on the litigation." *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 670 (E.D. Va. 2004) (quoting *Hensley*, 461 U.S. at 434).

At the second step, the court must exclude hours worked on unsuccessful claims unrelated to the successful claims. *Robinson*, 560 F.3d at 244. And at the third step, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quotation omitted).

### III.   Analysis

#### A.      Plaintiffs are Prevailing Parties Under Federal and State Law

Plaintiffs are prevailing parties under 42 U.S.C. § 1988(b) and Va. Code § 8.01-42.1(B). Having obtained default judgments against the Defaulting Defendants, Plaintiffs are entitled to an award of reasonable attorney's fees under both statutes.  *See Anselme v. Griffin*, No. 3:20-cv-5, 2023 WL 3534490, at *2 (W.D. Va. May 18, 2023) (finding plaintiff was a prevailing party under § 1988(b) after obtaining a default judgment).   The Court next determines whether Plaintiffs' requested fees would be reasonable.

#### B.      The Court Calculates a Lodestar Fee of $385,835

Plaintiffs seek an award of attorney's fees in the amount of $491,175.   (ECF No. 213, at 19.)   Plaintiffs' counsel filed declarations in support of this request along with spreadsheets indicating their hours worked on this matter since its inception.   (ECF Nos. 213-5, 213-6, 213-7.)   Plaintiffs were represented by three legal entities:   Hunton Andrews Kurth LLP ("Hunton"), Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"), and the Lawyer's Committee for Civil Rights Under Law ("Lawyer's Committee").   Their submissions in support of their attorney's fees request are summarized in the table below:

|  | Firm | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Kevin Elliker | Hunton | $600 | 42.25 | $25,350 |
| Michael R. Shebelskie | Hunton | $600 | 84.5 | $50,700 |
| Nicholas Drews | Hunton | $400 | 171 | $68,400 |
| Gregory Laufer | Paul, Weiss | $600 | 18.2 | $10,920 |
| Arielle McTootle | Paul, Weiss | $400 | 303.2 | $121,280 |
| Robert O'Loughlin | Paul, Weiss | $400 | 224.6 | $89,840 |
| Gayane Matevosyan | Paul, Weiss | $400 | 192.4 | $76,960 |
| Len H. Kamdang | Lawyer's Committee | $600 | 40.8 | $24,480 |
| Anisa Sirur | Lawyer's Committee | $400 | 38.5 | $15,400 |
| Freya Jamison | Lawyer's Committee | $400 | 17.4 | $6,960 |
| Venishea Smith | Lawyer's Committee | $150 | 5.9 | $885 |
| **Total** |  |  | **1,138.75** | **$491,175** |

6

(*See* ECF Nos. 213-5, 213-6, 213-7.)   The Court next determines whether the hourly rates and hours worked summarized in the above table are reasonable.

### 1.    Plaintiffs' Hourly Rates are Reasonable

To calculate a reasonable hourly rate, the Court must look to the prevailing market rate in the community in which the court sits. *Blum*, 465 U.S. at 895.    "[T]he burden rests with the fee applicant to establish the reasonableness of the requested rate." *Plyler*, 902 F.2d at 277. Plaintiffs have established reasonable hourly rates.

While Plaintiffs do not provide declarations from third parties establishing the propriety of their hourly rates, Plaintiffs assert that "[t]his Court has approved as reasonable hourly rates in the Richmond market between $600 and $690 for attorneys (typically partners) with 20+ years of experience, and up to $400 for attorneys (typically associates) with fewer years of experience." (ECF No. 213, at 24.)

Declarations provided by Plaintiffs' counsel themselves support this conclusion. Plaintiffs' counsel from Hunton explains that Hunton assigned only three attorneys to this matter, and the hourly rates relied upon by Plaintiffs' Hunton attorneys "are significantly lower than [their] standard rates that [they] charge paying clients." (ECF No. 213-5 ¶¶ 5, 10.)   No entry in Hunton's supporting documentation reflects hours worked on this matter undertaken by a paralegal or other administrative employee.   The Court finds that Hunton counsel's "staffing of this case was reasonable." (ECF No. 213-5 ¶ 8.)    Similarly, Plaintiffs' counsel from Paul, Weiss explain that "Plaintiffs do not seek compensation for the work of numerous Paul, Weiss paralegals, administrative staff, and attorneys other than" the four attorneys assigned to this matter. (ECF No. 213-6 ¶ 12.)   And Paul, Weiss divided its work "among attorneys of different

7

seniority, and less-expensive staff were routinely engaged whenever appropriate." (ECF No. 213-6 ¶ 15.) Plaintiffs' counsel from the Lawyer's Committee likewise excluded "administrative work performed by attorneys and non-attorney staff." (ECF No. 213-7 ¶ 16.)

Given these representations and the Court's own "knowledge and experience about the quality of representation provided by counsel," Plaintiffs' counsel have established reasonable hourly rates.[2] *SS Richmond LLC v. Harrison*, No. 3:22-cv-405 (DJN), 2023 WL 7646505, at *5 (E.D. Va. Nov. 14, 2023). Given the Court's knowledge of the prevailing market rate, the high quality of representation by counsel, and hourly rates approved by other courts in this District, the Court determines that Plaintiffs' hourly rates as summarized in the chart above are reasonable. Indeed, less than one year ago, a court in this District has determined the same rates were reasonable for attorneys at Hunton, including Plaintiffs' counsel Michael Shebelskie. *See, e.g., Kelly v. Altria Client Servs., LLC*, No. 3:23-cv-725 (HEH), 2025 WL 2313210, at *6 (E.D. Va. Aug. 11, 2025) (approving as reasonable hourly rates of $600 for partners and $400 for associates for attorneys from Hunton); *SS Richmond*, 2023 WL 7646505, at *5, *7 (concluding that "$400 and $650 constitute reasonable rates for associates and the lead partner, respectively").

Application of the *Johnson* factors one, two, three, eight, and nine confirms the reasonableness of Plaintiffs' counsels' hourly rates. Plaintiffs' counsel expended considerable

---

[2] As explained in Plaintiffs' counsel's declaration, the Lawyer's Committee is a nonprofit organization. (ECF No. 213-7 ¶ 6.) Plaintiffs' counsel from the Lawyer's Committee establish hourly rates equal to those of Plaintiffs' counsel at Hunton and Paul, Weiss, in that the Lawyer's Committee explains that for "purposes of [its fee application," it charges $600 per hour for counsel Len Kamdang, $400 per hour for counsel Anisa Sirur, $400 per hour for counsel Freya Jamison, and $150 per hour for paralegal Venishea Smith. (ECF No. 213-7 ¶ 20.) These rates track those of Plaintiffs' counsel from Hunton and Paul, Weiss. Based on the Court's own knowledge of the prevailing market rate, comparable awards for fees, these attorneys' experience, the Court finds that these rates are also reasonable.

time and labor since 2022 in prosecuting this matter (factor one); confronted novel issues concerning the application of civil rights statutes to the Defaulting Defendants (factor two); used considerable skill in prosecuting this matter (factor three); successfully obtained default judgments (factor eight); and have clear experience and ability (factor nine).

### 2. The Court Will Reduce Plaintiffs' Attorney's Fees Award Based on the Hours Plaintiffs' Counsel Expended

To calculate a reasonable number of hours expended, the Court must exclude any hours that are "'excessive, redundant, or otherwise unnecessary,' and therefore not reasonably expended in the litigation." *Lilienthal*, 322 F. Supp. 2d at 670 (quoting *Hensley*, 416 U.S. at 434). Plaintiffs' proffered hours expended are slightly excessive. The Court will not award attorney's fees for some work identified by Plaintiffs' counsel.

Plaintiffs' counsel seeks an award of $2,100 for their preparation of their request for attorney's fees. But Plaintiffs' counsel also include in their calculation of their hours worked on this matter time spent preparing their request for attorney's fees. (ECF No. 213-6, at 20–21 (capturing hours worked by counsel for "[p]reparing attorney['s] fees application"); ECF No. 213-7, at 11, 14 (capturing hours worked in "[d]raft[ing] declaration in support of motion for attorneys' fees" and "preparing fees declaration").) If the Court granted both Plaintiffs' request for a $2,100 preparation fee and Plaintiffs' request for attorney's fees in full, it would double count Plaintiffs' efforts expended on preparing their request for fees. The Court will not consider "redundant" hours worked. *Lilienthal*, 322 F. Supp. 2d at 670. Based on the Court's review of Plaintiffs' supporting documentation, Plaintiffs' counsel across all three firms performed 6.3 hours of work in preparing their request for attorney's fees. The Court will subtract this amount from its award of attorney's fees but grant Plaintiffs' request for $2,100 for preparing their request.

9

Although counsel from all three legal entities suggest otherwise, Plaintiffs' counsel includes in their calculation of hours worked time spent in responding to a motion to dismiss filed by the Settling Defendants. The Court will not award fees for Plaintiffs' counsels' work in responding to the motion to dismiss prepared by the Settling Defendants. The motion to dismiss did not pertain directly to the Defendants against whom the Court entered default judgments.

Plaintiffs' counsel from Hunton explain in their declaration in support of their fee request that in calculating Hunton's time worked on this matter, Hunton "excluded time entries that . . . pertained solely to the Defendants who settled." (ECF No. 213-5 ¶ 7.) But Plaintiffs' counsel also acknowledges that Hunton seeks fees for time spent "briefing and argu[ing] in opposition to the [Settling Defendants'] motion to dismiss." (ECF No. 213-5 ¶ 6.) Plaintiffs' counsel from Paul, Weiss likewise asserts that Paul, Weiss "excluded time spent on matters related solely to litigating against the Defendants who settled." (ECF No. 213-6 ¶ 12.) But Paul, Weiss likewise seeks fees for its work "drafting briefs in opposition to [the Settling] Defendants' motion to dismiss the complaint and motion for an interlocutory appeal therefrom." (ECF No. 213-6 ¶ 10.) Plaintiffs' counsel from the Lawyer's Committee also asserts that the Lawyer's Committee "excluded time entries that . . . pertained solely to the Defendants who settled" despite the Lawyer's Committee's assertion that it performed work "defending against a motion to dismiss" by the Settling Defendants." (ECF No. 213-7 ¶¶ 15, 17.)

The Court cannot award fees related to work pertaining to the Settling Defendants Motion to dismiss in part because the Court is not aware of the terms of Plaintiffs' settlement with those Defendants. If Plaintiffs' counsel received attorney's fees as a condition of that settlement agreement, the Court is unwilling to duplicate those fees here. The Court will award fees only with respect to Plaintiffs' counsels' work pertaining to the default judgments the Court

10

entered in Plaintiffs' favor.  *See SS Richmond*, 2023 WL 7646505, at *9 (refusing to subtract attorneys' hours worked because "the hours requested by Plaintiffs are all sufficiently related" to enforcing the relevant settlement agreement).   Based on the Court's review of Plaintiffs' supporting documentation, Plaintiffs' counsel across all three legal entities performed 230.95 hours of work on the Settling Defendants' motion to dismiss.[3]  The Court will subtract this amount from its award of attorney's fees.

Otherwise, Plaintiffs' proffered hours expended reflect their counsels' work since 2022 in preparing their complaint, serving all the Defaulting Defendants, pursuing entries of default, engaging in discovery in support of their motions for default judgment, drafting motions for default judgment, and drafting motions outlining their entitlement to various remedies.   The Court will not otherwise reduce its award of attorney's fees based on counsels' hours worked.  Moreover, and as discussed above regarding Plaintiffs' hourly rates, application of the *Johnson* factors supports the reasonableness of Plaintiffs' counsels' hours worked.

Applying the Court's reductions yields the following lodestar fee:

|  | Firm | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Kevin Elliker | Hunton | $600 | 33.75 | $20,250 |
| Michael R. Shebelskie | Hunton | $600 | 44.5 | $26,700 |
| Nicholas Drews | Hunton | $400 | 111.75 | $44,700 |
| Gregory Laufer | Paul, Weiss | $600 | 16.1 | $9,660 |
| Arielle McTootle | Paul, Weiss | $400 | 217.9 | $87,160 |
| Robert O'Loughlin | Paul, Weiss | $400 | 187.2 | $74,880 |
| Gayane Matevosyan | Paul, Weiss | $400 | 189.9 | $75,960 |
| Len H. Kamdang | Lawyer's Committee | $600 | 39.2 | $23,520 |
| Anisa Sirur | Lawyer's Committee | $400 | 38.5 | $15,400 |
| Freya Jamison | Lawyer's Committee | $400 | 16.8 | $6,720 |
| Venishea Smith | Lawyer's Committee | $150 | 5.9 | $885 |
| **Total** |  |  | **901.5** | **$385,835** |

---

[3] The Court has attached Exhibits 1 and 2, which are charts capturing the hours worked by Plaintiffs' counsel with respect to the Settling Defendants' motion to dismiss that the Court has excluded.

11

By subtracting Plaintiffs' counsels' hours worked in preparing their fee application and their hours worked on the Settling Defendants' motion to dismiss, the Court calculates a lodestar fee of $385,835.

**C.      Plaintiffs Were Successful Throughout the Litigation such that the Court will Not Reduce their Attorney's Fees Award on that Basis**

The Court must next "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (quotation omitted).   Plaintiffs prevailed throughout the litigation, except as to their request for injunctive relief.   A reduction based on their lack of success with respect to injunctive relief should be minor.

**D.      The Degree of the Relief Awarded to Plaintiffs Warrants Reducing the Court's Attorney's Fees Award by Ten Percent from $385,835 to $347,251.50**

Finally, the Court must award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quotation omitted). To do so, the Court "must compare the amount of the damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005).   The Court may reduce an award of attorney's fees if those fees would be excessive when compared to Plaintiffs' awarded relief. But the Court must be careful not to "understate[] [a plaintiff's] success." *Doe v. Kidd*, 656 F. App'x 643, 657 (4th Cir. 2016).

Here, Plaintiffs sought compensatory and punitive damages, declaratory relief, and injunctive relief.   The Court awarded appropriate but modest compensatory and punitive damages, awarded Plaintiffs' desired declaratory relief, but denied Plaintiffs' desired injunctive relief.   The Court awarded Plaintiffs with a total of $75,000 in compensatory and punitive damages.   Plaintiffs' request for $491,175 in attorney's fees would outstrip the Court's award of monetary damages and equitable relief by a ratio of 6.5 to 1.   And the Court's newly-calculated

12

lodestar fee would still outstrip Plaintiffs' monetary damages awards by a ratio of over 5 to 1. The Court will therefore further reduce Plaintiffs' attorney's fees award by an additional ten percent given the lack of injunctive relief and the large differential between the damages award and the fee award.   But the Court keeps in mind that "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440; *see also Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 406–07 (E.D. Va. 2015) (reducing attorney's fees award because plaintiff obtained no monetary damages but still obtained injunctive relief); *Mamadou v. Cho*, No. 1:20-cv-146 (AJT), 2023 WL 5608400, at *5 (E.D. Va. Aug. 30, 2023) (reducing attorney's fees award because of plaintiff's modest award of monetary damages).

Applying this ten-percent reduction to the Court's lodestar calculation, the Court will award $347,251.50 in attorney's fees.   Apportioned to each legal entity based on the numbers of hours worked as included in the Court's lodestar calculation, the Court will award Hunton with $82,495; Paul, Weiss with $222,894; and the Lawyer's Committee with $21,872.50.

### E.    The Court Will Award Plaintiffs Reasonable Costs

Plaintiffs also request $48,240.23 in costs.   (ECF No. 213, at 25.)   These costs "represent court reporter fees for the depositions in this case ($36,073.58) and the fee for Plaintiffs' expert ($10,000), whose declaration was used in support of their motions for default judgment."   (ECF No. 213, at 25.)   The Court has reviewed Plaintiffs' supporting documentation and will award those costs in full.   The Court will partition its award of costs to each legal entity according to the costs they incurred:   the Court will award $25,203.44 to Hunton and $23,036.79 to Paul, Weiss.

Finally, Plaintiffs request $2,100 "for the preparation of th[eir] fee petition."   (ECF No. 213, at 26.)   As Plaintiffs note, it is "'well-settled that reasonable time and expenses preparing a

13

fee petition are compensable.'"   (ECF No. 213, at 26 (quoting *Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 672 (E.D. Va. 2015)).)   Plaintiffs' request for $2,100 is likewise reasonable, and the Court will award the $2,100 in full, while having struck counsels' hours worked in preparing their fee application.

### IV.   Conclusion

For the reasons articulated above, the Court will award Plaintiffs $347,251.50 in attorney's fees, $48,240.23 in costs, and $2,100 for the preparation of their requests.

An appropriate Order shall issue.

Date: 3/31/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

14